1  William A. Helvestine, State Bar No. 58755
2  Andrew J. Hefty, State Bar No. 220450
   Jamie S. Platto, State Bar No. 226723
3  Carri Becker Maas, State Bar No. 245816
   EPSTEIN BECKER & GREEN, P.C.
4  One California Street, 26th Floor
   San Francisco, California 94111-5427
5  Telephone: 415.398.3500
   Facsimile: 415.398.0955
6  whelvestine@ebglaw.com
7  jplatto@ebglaw.com
   ahefty@ebglaw.com
8  cmaas@ebglaw.com

9  Attorneys for Defendants,
10 KAISER FOUNDATION HEALTH PLAN, INC.,
   KAISER FOUNDATION HOSPITALS, and
11 SOUTHERN CALIFORNIA PERMANENTE
   MEDICAL GROUP
12

**FILED**

MAR 2 0 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

13             UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

15                                    '08 CV 0523 JLS BLM

16 PRIME HEALTHCARE PARADISE            CASE NO. _____
   VALLEY, LLC, a Delaware limited liability
17 company, doing business as Paradise Valley   [State Complaint No.
   Hospital;                          37-2008-00068370-CU-NP-SC
18                                     Filed:  January 23, 2008]

19             Plaintiff,            **NOTICE OF REMOVAL OF ACTION
                                     under 28 U.S.C. § 1441(b) and 28 U.S.C.
20      v.                           § 1442(a)(1)**

21 KAISER FOUNDATION HEALTH PLAN,
   INC.; a California corporation; KAISER   and
22 FOUNDATION HOSPITALS, a California
   corporation; SOUTHERN CALIFORNIA   **NOTICE OF JOINDER IN REMOVAL**
23 PERMANENTE MEDICAL GROUP, INC., a
   California corporation; and DOES 1-100,
24 Inclusive
25
             Defendants.
26
27
28

ORIGINAL



1    **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

2    **CENTRAL DISTRICT OF CALIFORNIA:**

3        Please take notice that Defendants Kaiser Foundation Health Plan, Inc. ("Health Plan"),

4    Kaiser Foundation Hospitals ("KFH"), and Southern California Permanente Medical Group[1]

5    ("SCPMG") – hereinafter referred to collectively as "Defendants" or "Kaiser" –

6    contemporaneously with the filing of this notice, hereby remove Case No. 37-2008-00068370-

7    CU-NP-SC, *Prime Healthcare Paradise Valley, LLC v. Kaiser Foundation Health Plan, Inc., et*

8    *al.*, an action from the Superior Court in the State of California for the County of San Diego,

9    South County District ("State Court Action"), to the United States District Court for the Central

10   District of California.  This removal is based on the following grounds:

11       1.    On or about January 23, 2008, the above-captioned action was commenced in the

12   Superior Court of the State of California, County of San Diego by Plaintiff Prime Healthcare

13   Paradise Valley, LLC ("Plaintiff") against Defendants entitled *Prime Healthcare Paradise*

14   *Valley, LLC v. Kaiser Foundation Health Plan, Inc., et al.*, and assigned Civil Action No. 37-

15   2008-00068370-CU-NP-SC.  On February 19, 2008, Health Plan and KFH were served with

16   copies of the summons and complaint in the State Court Action ("State Court Complaint").  True

17   and correct copies of Plaintiff's Notice of Service of Process, Summons,  Notice of Case

18   Assignment, Summons, Civil Case Cover Sheet, and Complaint served on Health Plan and KFH

19   on February 19, 2008 are attached hereto and incorporated herein by reference as Exhibit A.

20       2.    The documents attached as Exhibit A constitute all pleadings, process and orders

21   served on Health Plan and KFH in the State Court Action and are attached in accordance with 28

22   U.S.C. § 1446(a).

23       3.    Defendants filed a Notice of Related Cases in the State Court Action on

24   March 14, 2008.  A copy of the Notice of Related Cases, without exhibits, is attached as

25   Exhibit B.  Defendants are removing the other state actions referenced in the Notice of Related

26   Cases and intend to file a similar Notice of Related Cases in their removed federal actions.

27

28   [1] Defendant Southern California Permanente Medical Group is not a corporation but was
     incorrectly named as one by Plaintiff in the State Court Action.

- 2 -

4.     This removal is joined by all named Defendants and is filed within the time provided by 28 U.S.C. § 1446(b).

5.     There are three independent and alternative grounds for removal as set forth below: (1) federal question removal under 28 U.S.C. § 1441(a) and (b) based on ERISA complete preemption; (2) federal question removal under 28 U.S.C. § 1441(a) and (b) based on Medicare complete preemption; and (3) federal actor removal under 28 U.S.C. § 1442.

## GENERAL AVERMENTS IN SUPPORT OF REMOVAL

6.     Defendant Health Plan is a licensed health care service plan under the California Knox-Keene Health Care Service Plan Act of 1975, Calif. Health & Safety Code § 1340 *et seq.*

7.     At all times alleged in the State Court Complaint, Health Plan provided services to individuals enrolled as members in Health Plan's Medicare Advantage Plan pursuant to agreements entered into between Health Plan and the U.S. Department of Health and Human Services.  Under the Medicare Advantage Plan, Health Plan arranged for the provision of medical and hospital services to enrollees in accordance with the standards set forth in Part C of the Medicare Act, 42 U.S.C. § 1395w21 *et seq.*

8.     At all times alleged in the State Court Complaint, Health Plan also provided services to members enrolled in Health Plan's commercial products under group agreements entered into between Health Plan and various commercial employers ("Commercial Group Agreements").  Under these Commercial Group Agreements, Health Plan arranged for the provision of medical and hospital services to subscribing employees and their enrolled dependents.  These Commercial Group Agreements are an integral part of employee welfare benefit plans within the meaning of section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1) and are subject to ERISA § 4(a), 29 U.S.C. § 1003(a) ("ERISA Plans").  These ERISA Plans are not exempt from ERISA under ERISA § 4(b), 29 U.S.C. § 1003(b).

9.     Although Plaintiff attempts to characterize most of its causes of action as state law breach of contract claims, the State Court Complaint is in fact centered on allegations that Defendants have wrongfully denied claims for reimbursement of health care benefits allegedly

- 3 -

1   due under ERISA Plans and the Medicare Advantage Plan.  Plaintiff alleges that it is required by

2   Federal and State law to provide "such care as is necessary to perform an appropriate medical

3   screening examination and stabilize the patient's emergency medical condition" with respect to

4   Kaiser Members seen in plaintiff Hospital's emergency departments. *State Court Complaint*, p.

5   3:12-13.  Plaintiff alleges that "Kaiser fails to properly pay claims submitted by the Hospital and

6   the Medical Group for emergency medical services rendered based on claims that the services

7   are not medically necessary, the patient was stable for transfer, and/or Hospital's charges are in

8   excess of the reasonable and customary value of the services provided." *Id.*, p. 3:19-23.

9          10.    On the basis of the foregoing allegations, Plaintiff alleges the following causes of

10  action:

11             **(a)     Breach of implied-in-law contract (first cause of action)** based on

12         Defendants' alleged failure to reimburse Plaintiff for "Emergency Medical Services

13         provided to Kaiser Members in order to stabilize Kaiser Members' emergency medical

14         conditions" as obligated under 42 C.F.R 422.113 and Health & Safety Code § 1371.4 for

15         Kaiser Members enrolled in the Medicare Advantage Plan and ERISA Plans;

16             **(b)     Breach of implied-in-fact contract (second cause of action)** for

17         Defendants' alleged failure "to pay, underpaying, or delaying payment" for "Emergency

18         Medical Services" provided pursuant to written contracts, known as "Policies", between

19         Defendants and Kaiser Members whereby Defendants are obligated to pay for the

20         reasonable and necessary emergency health care expenses incurred by Kaiser Members;

21             **(c)     Breach of contract (third cause of action)** based on Defendants' alleged

22         failure to reimburse Plaintiff for "benefits due [to Kaiser Members] under the Policies"

23         and assigned by Kaiser Members to Plaintiff;

24             **(d)     Breach of the covenant of good faith and fair dealing (fourth cause of**

25         **action)** implied in the Policies, based on Health Plan's alleged failure, for various

26         reasons, to pay benefits due under the Policies and assigned to Plaintiff by Kaiser

27         Members;

28

- 4 -

(e)     **Quantum meruit (fifth cause of action)** based on Defendant's alleged failure to pay the "reasonable value" of services provided to Kaiser Members receiving Emergency Medical Services pursuant to Plaintiff's implied agreement to treat Kaiser Members;

(f)     **Intentional interference with contract (sixth cause of action)** based on Defendants' alleged hindrance and disruption of the express and implied contracts between Plaintiff and Kaiser members who received Emergency Medical Services;

(g)     **Violation of Business and Professions Code § 17200, *et seq*. (seventh cause of action)** based on Defendants' alleged unfair, unlawful, and/or fraudulent activities that constitute or relate to the subject matter of Plaintiff's other causes of action and seeking damages for "unpaid bills for Emergency Medical Services, loss of supplies to provided Emergency Medical Services, and the costs to provide Emergency Medical Services to Kaiser Members."

11.     Regardless of Plaintiff's characterizations, each cause of action relates to Medicare and ERISA Plans, and seeks payment of benefits allegedly due under Medicare and ERISA Plans.

12.     The allegations against defendants KFH and SCPMG similarly relate to and seek benefits allegedly due under Medicare and ERISA Plans.  Thus, the State Court Complaint alleges that these defendants act on behalf of defendant Health Plan to deny Plaintiff's claims for reimbursement.  Plaintiff alleges "that at all times defendants, and each of them, were acting as agents and/or employees of each of the other defendants and doing each of the things herein alleged or acting within the scope of said agency." *State Court Complaint*, ¶ 7.  Plaintiff also alleges "that Kaiser Health Plan has delegated financial responsibility for some or all of the hospital services provided to Kaiser Members to Kaiser Hospitals and for some or all the medical services provided to Kaiser Members to SCPMG." *State Court Complaint*, ¶ 12.

13.     At no point in their State Court Complaint does Plaintiff exclude claims relating to Kaiser members under ERISA Plans or Kaiser members enrolled in the Medicare Advantage Plan.

- 5 -

14.    Plaintiff's claims are not based upon written or oral agreements between Plaintiff and Defendants.  Indeed, Plaintiff alleges that it is a "non-contracted provider[]."  *State Court Complaint*, ¶ 16(b).  Plaintiff's alleged contract causes of action are based on either supposed implied contracts or written assignment of Policies between Kaiser and its Members.  Plaintiff asserts no claims based on commercial contractual relationships with Defendants and instead pleaded causes of action based solely on its provision of services to Kaiser members enrolled in Medicare Advantage and ERISA Plans.

## I.    REMOVAL UNDER 28 U.S.C. § 1441(a) AND (b) – MEDICARE PREEMPTION

15.    All causes of action in Plaintiff's State Court Complaint allege claims for reimbursement for medical services provided to Kaiser Members enrolled in Kaiser's Medicare Advantage Plan.  These claims are completely preempted by Part C of the Medicare Act, 42 U.S.C. § 1395w21 *et seq.*, in accordance with the preemption provisions of 42 C.F.R. § 422.402 (2005) and 42 U.S.C. § 1395w-26(b)(3), as amended and expanded by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Public Law 108-173 (2003), and properly removable.

16.    Removal is appropriate under the complete preemption doctrine where a federal statute expressly preempts state law standards and provides exclusive federal remedies.  *See, e.g., Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058 (2003).  The Medicare Act and its regulations (1) expressly preempt Plaintiff's claims relating to Medicare members in all causes of action and (2) provide exclusive federal remedies.  Plaintiff's claims with respect to Medicare members are expressly preempted by the provisions of 42 C.F.R. § 422.402 and 42 U.S.C. § 1395w-26(b)(3).

17.    The Medicare Act also provides an exclusive federal remedy for claims pertaining to the improper denial or other administration of plan benefits as set forth in 42 U.S.C. § 405(g) and (h), 42 U.S.C. § 1395ff, 42 U.S.C. § 1395ii, 42 U.S.C. § 1395w-22(f) & (g), and 42 C.F.R. § 422.560 et al. (2005).  This mandatory administrative process applies to claims brought by Plaintiff as assignee of plan participants, as pleaded in the third and fourth causes of action, and also applies to any claims by providers, as pleaded in the remaining causes of action.  42 C.F.R.

- 6 -

1  § 422.113 (2005); 65 Fed. Reg. 40203 (2000) ("a dispute over whether the conditions for M+C

2  coverage for post-stabilization services under § 422.100 and § 422.113 have been met could be

3  resolved in an enrollee's appeal … or in an appeal by a provider"). Pursuant to 42 U.S.C. §

4  1395w-22(g)(5) and 42 U.S.C. § 1395ff, incorporating 42 U.S.C. § 405(g), the federal courts

5  have exclusive jurisdiction for review of claims once this mandatory administrative process has

6  been exhausted. Because the Medicare Act expressly preempts and provides the exclusive

7  remedy for Plaintiff's claims with respect to Kaiser members enrolled in the Medicare

8  Advantage Plan, the State Court Action is removable under the complete preemption doctrine.

9  *See Dial v. Healthspring of Ala., Inc.*, 501 F. Supp. 2d 1348 (S.D. Ala. 2007) (state law causes of

10  action completely preempted by Medicare Act and properly removable).

## II.    REMOVAL UNDER 28 U.S.C. § 1441(a) AND (b) – ERISA PREEMPTION

12          18.    As an alternative ground for removal, all causes of action in the State Court

13  Complaint are preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a). Plaintiff's claims

14  are completely preempted as they seek recovery of ERISA benefits that conflict with the

15  exclusive remedies provided in ERISA § 502, 29 U.S.C. § 1132. Because these causes of action

16  "relate to" ERISA employee benefit plans and constitute a claim under ERISA's civil

17  enforcement provisions, they are completely preempted by ERISA and the causes of action are

18  properly removable under 28 U.S.C. § 1441(a) and (b). *Aetna Health Inc. v. Davila*, 542 U.S.

19  200, 209, 124 S. Ct. 2488, 2496 (2004) (causes of action that fall within the scope of the ERISA

20  civil enforcement provision are removable to federal court due to § 502(a)'s "extraordinary pre-

21  emptive power"); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S. Ct. 1542, 1548

22  (1987) (although suit purported to raise only state law claims, it was properly removed to federal

23  court based on Congress' clearly manifested intent to make "causes of action within the scope of

24  the civil enforcement provision of § 502(a) removable"); *Cleghorn v. Blue Shield of California*,

25  408 F.3d 1222, 1225-26 (9th Cir. 2005) (state law cause of action under California Unfair

26  Competition Law, Cal. Bus. & Prof. Code § 17200 that sought benefits under ERISA plan was

27  completely preempted and properly removed).

28

-7-

19.    Additionally, Plaintiff's third and fourth causes of action allege standing as assignees of plan participants and seek benefits payable to the plan participant assignors under ERISA Plans, and are properly removable. *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986) (health care providers have derivative standing to sue as assignees of beneficiaries that receive medical care from providers); *Simon v. Value Behavior Health, Inc.* 208 F.3d 1073 (9th Cir. 2000) (recognizing holding in *Misic*). Plaintiff's claims in these and the other causes of action relate to ERISA plans, conflict with the exclusive enforcement provisions of ERISA, are completely preempted by ERISA § 514(a), 29 U.S.C. § 1144(a) and ERISA § 502, 29 U.S.C. § 1132, and are therefore properly removable. *Aetna*, 542 U.S. at 209; *Metropolitan Life Ins. Co.*, 481 U.S. at 66; *Cleghorn*, 408 F.3d at 1225-26.

### III.    REMOVAL UNDER 28 U.S.C. § 1442 – FEDERAL ACTOR

20.    As an alternative ground for removal, this Court has federal removal jurisdiction under 28 U.S.C. § 1442. Removal under § 1442(a)(1) is proper where a "person" acted under the direction of a federal officer and raises a colorable federal defense to Plaintiff's claims. *See, e.g.*, *Mesa v. California*, 489 U.S. 121, 139, 109 S. Ct. 959, 970 (1989) (federal officer removal under 28 U.S.C. § 1442(a) predicated upon averment of a federal defense); *Holton v. Blue Cross & Blue Shield of South Carolina*, 56 F. Supp. 2d 1347, 1351-52 (M.D. Ala. 1999) (court had jurisdiction under 1442(a)(1) where Blue Cross and Blue Shield, in administering a federal CHAMPUS plan "acted under the direction of the officers of the United States and agencies thereof, and acted under the color and authority of those officers"); *Manorcare v. Understein*, 2002 U.S. Dist. LEXIS 21488 (M.D. Fla. Oct. 16, 2002) (claims arising out of Medicare Act were properly removed to federal court under § 1442(a)(1) by a health plan administering Medicare Part C plan benefits). A "person" includes a corporation and a partnership and therefore encompasses the Defendants. *See Arness v. Boeing North American, Inc.*, 997 F. Supp. 1268, 1271-72 (C.D. Cal. 1998) (finding that a corporation is a "person" under § 1442(a)(1)); 1 U.S.C. § 1 (the word "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals).

- 8 -

21.     The Medicare Act, 42 U.S.C. § 1395, *et seq.*, establishes a federally funded health insurance program that is administered by the federal Centers for Medicare and Medicaid Services ("CMS") (formerly known as the Health Care Financing Administration) of the United States Department of Health and Human Services.

22.     Plaintiff's State Court Complaint alleges claims for reimbursement for medical and hospital services provided to Kaiser Members enrolled in the Medicare Advantage Plan. The claims allege impropriety for acts by Defendants that are directly supervised, regulated and approved by CMS under color of law and within their authority.

23.     At all times alleged in the State Court Complaint, Defendants were under contract with CMS through Medicare Advantage agreements to offer and administer a plan of health care benefits to Kaiser Members enrolled in Kaiser's Medicare Advantage Plan. The Medicare Advantage agreements require Defendants to comply with regulations promulgated by CMS in 42 C.F.R. § 422.113 concerning emergency and post-stabilization care.

24.     Throughout the complaint, Plaintiff challenges the propriety of Defendants' conduct concerning reimbursement for emergency and post-stabilization care under the Medicare Advantage Plan and in accordance with 42 C.F.R. § 422.113. *See, e.g., State Court Complaint* ¶ ¶ 22, 25, 64(a) and 64(c). This regulation applies only because the members are enrolled in Kaiser's Medicare Advantage Plan pursuant to its contract with CMS, the federal agency that administers the Medicare Program. The State Court Complaint seeks reimbursement for claims relating to benefits provided to Kaiser members enrolled in Kaiser's Medicare Advantage Plan. For example, the first cause of action specifically pleads that Defendants are obligated by 42 CFR § 422.113 to reimburse Plaintiff for Emergency Medical Services provided to Kaiser Members and that Plaintiff was not required to obtain authorization from Kaiser Health Plan prior to providing such services. Likewise, the seventh cause of action alleges, *inter alia*, that Defendants (1) failed to reimburse the Plaintiff "the reasonable and customary value of Emergency Medical Services and further stabilizing care provided to Kaiser Members *as they are required to do by the express provisions of 42 CFR § 422.113 . . . .*" and (2) failed "to follow the determination of the treating physician as to the stability of the patient *as they are required to*

- 9 -

1  *do by 42 CFR § 422.113(b)(3)* for Medicare HMO members . . . ." (emphasis added). *State*

2  *Court Complaint*, ¶ 64(a) and (c).

3       25.    Defendants' actions in authorizing or not authorizing post-stabilization care, and

4  in reimbursing or not reimbursing Plaintiff for such care, were performed under the direction of

5  the Medicare Advantage agreements with CMS and 42 C.F.R. § 422.113 and constitute acts that

6  are directly supervised, regulated and approved by CMS under color of law and within their

7  authority. Defendants' actions therefore constitute acts under the direction of a federal officer

8  within the meaning of 28 U.S.C. § 1442(a)(1).

9       26.    Defendants intend to assert among their defenses to all or part of Plaintiff's State

10  Court Complaint the following defenses based on federal law: (1) that Plaintiff's state law claims

11  with respect to Medicare members are barred by federal preemption (42 U.S.C. § 1395w-

12  26(b)(3); 42 C.F.R. § 422.402 (2005)); and (2) that Plaintiff's claims are barred for failure to

13  exhaust administrative remedies (42 U.S.C. § 405(g) and (h); 42 U.S.C. § 1395ii; 42 U.S.C.

14  § 1395w-22(f) and (g); 42 C.F.R. § 422.560 et al). Each of these defenses constitute a colorable

15  federal defense that supports removal under 28 U.S.C. § 1442.

16               **SUPPLEMENTAL JURISDICTION**

17       27.    Insofar as Plaintiff asserts any claims that are not within this Court's jurisdiction,

18  these claims are removable on the basis of this Court's supplemental jurisdiction. 28 U.S.C. §

19  1441(c); 28 U.S.C. § 1367.

20               **PROCEDURAL AVERMENTS**

21       28.    As required by section 28 U.S.C. § 1446, Plaintiff will be given notice of the

22  filing of this Notice of Removal, and a true and correct copy of this Notice of Removal will be

23  filed with the Clerk of the Superior Court of California for the County of San Diego.

24       29.    This Notice of Removal is accompanied by the required filing fee of $350.

25       30.    By filing this Notice, Defendants do not waive any defenses.

26

27

28

- 10 -

1

2

DATED: March 20, 2008

EPSTEIN BECKER & GREEN, P.C.

3

4

By: _William A. Helvestine_

5

William A. Helvestine

Andrew J. Hefty

6

Jamie S. Platto

Carri Becker Maas

7

Attorneys for Defendants

KAISER FOUNDATION HEALTH PLAN,

8

INC., KAISER FOUNDATION

HOSPITALS, and SOUTHERN

9

CALIFORNIA PERMANENTE MEDICAL

GROUP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

1.   At the time of service I was at least 18 years of age and **not a party to this legal action.**

2.   My business address is 1925 Century Park East, Suite 500, Los Angeles, California 90067-2506.

3.   I served copies of the following documents (specify the exact title of each document served):

   **NOTICE OF REMOVAL OF ACTION under 28 U.S.C. § 1441(a) and (b) and 28 U.S.C. § 1442(a)(1) and NOTICE OF JOINDER IN REMOVAL**

4.   I served the documents listed above in item 3 on the following persons at the addresses listed:

   Michael J. Sarrao, Esq.             *Attorneys for Plaintiff*
   Radha A. Savitala, Esq.
   5451 Walnut Avenue                 Tel. 909-464-8847
   Chino, CA 91710                    Fax 909-464-8887

5.   a. ☐   **By personal service.** I personally delivered the documents on the date shown below to the persons at the addresses listed above in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party delivery was made to the party or by leaving the documents at the party's residence between the hours of eight in the morning and six in the evening with some person not less than 18 years of age.

   b. ☐   **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 4 and *(specify one):*

      (1) ☐   deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid on the date shown below, or

      (2) ☐   placed the envelope for collection and mailing on the date shown below, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

   c. ☐   **By overnight delivery.** I enclosed the documents on the date shown below in an envelope or package provided by an overnight delivery carrier and addressed to the person at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

- 12 -

**d.** ☐  **By messenger service.**  I served the documents on the date shown below by placing them in an envelope or package addressed to the person on the addresses listed in item 4 and providing them to a professional messenger service for service. (A declaration by the messenger must accompany this proof of service or be contained in the Declaration of Messenger below.)

**e.** ☐  **By fax transmission.**  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents on the date shown below to the fax numbers of the persons listed in item 4.  No error was reported by the fax machine that I used.  A copy of the fax transmission, which I printed out, is attached.

**f.** ☐  **By e-mail or electronic transmission.**  Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent on the date shown below to the e-mail addresses of the persons listed in item 4. I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

6.    I served the documents by the means described in item 5 on *(date):* March 20, 2008

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____        _____            _____
DATE                              (TYPE OR PRINT NAME)                          (SIGNATURE OF DECLARANT)

### DECLARATION OF MESSENGER

☐  **By personal service.**  I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 4.  I delivered the documents on the date shown below to the persons at the addresses listed in item 4.  (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package, which was clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office.  (2) For a party, delivery was made to the party or by leaving the documents at the party's residence between the hours of eight in the morning and six in the evening with some person not less than 18 years of age.

At the time of service, I was at least 18 years of age.  I am not a party to the above referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):* _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____        _____            _____
DATE                              (TYPE OR PRINT NAME)                          (SIGNATURE OF DECLARANT)

- 13 -

Notice Of Removal Of Action
Case No. _____

BLUEBIRDonline.com (858) 477-0700   ALSI

Exhibit A

# TABLE OF CONTENTS

Exhibit A ................................................................................................................................15

Exhibit B ................................................................................................................................169





**CORPORATION SERVICE COMPANY**

TYS / ALL
Transmittal Number: 5608368
Date Processed: 02/19/2008

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Jenelle Flewellen<br>Kaiser Foundation Hospitals<br>One Kaiser Plaza<br>Floor 19L<br>Oakland, CA 94612-3610 |
| **Copy of transmittal only provided to:** | Sally Hitchcock<br>Tricia Neesen |

| | |
|---|---|
| **Entity:** | Kaiser Foundation Health Plan, Inc.<br>Entity ID Number 0460146 |
| **Entity Served:** | Kaiser Foundation Health Plan, Inc. |
| **Title of Action:** | Prime Healthcare Paradise Valley, LLC vs. Kaiser Foundation Health Plan, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | San Diego Superior Court, California |
| **Case Number:** | 37-2008-00068370-CU-NP-SC |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/19/2008 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | Michael J. Sarrao<br>909-464-8847 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:      500 Third Avenue
MAILING ADDRESS:      500 Third Avenue
CITY AND ZIP CODE:    Chula Vista, CA 91910-5649
BRANCH NAME:         South County
TELEPHONE NUMBER:    (619) 691-4400

PLAINTIFF(S) / PETITIONER(S):     Prime Healthcare Paradise Valley, LLC

DEFENDANT(S) / RESPONDENT(S):  Kaiser Foundation Health Plan, Inc et.al.

PRIME HEALTHCARE PARADISE VALLEY, LLC VS. KAISER FOUNDATION HEALTH PLAN, INC

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2008-00068370-CU-NP-SC |
|---|---|

Judge:  William S. Cannon                                    Department: S-04

COMPLAINT/PETITION FILED: 01/23/2008


**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Kaiser Foundation Health Plan, Inc., a California
corporation; Kaiser Foundation Hospitals, a
California corporation; Southern California
Permanente Medical Group, Inc., a California
corporation; and Does 1-100, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Prime Healthcare Paradise Valley, LLC, a Delaware
limited liability company doing business as Paradise
Valley Hospital

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>San Diego County Superior Court<br>330 W. Broadway<br><br>San Diego 92101<br>Hall of Justice | **CASE NUMBER:**<br>*(Número del Caso):* 37-2008-00068370-<br>CU-NP-SC |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael J. Sarrao, Bar No. 184871        909-464-8847    909-464-8887

5451 Walnut Avenue
Chino, CA 91710

DATE: _____  Clerk, by _____, Deputy
*(Fecha)*                        *(Secretario)*                   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Kaiser Foundation Health Plan, Inc., a california corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
& Plus

Code of Civil Procedure §§ 412.20, 465

**17**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael J. Sarrao, Bar No. 184871

5451 Walnut Avenue

Chino, CA 91710

TELEPHONE NO.: 909-464-8847    FAX NO.: 909-464-8887

ATTORNEY FOR *(Name):* Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

FILED
SOUTH COUNTY

2008 JAN 23 P 4: 10

CLERK-SUPERIOR COURT
SAN DIEGO COUNT, CA

CASE NAME: Prime Healthcare Paradise Valley, LLC. v.
Kaiser Foundation Health Plan, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2008-00068370-CU-NP-SC |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive

4. Number of causes of action *(specify):* 7

5. This case [ ] is [x] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 22, 2008

Michael J. Sarrao, Bar No. 184871
(TYPE OR PRINT NAME)    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

18

1 | Michael J. Sarrao – Bar No. 184871
Radha A. Savitala – Bar No. 225329
2 | 5451 Walnut Avenue
Chino, California 91710
3 | Telephone:    (909) 464-8847
Facsimile:    (909) 464-8887
4 |
5 | Attorneys for Plaintiff Prime Healthcare Paradise Valley, LLC
6 |
7 |
8 |                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                    **FOR THE COUNTY OF SAN DIEGO, SOUTH COUNTY DISTRICT**
9 |
10 |

**PRIME HEALTHCARE PARADISE**
11 | **VALLEY, LLC, a Delaware limited**
**liability company, doing business as**
12 | **Paradise Valley Hospital;**

13 |              **Plaintiff,**
**vs.**
14 |
**KAISER FOUNDATION HEALTH**
15 | **PLAN, INC.; a California corporation;**
**KAISER FOUNDATION HOSPITALS, a**
16 | **California corporation; SOUTHERN**
**CALIFORNIA PERMANENTE**
17 | **MEDICAL GROUP, INC., a California**
**corporation; and DOES 1-100, Inclusive**
18 |
              **Defendants.**
19 |
20 |

Case No. 37-2008-00068370-CU-NP-SC

**COMPLAINT FOR:**

1. **Breach of Implied-In-Law Contract**
2. **Breach of Implied-In-Fact Contract**
3. **Breach of Assigned Contract**
4. **Breach of Implied Covenant of Good
   Faith & Fair Dealing**
5. **Quantum Meruit**
6. **Intentional Interference with
   Contract**
7. **Violation of Bus. & Prof. Code §
   17200**

**DEMAND FOR TRIAL BY JURY**

21 |
22 |     Plaintiff Prime Healthcare Paradise Valley, LLC, a Delaware limited liability company,
23 | doing business as Paradise Valley Hospital (the "**Hospital**") hereby complains and alleges
24 | against defendants Kaiser Foundation Health Plan, Inc., a California corporation ("**Kaiser**
25 | **Health Plan**"), Kaiser Foundation Hospitals, a California corporation ("**Kaiser Hospitals**"),
26 | Southern California Permanente Medical Group, a business entity of unknown form
27 | ("**SCPMG**"), and Does 1 through 100, inclusive, as follows:
28 |

1

**COMPLAINT**

19

## INTRODUCTION

In an era where the rising costs of providing healthcare has forced many hospitals to close, file bankruptcy, reduce or eliminate services, or face other difficult decisions due to severe financial burdens imposed upon them, HMOs like Kaiser are generating profits at record highs. Indeed, at the same time that Kaiser has generated billions of dollars in profits, more than seventeen (17) hospitals have closed throughout Southern California including, but not limited to, Bellwood General Hospital in Bellflower, Northridge Hospital Medical Center in Van Nuys, Santa Teresita Hospital in Duarte, St. Luke's Medical Center in Pasadena, Robert F. Kennedy Medical Center in Hawthorne, Brea Community Hospital in Brea, and Granada Community Hospital in Granada Hills. In addition, several other hospitals, including Brea Community Hospital, Brotman Medical Center, Hemet Valley Medical Center, Menifee Valley Medical Center, Moreno Valley Medical Center, and Parkview Community Hospital have been forced to file bankruptcy.

In contrast to hospitals who have been forced to close, file bankruptcy, or who are struggling with the financial burdens imposed upon them, Kaiser reported profits of **$1.3 Billion** in 2006 and profits of **$2.5 Billion** in 2007 (an increase of more than 50% from 2006 profits). Not surprisingly, at the same time Kaiser has been generating billions of dollars in profits, the percentage of revenue Kaiser spends on medical and hospital expenses for patient care (commonly referred to as the Medical Loss Ratio ("MLR") has decreased from 93% of revenue in 2005, to 92.7% of revenue in 2006, and to 87.2% of revenue for the first six months of 2007. In other words, Kaiser is generating more profits while spending less on patient care. To make matters worse, Kaiser is not required to pay taxes on the billions of dollars in profits it has generated in light of its non-profit status. This is especially ironic since the only real difference between Kaiser and other for-profit HMOs is that Kaiser is not required to pay taxes. Indeed, many believe that Kaiser's profits are due to its aggressive and intractable approach to claims processing and a decision on the part of Kaiser to force hospitals and other healthcare providers to sue Kaiser if they want to receive fair and adequate reimbursement. In this regard, Kaiser has been sued in both Northern and Southern California by hospitals seeking to receive fair and

2

1    adequate reimbursement for services provided to Kaiser members as referenced by legal

2    proceedings commenced by Alvarado Hospital Medical Center, Providence Medical Center,

3    Community Hospital of Los Gatos, South Coast Medical Center, Glendale Adventist Medical

4    Center, Simi Valley Hospital, VacaValley Hospital, and North Bay Medical Center have all

5    recently instituted legal action against Kaiser to recover amounts due for healthcare services.

6    Plaintiffs also believe that several other prominent hospitals are engaged in legal disputes with

7    Kaiser and will be filing lawsuits in the near future.

8            Under Federal and State law, specifically, the Emergency Medical Treatment and Active

9    Labor Act ("**EMTALA**") and Health & Safety Code § 1317, the Hospital and those physicians

10   who staff the Emergency Department at the Hospital, must provide an appropriate medical

11   screening examination to each and every individual who seeks treatment at the Hospital and,

12   regardless of the patient's insurance or financial status, provide such care as is necessary to

13   stabilize the patient's emergency medical condition unless the patient refuses such care.  In

14   addition, the Hospital may not delay or deny a medical screening examination and necessary

15   stabilizing care in order to inquire about a person's insurance.  Neither Hospital nor the

16   physicians may deny or delay care to Kaiser Member simply because they are Kaiser Members.

17   As a result, Kaiser Members are regularly seen in Hospital's Emergency Department and receive

18   such care as is necessary to perform an appropriate medical screening examination and stabilize

19   the patient's emergency medical condition.  Unfortunately, despite its obligation to do so, Kaiser

20   fails to properly pay claims submitted by the Hospital and the Medical Group for emergency

21   medical services rendered based on claims that the services were not medically necessary, the

22   patient was stable for transfer, and/or Hospital's charges are in excess of the reasonable and

23   customary value of the services provided.  Since each of Kaiser's claims lack merit and Hospital

24   is owed more than $500,000.00 for providing emergency services to Kaiser Members, Hospital

25   has been forced to file this lawsuit in order to obtain proper reimbursement and avoid the

26   financial struggles faced by other hospitals and being forced with the decision as to whether to

27   reduce or limit services.

28

3

**COMPLAINT**

## PARTIES AND VENUE

1.    At all times herein mentioned, plaintiff Prime Healthcare Paradise Valley, LLC was and is now a Delaware limited liability company qualified to do business in the State of California with its principal place of business in the County of San Diego, State of California, doing business as Paradise Valley Hospital (the **"Hospital"**).

2.    Plaintiff is informed and believes and thereon alleges that at all times herein defendant Kaiser Foundation Health Plan, Inc. (**"Kaiser Health Plan"**), was and is now a California corporation qualified to do business in the State of California with its principal place of business in the County of Alameda, State of California.

3.    Plaintiff is informed and believes and thereon alleges that at all times herein defendant Kaiser Foundation Hospitals (**"Kaiser Hospitals"**), was and is now a California corporation qualified to do business in the State of California with its principal place of business in the County of Alameda, State of California.

4.    Plaintiff is informed and believes and thereon alleges that at all times herein defendant Southern California Permanente Medical Group (**"SCPMG"**) was and is now a business entity of unknown form qualified to do business in the State of California with its principal place of business in the County of Los Angeles, State of California.

5.    The true names and capacities of the defendants named herein as Does 1 through 100, inclusive, whether individual, corporate, associate, or otherwise are currently unknown to plaintiff and therefore plaintiff allege that each of these fictitiously named defendants is responsible in some manner for the events sued upon. Plaintiff will seek leave of this Court to amend the complaint to assert the true identities and capacities of the defendants named herein as Does 1 through 100, inclusive, when said identities and capacities have been ascertained.

6.    Hereinafter, unless otherwise indicated the terms "Defendants," "defendants," or "Kaiser" shall mean and refer to Kaiser Health Plan, Kaiser Hospitals, SCPMG, and Does 1 through 100, and each of them.

4

**COMPLAINT**

7.     Plaintiff is informed and believes and thereon alleges that at all times defendants, and each of them, were acting as agents and/or employees of each of the other defendants and doing each of the things herein alleged or acting within the scope of said agency.

8.     Plaintiff is informed and believes and thereon alleges that the contracts alleged herein were entered into in the County of San Diego, State of California, the contract was breached in the County of San Diego, State of California and within this judicial district, plaintiff's principal places of business are within this judicial district, and the damages arising out of said breach of contract and other causes of action alleged herein exceed the jurisdictional limits of any court such that this action is brought before this court in the proper forum and venue.

### GENERAL ALLEGATIONS

9.     The Hospital operates an three hundred and one (301) bed acute care hospital in National City, California which includes a twenty (20) bed emergency department which is staffed with trained physicians, licensed professionals including registered nurses, and other staff necessary to provide emergency medical services to those individuals who arrive at the Hospital either by ambulance and/or on their own accord.  Under Federal and State law, specifically, the Emergency Medical Treatment and Active Labor Act ("**EMTALA**") and Health & Safety Code § 1317, the Hospital and the physicians who staff the Emergency Department at the Hospital, must provide an appropriate medical screening examination to each and every individual who seeks treatment at the Hospital and, regardless of the patient's insurance or financial status, provide such care as is necessary to stabilize the patient's emergency medical condition unless the patient refuses such care.  In addition, the Hospital may not delay or deny a medical screening examination and necessary stabilizing care in order to inquire about a person's insurance.

10.     Plaintiff is informed and believes and thereon alleges that Kaiser Health Plan is a licensed health care service plan in the State of California which offers health insurance plans to individuals, including seniors, and employers for the benefit of their employees.  As a licensed health care service plan in the State of California, Kaiser Health Plan is subject to the

5

23

1  requirements set forth in the Knox-Keene Act as well as regulations promulgated by the

2  Department of Managed Health Care (**"DMHC"**) including those which regulate a health plan's

3  policies relating to reimbursement.  Kaiser Health Plan is also subject to Federal regulations

4  promulgated by the Center for Medicare & Medicaid Services (**"CMS"**) as it relates to Medicare

5  beneficiaries who have enrolled in Medicare HMOs offered by Kaiser Health Plan.  Although

6  Kaiser Health Plan routinely boasts about its non-profit status, the only real difference between

7  Kaiser Health Plan and other for profit HMOs is that Kaiser Health Plan is not required to pay

8  taxes.  Indeed, Kaiser is a profit oriented and profit-motivated organization that generates

9  substantial profits and pays generous salaries, perks, and bonuses to its executives and

10  employees.  Recently, Kaiser Permanente reported profits at a staggering $2.5 Billion, which is a

11  fifty-three percent (53%) increase from the generated profits of more than $1.3 Billion in 2006.

12  At the same time, the financial statements reveal that the percentage of revenue spent by Kaiser

13  on medical and hospital expenses for patient care (commonly referred to as Medical Loss Ratios

14  (MLR)) has decreased from 93% of revenue in 2005 to 92.47% of revenue in 2006 to 87.2% of

15  revenue for the first six months of 2007.  This data demonstrates that Kaiser Health Plan is

16  spending less on patient care for its members while at the same time earning more profits.

17      11.    Plaintiff is informed and believes and thereon alleges that Kaiser Health Plan's

18  marketing materials include promises by Kaiser Health Plan that it will provide and/or arrange

19  for emergency medical services to those individuals who enroll in one of its health plans in

20  return for the individuals, or some third party, acting on their behalf, paying premiums to Kaiser

21  Health Plan for such benefits.  Hereinafter, those individuals who are enrolled in a health plan

22  offered by Kaiser Health Plan shall be referred to as "Kaiser Members".

23      12.    Plaintiff is informed and believes and thereon alleges that Kaiser Health Plan has

24  delegated financial responsibility for some or all of the hospital services provided to Kaiser

25  Members to Kaiser Hospitals and for some or all the medical services provided to Kaiser

26  Members to SCPMG.  Plaintiff is informed and believes that physicians who are employed by

27  SCPMG and/or are partners in SCPMG earn financial incentives/bonuses if the cost of care

28  provided to Kaiser Members is less than the premiums paid by or on behalf of Kaiser Members.

1  As a result, SCPMG physicians are financially motivated to provide less care to Kaiser

2  Members.

3      13.  ˙Like Kaiser Health Plan, Kaiser Hospitals is a non-profit corporation that avoids

4  paying taxes while at the same time being a financially lucrative corporation that is driven by

5  profits.  Indeed, data available from the Office of Statewide Health Planning and Development

6  ("**OSHPD**") indicates that despite owning and operating 29 hospitals with combined net revenue

7  in excess of $8 Billion, Kaiser Hospitals did not provide any charity care in 2005.

8      14.  The Hospital regularly provides emergency medical services, including care in the

9  emergency department and care provided on an inpatient basis necessary to stabilize a patient's

10  emergency medical condition, to Kaiser Members who arrive at the Hospital by ambulance or by

11  other means.  Hereinafter, these services shall be referred to as "Emergency Medical Services."

12  The Hospital provides a large proportion of the emergency medical services South Bay County

13  because its emergency department is on "diversion" dramatically less than other area hospitals.

14  "Diversion" denotes a situation where an emergency department notifies the local EMS agency

15  that its emergency department is closed to new ambulance traffic due to lack of empty beds in

16  the Emergency Department.

17      15.  Defendants operate a program known as the Emergency Provider Response

18  Program ("("**CMS**"),") which is staffed by physicians employed and/or contracted by SCPMG.

19  EPRP was purportedly developed to track care provided to Kaiser Members at non-Kaiser

20  facilities and to provide emergency department physicians at non-Kaiser facilities with access to

21  the medical records of Kaiser Members.  The physicians who staff EPRP do not act as Primary

22  Care Physicians for Kaiser Members and are not involved in the care of Kaiser Members either

23  before or after they seek to transfer Kaiser Members from a non-contracted hospital to Kaiser

24  facilities.  Rather, the sole purpose of the EPRP physicians is to effectuate transfers of Kaiser

25  Members to Kaiser facilities for financial reasons.  In this regard, plaintiff is informed and

26  believes and thereon alleges that the real goal of EPRP is to decrease the cost of medical care

27  provided to Kaiser Members and to transfer Kaiser Members to Kaiser facilities regardless of

28  whether the transfer is appropriate and in the best interest and safety of the patient and the

7

**COMPLAINT**

1  patient's medical condition so that defendants can earn more profits and SCPMG physicians can

2  earn larger bonuses.  For example, plaintiff is aware of instances where EPRP physicians

3  directed and caused the transfer of Kaiser Members from non-contracted hospitals to Kaiser's

4  facilities in order to save costs even though the services required by the Kaiser Members were

5  not readily available at Kaiser's facilities and Kaiser Members suffered serious adverse

6  consequences and even died during transport while at Kaiser's facilities due to the lack of readily

7  available services.

8       16.    Unfortunately for Kaiser Members and healthcare providers who provide

9  Emergency Medical Services to Kaiser Members, defendants have embarked on a course of

10  conduct which places defendants' financial interests over the well being of Kaiser Members and

11  puts the safety of Kaiser Members at risk.  Defendants' actions deprive healthcare providers of

12  the opportunity to be paid for Emergency Medical Services for which defendants have received

13  premium dollars, and deprive Kaiser Members from having access to emergency care.

14  Furthermore, defendants' actions are interfering with the efficient operations of emergency

15  departments throughout Southern California.  Plaintiff is informed and believes and thereon

16  alleges that Defendants' conduct includes, but is not limited to, the following:

17       a.    Defendants have failed and continue to fail to pay the Hospital for Emergency

18  Medical Services provided to Kaiser Members at the Hospital even though the Hospital is

19  required by Federal and State law, i.e., EMTALA and Health & Safety Code § 1317, to provide

20  such treatment and defendants are obligated by law to reimburse the Hospital for such services.

21  In fact, defendants even deny claims where a patient is directed by a Kaiser physician or Kaiser

22  representative to go to the Emergency Department at the Hospital and claims where Kaiser

23  Members were transported to the Emergency Department at the Hospital by ambulance.

24       b.    Defendants demand that non-contracted providers such as the Hospital contact

25  Kaiser's EPRP when Kaiser Members appear in the Emergency Department and to make such

26  contact before the member's emergency medical condition has been stabilized despite the

27  express requirements of Health & Safety Code § 1262.8 that a hospital shall not contact a

28  patient's HMO until such time as the patient's emergency medical condition is stabilized.

8

**COMPLAINT**

1      c.     Defendants restrict the ability of non-contracted providers to access medical

2  records for Kaiser Members prior to stabilization of the member's emergency medical condition

3  unless and until the non-contracted provider is willing to engage in discussions with EPRP about

4  the stability of the member for transfer and transferring the member to a Kaiser facility.  In other

5  words, any call to EPRP to access medical records is met by demands that Kaiser Members be

6  transferred even though in many instances the patient's emergency medical condition has not

7  been stabilized.

8      d.     Defendants demand that patients who arrive at the Hospital's Emergency

9  Department with an emergency medical condition be transferred to a Kaiser facility more than

10  eight (8) miles away even though the treating physician has determined that the patient's

11  emergency medical condition is not stabilized and it is the treating physician, not a physician on

12  the telephone, who is charged with the duty of making such a determination under federal and

13  state law.  Indeed, defendants attempt to rely on evaluations performed by either case managers

14  or a contracted physician who claims to have access to the patient's medical records, but who has

15  never actually seen the patient before or during the visit at issue to make such a determination

16  and demand the transfer of patients.  To make matters worse, neither defendants nor EPRP offer

17  to indemnify the Hospital and its physicians from any malpractice liability if the patient suffers

18  an adverse result during the transfer.  The threat of malpractice liability is real as plaintiffs are

19  aware of cases where non-contracted hospitals have been sued related to the inappropriate

20  transfer of Kaiser Members.  Likewise, neither defendants nor EPRP offer to indemnify the

21  Hospital and its physician if CMS, the agency that enforces EMTALA, later determines that the

22  patient was not stable for transfer such that the transfer constitutes a violation of EMTALA.

23      e.     Defendants unilaterally determine, without ever examining the patient, that the

24  patient is stable for transfer from the Hospital's emergency department to a Kaiser facility and

25  then begin harassing the patient, the patient's family, and/or the treating physician to

26  request/consent to the transfer of the patient to a Kaiser facility by making false statements.  In

27  particular, defendants falsely inform patients and/or the patients' family that the bill for the entire

28  visit will be the patient's responsibility unless they consent to the transfer.  Not only are these

9

**COMPLAINT**

1  statements patently false, they cause substantial harm to the patient's health and needlessly

2  subject the patients to additional stress while in the Emergency Department or in the Hospital.

3  Indeed, there have been instances where the blood pressure of Kaiser Members increased to

4  unsafe levels after they are harassed by defendants.

5       f.    Defendants routinely deny claims from the Hospital and its physicians for

6  Emergency Medical Services provided to Kaiser Members at the Hospital on the grounds that the

7  Hospital failed to obtain authorization for such services from EPRP even though such

8  authorization is not required and seeking such authorization prior to the stabilization of the

9  patient's emergency medical condition may expose the Hospital and its physicians to liability for

10  violation of EMTALA.  Plaintiff is further informed and believes that defendants have instructed

11  claims personnel to automatically not pay claims from the Hospital which pertain to inpatient

12  services regardless of whether the services are related to further stabilization of an emergency

13  medical condition.

14       g.    Defendants retroactively determine, without any basis in fact or medical opinion,

15  that Kaiser members who arrived and received treatment at the Hospital's emergency department

16  did not have an emergency medical condition and deny claims from the Hospital on these

17  grounds.  This denial is particularly appalling considering that under EMTALA, the Hospital is

18  required to provide a medical screening examination to every individual who is present in its

19  emergency department and provide such care as is necessary to stabilize the patient's emergency

20  medical condition.

21       h.    Defendants unilaterally determine, without ever having a physician examine the

22  patient, that Kaiser Members who have been admitted to the Hospital for further stabilizing care

23  of their emergency medical condition are stable for transfer to a Kaiser facility more than eight

24  (8) miles and then use such unilateral and arbitrary determinations to harass and intimidate

25  patients, patients' families, and physicians into requesting and/or consenting to such transfers.

26  For example, defendants' case managers have resorted to calling a treating physician at home to

27  demand that a patient who was critically ill and endotracheally intubated on ventilator support be

28  transferred to a Kaiser facility more than eight (8) miles away for the same level of care even

10

**COMPLAINT**

28

1  though the physician already determined the patient was not stable for transfer. Defendants'

2  employees also go to great lengths to call patients and/or their families to make threats of non-

3  payment of the claims if they do not consent to the transfer.

4          i.      Defendants engage in misleading tactics to delay and deny paying proper claims

5  submitted by the Hospital for Emergency Medical Services. These misleading tactics include,

6  but are not limited to, the following: (1) routinely requesting copies of every patient's medical

7  chart despite not needing the information to process the claims and statutes and regulations

8  which limit the amount of information which can and should be requested; (2) requesting that

9  medical records be sent to a specific location and then claiming that the medical records should

10 have been sent to another location which requires the Hospital to make another set of the medical

11 records; (3) requesting medical records be sent to a specific location and then denying receipt of

12 such records even though defendants signed for such records; and (4) requesting records which

13 are not necessary to process the claims. This conduct is especially troubling in light of the

14 HIPAA Privacy Rule, which became effective on April 14, 2003, and requires that "reasonable

15 efforts be made to limit protected health information to the minimum necessary to accomplish

16 the intended purposes of the use, disclosure or request." The Knox-Keene Act and its ensuing

17 regulations also provides that health plans requests for medical records should be limited to that

18 "reasonably relevant information" and defines "reasonably relevant information" to mean the

19 minimum amount of itemized, accurate and material information generated by or in the

20 possession of the provider related to the billed services that enables a claims adjudicator with

21 appropriate training, experience, competence and timely and accurate claims processing to

22 determine the nature, cost, if applicable and extent of the plan's or plan's capitated provider's

23 liability, if any, and to comply with any governmental requests.

24          j.      In those cases where the treating physician has determined that a Kaiser

25 Member's emergency medical condition is stabilized and defendants elect to transfer the member

26 to a Kaiser facility for financial reasons, Kaiser fails to effectuate the transfer within a reasonable

27 amount of times as required by Health & Safety Code § 1371.4(j)(1)(c) and instead there is an

28 unreasonable delay in the transfer of Kaiser Members from CVMC. These unreasonable delays

1  not only affect Kaiser Members who are forced to wait hours in the emergency department to be

2  transferred but also other patients who are forced to wait longer to be examined as much needed

3  emergency beds are being occupied by Kaiser Members waiting to be transferred.

4    k.    Defendants have not established a fast, fair, and cost-effective dispute resolution

5  mechanism to meaningfully process and resolve non-contracted provider disputes involving the

6  issue of whether care was "further stabilizing care" such that no prior authorization was required

7  or whether the care was "post-stabilization care" such that authorizations are required in certain

8  instances. To the contrary, defendants have implemented a system to deny all claims and

9  appeals involving the issue of "further stabilizing care" and post-stabilization care and have

10 resisted the Hospital's requests for a fast, fair, and cost-effective process to resolve these claims.

11 To make matters worse, plaintiff is informed and believes that defendants do not appropriately

12 forward denials of claims related to Medicare HMO Enrollees (Medicare + Advantage Plans) to

13 Maximus (Medicare's independent review entity) as they are required to do because they know

14 that Maximus will overrule their claims adjudication process and find in favor of plaintiff as has

15 been the case on numerous occasions. Rather, defendants hide behind technicalities by labeling

16 such denials as "partial denials" while in fact they are complete denials of the claims for

17 Emergency Services provided to Medicare + Advantage Plan members.

18    16.    Plaintiff is informed and believes and thereon alleges that defendants contract

19 with physicians including those affiliated with Affiliated Intensivist Network ("**AIN**"), some of

20 whom are not board certified, to care for patients admitted to non-contracted hospitals and then

21 deny that there is any relationship between defendants and these physicians and refuse to pay for

22 care ordered by these contracted physicians.

23    17.    Plaintiff is informed and believes and thereon alleges that the defendants' actions

24 outlined above are part of a larger scheme to reduce financial losses and otherwise profit at the

25 expense of Kaiser Members and those providers who provide emergency care to their members.

26 For example, in October 2006, George Halvorson, Kaiser's CEO, advised Kaiser employees that

27 they needed to join him in cutting costs as internal projections showed that Kaiser could lose

28 more than $7 Billion in the next two fiscal years. In November 2006, Justen Deal, a Kaiser

1  employee, raised concerns to Kaiser's Chief Compliance Officer and Kaiser's Board of

2  Directors, that Kaiser was recklessly spending more than $1.5 Billion in waste every year,

3  primarily on HealthConnect, an IT system being developed by Epic, and other inefficient and

4  ineffective information technology projects.  Plaintiff is informed and believes and thereon

5  alleges that rather than investigating and responding in good faith to the concerns raised by Mr.

6  Deal, Kaiser terminated his employment and attempted to sweep his complaints under the rug.

7  Mr. Deal's complaints are particularly relevant to the Hospital's assertions as one of Kaiser's

8  many responses to demands for payment of outstanding claims was that there were IT problems

9  or issues which caused claims processing problems.

10      18.    Plaintiff is informed and believes that it is not the only provider of Emergency

11  Medical Services that must deal with defendants' improper denial of claims for emergency

12  services and other improper conduct and that both healthcare providers and enrollees have had to

13  deal with such conduct.  During the period of April 1, 2005 to April 30, 2007 DMHC instituted

14  at least 19 different enforcement actions against Kaiser Health Plan to address various

15  deficiencies with Kaiser Health Plan's practices.  On April 28, 2006 DMHC conducted a non-

16  routine medical survey of Kaiser Health Plan to address the following six (6) deficiencies related

17  to emergency services provided by non-contracted hospitals: (1) when dealing with in-area, out-

18  of-network emergency services, Kaiser Health Plan repeatedly fails to resolve grievances within

19  30 calendar days of receipt; (2) when dealing with in-area, out-of-network emergency services,

20  Kaiser Health Plan repeatedly fails to acknowledge appeals/grievances within five calendar days

21  of receipt; (3) when dealing with in-area, out-of-network emergency services, Kaiser Health Plan

22  repeatedly fails to ensure adequate consideration of appeals/grievances; (4) when dealing with

23  in-area, out-of-network emergency services, Kaiser Health Plan repeatedly fails to allow

24  enrollees to submit enrollees/grievances verbally; (5) **when dealing with in-area, out-of-**

25  **network emergency services, Kaiser Health Plan repeatedly fails to pay for covered**

26  **emergency services** pursuant to the prudent layperson standard and repeatedly fails to apply the

27  prudent layperson standard pursuant to internal policies and procedures; and (6) when dealing

28  with in-area, out-of-network emergency services, Kaiser Health Plan repeatedly applies a clinical

13

1  standard not a "prudent layperson standard" until the employee appeals/grievances and Kaiser

2  Health Plan to requiring the enrollee to utilize the appeals/grievance system to demonstrate to the

3  Plan that he/she acted reasonably when seeking in-area, out-of-network emergency services.

4  Plaintiff's review of claims denied by defendants also suggests that defendants routinely denies

5  claims for emergency services when the patient presents with a condition for which there is no

6  doubt that the prudent layperson standard is met and for which the Federal government has

7  identified as automatic payments. On May 3, 2007, Kaiser entered into a Letter of Agreement by

8  which Kaiser agreed to pay a fine of $250,000.00 and submit a Corrective Action Plan to address

9  these deficiencies by May 1, 2007. A true and correct copy of the Survey and the Letter of

10 Agreement is attached hereto as Exhibit 1. Plaintiff is informed and believes that Kaiser Health

11 Plan has taken no steps to address the deficiencies outlined above and continues to routinely

12 deny claims for emergency services which clearly meet the prudent layperson standard and force

13 enrollees and providers to appeal denials of claims in order to obtain benefits they are entitled to

14 under the terms of their contract benefits with Kaiser Health Plan.

15    19.    Defendants' practices are not limited to the Hospital's but affect hospitals

16 throughout Southern California as evidenced by the case of South Coast Medical Center v.

17 Kaiser Permanente, OCSC Case No. 05CC12905, which involved claims by four hospitals

18 against Kaiser related to claims payment issues, and Alvarado Hospital Medical Center v. Kaiser

19 Foundation Health Plan, OCSC Case No. 06CC13335, which involved claims by thirty-seven

20 (37) different hospitals related to Kaiser's claims payment practices. True and correct copies of

21 face pages of these complaints are attached hereto as Exhibits 2 and 3.

22    20.    Plaintiff anticipates that rather than address the unfair, unlawful, and wrongful

23 practices described above as well as the more than $500,000.00 owed by defendants to the

24 Hospital, defendants will attempt to mislead the public and trier of fact by alleging, among other

25 things, that: (1) the Hospital fails to contact Kaiser's EPRP as soon as practicable after a patient

26 in the emergency department is identified as a Kaiser Member; (2) he Hospital violated Health &

27 Safety Code § 1262.8 by not calling EPRP prior to admitting Kaiser Members as inpatients; (3)

28 there are instances where Kaiser Members were admitted to the Hospital even though the treating

14

1  physician determined that the member's emergency medical condition has been stabilized; (4)

2  the Hospital has instituted policies to not transfer HMO patients; (5) the Hospital has increased

3  the volume of patients admitted through its emergency department; (6) the Hospital obstructs

4  communication with HMOs and misleads patients in order to leverage what should be short

5  emergency department visits into lengthy and expensive inpatient hospital visits; (7) the Hospital

6  refuses to obtain authorization for or cooperate in, the transfer of stable patients for post-

7  stabilization care; (8) the Hospital disrupts the continuity of patient care which is centered on the

8  integrated Kaiser care delivery system; (9) the Hospital falsely claims it called Kaiser internists

9  and Kaiser's on-call physicians and that care was authorized by these physicians; and (10) the

10  Hospital sends letters to Kaiser Members falsely informing them that defendants have

11  wrongfully denied payment and threatens the patients in order to secure payment.  These

12  allegations are nothing more than a last ditch effort on the part of defendants to avoid their

13  obligations to pay more than $500,000.00 in claims due to the Hospital.  The actual facts are as

14  follows:

15      (a)    Both Federal and State law provide that a medical screening examination and

16  necessary stabilizing care shall not be delayed in order to inquire about a patient's insurance

17  status and defendants' demand that the Hospital contact EPRP prior to the stabilization of a

18  Kaiser Member's emergency medical condition is contrary to Federal and State law and exposes

19  the Hospital to potential liability for EMTALA violations.

20      (b)    Health & Safety Code § 1262.8 requires a hospital, if the HMO meets certain

21  specified conditions, to contact the patient's HMO as soon as reasonably practicable "but not

22  until the patient's emergency medical condition is stabilized, as determined by the non-

23  contracting physician and surgeon at the time the emergency services and care are rendered."

24  There is no requirement to contact a patient's HMO prior to admission when the admission is

25  necessary to provide further stabilizing care.  Defendants refuse to recognize that admission as

26  an inpatient does not mean that a patient's emergency medical condition has been stabilized and

27  instead contend that if a patient is admitted, the patient's emergency medical condition is

28  stabilized.  In contrast to defendants, the Hospital complies with the law and waits to contact the

15

1 | patient's HMO until such time as the treating physician has determined that the patient's

2 | emergency medical condition has been stabilized, whether that occurs in the emergency

3 | department or as an inpatient;

4 |       (c)     The express terms of Health & Safety Code § 1262.8 provide that the

5 | requirements set forth therein do not apply to physician and surgeons such that the failure to

6 | contact defendants under Health & Safety Code § 1262.8 cannot be used a basis to deny the

7 | Hospital's claims.

8 |       (d)     While there may be isolated instances where the treating physician determined

9 | that the patient's emergency medical condition was stabilized but a transfer was not effectuated

10 | for other reasons, these instances are few and far between and pale in comparison to the

11 | hundreds of claims for which the Hospital is owed more than $500,000.00.

12 |       (e)     Unlike defendants, the Hospital does not allow patient care to be driven by

13 | defendants' statistics and percentages and instead provides that level of care which is necessary

14 | to treat each patient's emergency medical condition and errors on the side of caution when one

15 | considers the risk of transferring a patient to a facility when the patient is not stable for transfer.

16 | In any case, the Hospital does not admit patients rather than transfer them to Kaiser facilities in

17 | order to reap higher profits but instead admits patients because the patient's treating physician

18 | has ordered admission based on the patient's medical condition, the law requires them to do so,

19 | and defendants' actions have mandated it to do so in order to ensure that Kaiser Members are not

20 | inappropriately transferred to Kaiser facilities and are not forced to wait hours in a busy and

21 | crowded emergency department to be transferred to a Kaiser facility and other patients can be

22 | seen in the Emergency Department. In this regard, the Hospital's policy of not delaying

23 | admission when the treating physician determines further stabilizing care is necessary results not

24 | only in Kaiser patients being admitted for medically necessary care but also results in more

25 | patients, including uninsured and indigent patients, being seen in the Emergency Department and

26 | admitted as inpatients. In addition, there is no need to unnecessarily admit Kaiser Members

27 | because the Hospital operates at full capacity and is fully occupied on a regular basis.

28 |

1    (f)    Plaintiff has been forced to adopt certain policies and procedures related to the

2 transfer of HMO patients such as Kaiser Members in order to combat the overly aggressive and

3 inappropriate conduct of defendants and other HMOs that puts both the safety of patients at risk

4 and exposes plaintiff to substantial liability.  In particular, plaintiff is aware of and have

5 encountered situations where defendants and EPRP physicians have caused patients to be

6 transferred to Kaiser Facilities when the patients' emergency medical conditions were not

7 stabilized and/or the transfer to a Kaiser facility was not appropriate and in many instances

8 resulted in adverse consequences and even death to the Kaiser Member inappropriately

9 transferred.

10    (g)    The Hospital does not refuse to cooperate in the transfer of stable patients to

11 Kaiser facilities.  Rather, the Hospital simply complies with both Federal and State law and relies

12 on the determination of the treating physician as to whether a patient's emergency medical

13 condition is stabilized.  In those instances where the treating physician has determined that the

14 patient's emergency medical condition is stabilized but the patient cannot be discharged safely,

15 transfers are effectuated as evidenced by the transfer of hundreds of Kaiser enrollees from the

16 Hospital to a Kaiser facility.

17    (h)    Defendants have contracted with physician groups such as Affiliated Intensivist

18 Network ("AIN") to provide physicians, some of whom are not board certified, to provide care to

19 Kaiser Members admitted to the Hospital.  Based on the representations of these physicians, the

20 Hospital contacted the local physicians designated by AIN to seek additional direction as to the

21 appropriate care of a patient and provided the care ordered by these contracted physicians.  In

22 those instances where the AIN physicians were contacted and/or ordered care, the Hospital

23 notified patients that the care was ordered by the AIN Physicians.  Defendants refuse to pay for

24 the care ordered by these physicians and instead claim that these physicians have no authority to

25 act.  Plaintiff is also informed and believes and thereon alleges that defendants have terminated

26 contracts with certain physicians if they did not transfer enough patients to Kaiser facilities.

27    (i)    Plaintiff does not threaten Kaiser Members.  Rather, plaintiff has no choice but to

28 seek payment from Kaiser Members as defendants have failed to establish a fast, fair, and cost-

17

**COMPLAINT**

35

1  effective dispute resolution process to resolve disputes between defendants and the Hospital and

2  Kaiser Members are the only persons with the ability to influence defendants to fairly reimburse

3  the Hospital for Emergency Medical Services. This is especially true in those situations where

4  defendants fail to apply the Prudent Layperson Standard and deny claims on that basis.

5      (j)    Kaiser denies payment of claims submitted by the Hospital but pays non-

6  contracted physicians for the same services.

7  ### FIRST CAUSE OF ACTION

8  ### (Breach of Implied-In-Law Contract – The Hospital Against All Defendants)

9      21.    Plaintiff hereby repeats, repleads, and incorporates herein by reference each and

10  every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at this

11  point.

12      22.    Under both federal and state law, 42 CFR 422.113 and Health & Safety Code §

13  1371.4, Kaiser Health Plan was and is obligated to reimburse the Hospital for Emergency Medial

14  Services provided to Kaiser Members and the Hospital is not required to obtain an authorization

15  from Kaiser Health Plan prior to providing such services.

16      23.    Plaintiff is informed and believes and thereon alleges that Kaiser Health Plan

17  delegated a portion of its responsibility to reimburse the Hospital for such Emergency Medical

18  Services to Kaiser Foundation Hospitals and/or SCPMG.

19      24.    Within the past year, the Hospital has not had a written contract with defendants.

20      25.    By virtue of the obligations imposed by 42 CFR 422.113 and Health & Safety

21  Code § 1371.4, there exists and existed an implied-in-law contract between the Hospital on the

22  one hand and defendants on the other hand which obligated defendants to reimburse the Hospital

23  for the Emergency Medical Services provided to Kaiser Members in order to stabilize Kaiser

24  Members' emergency medical conditions.

25      26.    Within the past year, the Hospital has provided Emergency Medical Services and

26  care to Kaiser Members in order to stabilize their emergency medical conditions and submitted

27  complete claims to defendants for payment for such services. In the case of Kaiser Members

28  enrolled in Kaiser's Medicare HMO, the Hospital sought the applicable Medicare reimbursement

18

**COMPLAINT**



1    rate and in the case of Kaiser Members enrolled in a Commercial HMO, the Hospital sought the

2    reasonable and customary value of the services.

3        27.    Despite their obligations to do so under the implied-in-law contract, defendants

4    have failed and refused within the past two years to appropriately reimburse the Hospital for the

5    Emergency Medical Services provided by the Hospital to Kaiser Members.

6        28.    As a direct and proximate result of defendants' failure to perform under the terms

7    of the implied-in-law contract described above, the Hospital has suffered damages of at least

8    $500,000.00, the exact amount to be proven at the time of trial.

9                                **SECOND CAUSE OF ACTION**

10           **(Breach of Implied Contract – The Hospital Against All Defendants)**

11       29.    Plaintiff is hereby repeats, repleads, and incorporates herein by reference each and

12   every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at this

13   point.

14       30.    The Hospital is informed and believes and thereon alleges that at all relevant

15   times herein, certain individuals, including individuals who reside in the South Bay, had valid

16   written contracts with defendants whereby defendants are obligated to pay for the reasonable and

17   necessary emergency health care expenses incurred by Kaiser Members, wherever those

18   expenses are incurred.  Hereinafter, these written contracts shall be referred to as the "Policies".

19       31.    The Hospital is informed and believes and thereon alleges that defendants have

20   received and continue to receive valuable premium payments from the Kaiser Members and/or

21   on behalf of the Kaiser Members under the Policies.

22       32.    The Hospital is informed and believes and thereon alleges that the Policies are in

23   exclusive possession of defendants and/or the Kaiser Members.

24       33.    The Hospital is informed and believes and thereon alleges that the Policies were

25   entered into for the purpose of guaranteeing that Kaiser Members would have access to

26   emergency medical care and treatment at health care facilities and hospitals like the Hospital and

27   that defendants understood that said health care facilities would provide emergency medical care

28   to Kaiser Members in reliance of the existing Policies.  In particular, defendants knew or

                                        19

                                  **COMPLAINT**



1  reasonably should have known that Kaiser Members living and/or working in the South Bay

2  were likely to seek any necessary emergency medical care from a hospital in close proximity,

3  which in most cases would have been the Hospital. Indeed, Plaintiff is informed and believes

4  that defendants expressly instructed Kaiser Members to seek any necessary emergency medical

5  care at the nearest emergency room. In the case of most, if not all of the Kaiser Members,

6  defendants knew or should have known that the Hospital was likely to have the nearest and most

7  available emergency room in the South Bay.

8       34.     In consideration for the Hospital's implied agreement to treat Kaiser Members,

9  defendants implicitly agreed to pay and/or reimburse the Hospital for the reasonable expenses

10  incurred by Kaiser Members in the course of such treatment. Indeed, the Hospital and

11  defendants have agreed in a course of conduct consistent with this implied agreement.

12       35.     Within the past year, Kaiser Members received Emergency Medical Services at

13  the Hospital pursuant to the implied agreement with defendants.

14       36.     The Hospital has performed all of the obligations required of it under the implied

15  contract with defendants, except as otherwise may have been excused or prevented by

16  defendants.

17       37.     Defendants have breached said implied contract by failing to pay, underpaying, or

18  delaying payment to the Hospital for the Emergency Medical Services provided.

19       38.     As a direct and proximate result of defendants' breach of the implied agreement

20  as described herein, the Hospital has suffered damages of in excess of $500,000.00 plus interest

21  from the date the Emergency Medical Services were provided until entry of judgment, the exact

22  amount to be proven at the time of trial.

23                      **THIRD CAUSE OF ACTION**

24      **(Breach of Contract - Written Assignment – The Hospital Against All Defendants)**

25       39.     Plaintiff hereby repeats, repleads, and incorporates herein by reference each and

26  every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at this

27  point.

28

38

1     40.    The Policies obligated defendants to reimburse and/or pay for emergency medical

2  expenses incurred by the Kaiser Members in accordance with their terms.  When Kaiser

3  Members visited the Hospital to obtain Emergency Medical Services, they assigned, in writing,

4  to the Hospital their rights to any reimbursement and/or payment from defendants for Emergency

5  Medical Services (the "**Assignments**").

6     41.    Pursuant to the Assignments, Kaiser Members assigned direct payment to the

7  Hospital for all benefits otherwise payable to or on behalf of the Kaiser Members for

8  hospitalizations, including Emergency Medical Services.

9     42.    Within the past four years, the Hospital provided Emergency Medical Services to

10  the Kaiser Members and sought payment from defendants under the terms of the Assignments

11  and the Policies.

12     43.    Despite written demands from the Hospital, defendants have refused and failed to

13  pay amounts due to the Hospital and thus failed to provide the benefits due under the Policies.

14     44.    As a direct and proximate result of defendants breach of their obligations under

15  the Policies, the Hospital has suffered damages of at least $500,000.00 plus interest from the date

16  the services were rendered until entry of judgment, the exact amount to be proven at the time of

17  trial.

18                        **FOURTH CAUSE OF ACTION**

19  **(Breach of Implied Covenant of Good Faith & Fair Dealing – The Hospital against Kaiser**

20                     **Health Plan and Does 1 through 100)**

21     45.    Plaintiff hereby repeats, repleads, and incorporates herein by reference each and

22  every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at this

23  point.

24     46.    The Policies contain, implied in fact and law, a covenant of good faith and fair

25  dealing whereby Kaiser Health Plan covenanted that it would act in good faith and in the

26  exercise of fair dealing, deal fair with its members and their assignees, and honestly do nothing

27  to impair, interfere with, hinder, or potentially injure its members, or their assignees, rights under

28  the Policies.  The Hospital is an assignee of the benefits under the Policies.

**COMPLAINT**

47.    Within the past four (4) years, Kaiser Health Plan breached and continues to breach the implied covenant of good faith and fair dealing by, among other things, failing to pay claims for Emergency Medical Services provided at the Hospital by claiming that its members medical condition was not emergent, failing to apply the Prudent Layperson Standard to such a determination, failing to follow its own policies and procedures related to the Prudent Layperson Standard and the payment of Emergency Medical Services, failing to comply with "AutoPay Diagnosis" procedures, and unreasonably and unilaterally determining without any basis in fact that services provided at the Hospital were not emergent in nature and thus not paying the claims.

48.    As a direct and proximate result of Kaiser Health Plan's breach of the implied covenant of good faith and fair dealing, the Hospital has suffered damages of at least $500,000.00 plus interest from the date the services were rendered until entry of judgment, the exact amount to be proven at the time of trial.

49.    Plaintiff is informed and believes and thereon alleges that the conduct of Kaiser Health Plan as alleged herein was malicious, fraudulent, oppressive, and undertaken with a conscious disregard for the rights of its members and their assignees. Therefore, the Hospital is entitled to punitive damages according to proof at the time of trial.

## FIFTH CAUSE OF ACTION

### (Quantum Meruit – The Hospital Against All Defendants)

50.    Plaintiff hereby repeats, repleads, and incorporates herein by reference each and every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at this point.

51.    In consideration for the Hospital's implied agreement to treat Kaiser Members, defendants implicitly agreed to reimburse the Hospital for reasonable expenses incurred by Kaiser Members in the course of such treatment. Indeed, the Hospital and defendants have engaged in a course of conduct consistent with this implied agreement.

22

**COMPLAINT**

40

52. Within the past three (3) years, Kaiser Members received Emergency Medical Services at the Hospital. The Hospital provided such Emergency Medical Services pursuant to the implied agreement with defendants.

53. The Hospital is informed and believes and thereon alleges that defendants knew or should have known that a health care provider such as the Hospital was or would be providing Emergency Medical Services to Kaiser Members and would be doing so with the expectation of payment. Indeed, defendants implicitly requested that the Hospital provided Emergency Medical Services to Kaiser Members.

54. The Hospital is informed and believes and thereon alleges that defendants knew that they would be obligated to pay for Emergency Medical Services provided to Kaiser Members.

55. The reasonable value of the services provided for the benefit of defendants is a sum not less than $500,000.00, the exact amount to be proven at the time of trial.

## SIXTH CAUSE OF ACTION

### (Intentional Interference with Contract – The Hospital Against All Defendants)

56. Plaintiff hereby repeats, repleads, and incorporates herein by reference each and every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at this point.

57. The Hospital and Kaiser Members who received Emergency Medical Services at the Hospital were parties to express and implied contracts regarding the payment for services provided by the Hospital to the Kaiser Members.

58. Defendants knew of the express and implied contracts as well as their contents.

59. During the past three (3) years, defendants intended to disrupt or hinder the performance of the express and implied contracts by, among other things, making false statements to Kaiser Members that the Hospital was not communicating with defendants and thus the Hospital had no right to bill Kaiser Members for services rendered and harassing Kaiser Members while they were patients at the Hospital.

23

60.    The intentional acts of defendants have made performance under the express and implied contracts more difficult and expensive and have thus interfered with these contracts.

61.    The Hospital suffered damages as a result of the defendants' conduct in an amount to be proven at the time of trial.

62.    The conduct of defendants was a substantial factor in causing the Hospital's harm.

## SEVENTH CAUSE OF ACTION

### (Violation of Business & Professions Code § 17200 et. Seq. –

### The Hospital Against All Defendants)

63.    Plaintiff hereby repeats, repleads, and incorporates herein by reference each and every allegation contained in paragraphs 1 through 19, inclusive, as though fully set forth at this point.

64.    Within the past six (6) years, defendants have engaged in the following unfair, unlawful, and/or fraudulent activities in violation of Business and Professions Code section 17200:

(a)    Failing to reimburse the Hospital the reasonable and customary value of Emergency Medical Services and further stabilizing care provided to Kaiser Members as they are required to do by the express provisions of 42 CFR § 422.113 and Health & Safety Code § 1371.4;

(b)    Demanding that the Hospital contact EPRP prior to the stabilization of a Kaiser Member's emergency medical condition despite the express language of Health & Safety Code § 1262.8 which provides that a non-contracted provided shall not contact a patient's HMO until such time as the patient's emergency medical condition has been stabilized as determined by the treating physician;

(c)    Failing to follow the determination of the treating physician as to the stability of the patient as they are required to do by 42 CFR § 422.113(b)(3) for Medicare HMO members and Health & Safety Code § 1262.8 for Commercial HMO members;

24

**COMPLAINT**

1        (d)    Failing to establish a fast, fair, and cost-effective dispute resolution process to

2 resolve disputes between defendants and the Hospital as to whether care represents "further

3 stabilizing care" or "post-stabilization care" as they are required to do by 28 CCR § 1300.71.38;

4        (e)    Failing to promptly transfer Kaiser Members who have been deemed stable for

5 the treating physician as they are required to do by Health & Safety Code §1371.4;

6        (f)    Failing to make medical records of Kaiser Members available to treating

7 physicians prior to stabilization of the patient's emergency medical condition as they are

8 required to do by Health & Safety Code § 1371.4 unless and until the treating physician is

9 willing to discuss the transfer of the patient prior to stabilization of the patient's emergency

10 medical condition with EPRP; and

11        (g)    Implementing policies to not pay any portion of claims from the Hospital related

12 to inpatient care regardless of whether the care relates to further stabilizing care.

13        65.    The Hospital has suffered damages as a result of defendants' unlawful conduct in

14 the form of, among other things, unpaid bills for Emergency Medical Services, loss of supplies to

15 provide Emergency Medical Services, and the costs to provide Emergency Medical Services to

16 Kaiser Members.

17        66.    Defendants' unlawful conduct has caused a loss of property by the Hospital which

18 has benefited defendants since Kaiser Members have paid defendants premiums to provide for

19 care and the Hospital has lost supplies in order to provide such care.

20        67.    The Hospital seeks restitution from defendants in the amount of property loss to

21 provide Emergency Medical Services to Kaiser Members.

22        68.    The Hospital seeks a preliminary and permanent injunction against defendants

23 which prohibits defendants from engaging in such unlawful, unfair, and/or fraudulent conduct.

24        **WHEREFORE**, Plaintiff prays for judgment as follows:

25        <u>On the First, Second, Third, and Fifth Causes of Action</u>

26        1.    For damages in an amount to be proven at the time of trial;

27        2.    For attorneys' fees as permitted by law;

28        3.    For costs of suit; and

25

**COMPLAINT**

1    4.    For such other and further relief as the court deems just and proper.

2    On the Fourth and Sixth Causes of Action

3    1.    For damages in an amount to be proven at the time of trial;

4    2.    For punitive damages;

5    3.    For attorneys' fees as permitted by law;

6    4.    For costs of suit; and

7    5.    For such other and further relief as the court deems just and proper.

8    On the Seventh Cause of Action

9    1.    For an order of restitution;

10    2.    For an order requiring defendants to reimburse the Hospital the reasonable and

11    customary value of Emergency Medical Services provided to Kaiser Members as they are

12    required to do by the express provisions of 42 CFR § 422.113 and Health & Safety Code §

13    1371.4;

14    3.    For an order prohibiting defendants from demanding that the Hospital contact

15    EPRP prior to the stabilization of a Kaiser Member's emergency medical condition;

16    4.    For an order requiring defendants to abide by the determination of the treating

17    physician as to the stability of the patient as they are required to do by 42 CFR § 422.113(b)(3)

18    for Medicare HMO members and Health & Safety Code § 1262.8 for Commercial HMO

19    members;

20    5.    For an order requiring defendants to establish a fast, fair, and cost-effective

21    dispute resolution process to resolve disputes between defendants and the Hospital as to whether

22    care represents "further stabilizing care" or "post-stabilization care" as they are required to do by

23    28 CCR § 1300.71.38;

24    6.    For an order requiring defendants to promptly transfer Kaiser Members who have

25    been deemed stable for the treating physician as they are required to do by Health & Safety Code

26    §1371.4;

27    7.    For an order requiring defendants to make medical records of Kaiser Members

28    available to treating physicians prior to stabilization of the patient's emergency medical

26

**COMPLAINT**

condition as they are required to do by Health & Safety Code § 1371.4 without any obligation on the part of the treating physician to discuss the transfer of the patient prior to stabilization of the patient's emergency medical condition; and

8.    For an order requiring defendants to eliminate any policies to not pay any portion of claims from the Hospital related to inpatient care regardless of whether the care relates to further stabilizing care.

**MICHAEL J. SARRAO, ESQ.**
**RADHA A. SAVITALA, ESQ.**

Dated: January __22__, 2008

By: _____
      Michael J. Sarrao
      Attorneys for Plaintiff Prime Healthcare Paradise
      Valley, LLC

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury.

**MICHAEL J. SARRAO, ESQ.**
**RADHA A. SAVITALA, ESQ.**

Dated: January __22__, 2008

By: _____
      Michael J. Sarrao
      Attorneys for Plaintiff Prime Healthcare Paradise
      Valley, LLC

27

**COMPLAINT**

45

Exhibit 1

# DEPARTMENT OF MANAGED HEALTH CARE
# CALIFORNIA HMO HELP CENTER
# DIVISION OF PLAN SURVEYS



## FINAL REPORT

## NON-ROUTINE MEDICAL SURVEY

### OF

## KAISER FOUNDATION HEALTH PLAN, INC.

## A FULL SERVICE HEALTH PLAN

**DATE ISSUED TO PLAN: APRIL 28, 2006**
**DATE ISSUED TO PUBLIC FILE: MAY 8, 2006**



47

**Final Report of a Non-Routine Medical Survey**
**Kaiser Foundation Health Plan, Inc.**
**A Full Service Health Plan**

## <u>TABLE OF CONTENTS</u>

EXECUTIVE SUMMARY ............................................................................................... 1

I.  SURVEY DEFICIENCIES AND CORRECTIVE ACTIONS ................................. 3

II. SURVEY CONCLUSION ............................................................................... 14

APPENDICES:

A. LIST OF SURVEYORS.................................................................................. 15

B. LIST OF STAFF INTERVIEWED .................................................................. 16

C. APPLICABLE STATUTES AND REGULATIONS ............................................. 17

D. DETAILED CORRECTIVE ACTION PLAN...................................................... 21

FILE NO: 933-0055

48

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

## EXECUTIVE SUMMARY

The California Department of Managed Health Care (the "Department") conducted a non-routine medical survey of Kaiser Foundation Health Plan, Inc. (the "Plan") pursuant to Section 1382(b) and Rule 1300.82.1(a) and (b)[1]. The Department notified the Plan in a letter dated November 18, 2005 of its intent to conduct a non-routine medical survey. The Department requested pre-on-site documentation from the Plan on November 28, 2005. The non-routine survey was conducted at the Plan's administrative office in Oakland, California on December 12-14, 2005.

The Department initiated this non-routine survey of the Plan for two reasons. First, over the past three to four years, the Department's HMO Help Center has evaluated a number of cases concerning the Plan's application of the "prudent layperson standard" in processing out-of-network emergency claims and noted a pattern in the number of previous decisions the Plan overturned once the enrollee complained to the Department.

Second, previous medical surveys suggest the Plan did not apply the "prudent layperson standard" until after the enrollee filed an appeal with the Plan. To further investigate the issue, the Department reviewed in-area, out-of-network emergency service appeals as part of the routine medical survey conducted in October and November 2005. Unfortunately, administrative delays and incomplete information resulted in an invalid file sample and invalid results. A non-routine survey was scheduled which afforded the Department an in-depth review of the Plan's system for processing in-area, out-of-network emergency service appeals.

The Preliminary Report of the survey findings was sent to the Plan on February 3, 2006. The Plan was required to submit a response to the Preliminary Report within 30 days of receipt of the Preliminary Report. The Plan submitted its response to the Department on March 8, 2006.

The Department found the corrective actions detailed by the Plan were non-responsive to the Preliminary Report. The Department held a meeting with Kaiser representatives on March 28, 2006 to discuss the Plan's response. This Final Report represents the Department's determination regarding the deficiencies identified during the non-routine survey, based on the Plan's submitted documents and additional discussions with Plan representatives.

A COPY OF THIS REPORT HAS BEEN REFERRED TO THE DEPARTMENT'S OFFICE OF ENFORCEMENT.

---

[1] References throughout this report to "Section ___" are to sections of the Knox-Keene Health Care Service Plan Act of 1975, as Amended [California Health and Safety Code Section 1340 *et seq.* ("the Act") References to "Rule ___" are to the regulations promulgated pursuant to the Act [Title 28 of the California Code of Regulations, beginning at Section 1300.43 and transferred to the Department of Managed Health Care pursuant to Health and Safety Code section 1341.14 ("the Rules")].

Final Report of a Non-Routine Medical Survey                                2
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006


## Survey Methodology

The non-routine survey was conducted to review, analyze, and evaluate the Plan's system for processing in-area, out-of-network emergency service appeals. The Department reviewed a random selection of 336 appeals files selected from the Plan's appeal log and Plan Regulatory complaint files. Information reviewed included, but was not limited to:

- Initial denial letters,
- Grievance resolution letters,
- Member appeal letters,
- Acknowledgement letters,
- Physician Review Form Commercial,
- Special Services Grievance Form,
- Case Summary Reports,
- System screen prints, and
- Emergency department medical records for the period January 1, 2004 through June 30, 2005.

During the on-site visit, the Department requested 61 additional files for review to assess the frequency of overturn decisions once the enrollee complained to the Department. File samples were taken from both Northern and Southern California operations.

Refer to Appendix A for a list of Department staff conducting this survey. Refer to Appendix B for a list of Plan officers and staff interviews. Refer to Appendix C for legal citations.

## Survey Results

The Department identified six compliance deficiencies during this non-routine survey (see Section I. Table 1). The Plan has begun corrective actions to address these deficiencies; however, based on the Plan's response, the Plan requires a longer time to achieve full compliance. The Plan will confirm full compliance by July 31, 2006. Therefore, none of the deficiencies have been corrected as of the date of this report.

Final Report of a Non-Routine Medical Survey                                    3
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

# I. SURVEY DEFICIENCIES AND CORRECTIVE ACTIONS

Table 1 below lists deficiencies identified during the survey and the status of correction. Based on the preliminary report, the Plan was instructed to: (a) develop and implement a corrective action plan for each deficiency, and (b) provide the Department with evidence of the Plan's completion of or progress toward implementing those corrective actions.

### TABLE 1

| SUMMARY OF DEFICIENCIES | | |
|---|---|---|
| **#** | **DEFICIENCY STATEMENT** | **STATUS** |
| GRIEVANCES AND APPEALS | | |
| 1 | When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to resolve appeals/grievances within **30 calendar days of receipt.** [Section 1368(a)(1) and Rule 1300.68(a)] | Not Corrected |
| 2 | When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to acknowledge appeals/grievances **within five calendar days of receipt.** [Section 1368(a)(4)(A) and Rule 1300.68(d)(1)] | Not Corrected |
| 3 | When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to ensure adequate consideration of appeals/grievances. [Section 1368(a)(1)] | Not Corrected |
| 4 | When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to allow enrollees to submit appeals/grievances verbally. [Section 1368(a)(1), Rule 1300.68(b)(1) and 1300.68(b)(4)] | Not Corrected |
| 5 | When dealing with in-area, out-of-network emergency service appeals/grievances, the Plan repeatedly fails to pay for covered emergency services pursuant to the prudent layperson standard. The Plan also repeatedly fails to apply the prudent layperson standard pursuant to internal policies and procedures. [Section 1371.4(c)] | Not Corrected |
| 6 | When dealing with in-area, out-of-network emergency services, the Plan repeatedly applies a clinical standard not a "prudent layperson standard" until the enrollee appeals/grieves. The Plan is requiring the enrollee to utilize the appeals/grievance system to demonstrate to the Plan that he/she acted reasonably when seeking in-area, out-of-network emergency services. [Sections 1367.01(b) and 1371.4(c)] | Not Corrected |

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey                                    4
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

The following details the Department's preliminary findings, the Plan's corrective actions and the Department's findings concerning the Plan's compliance efforts.

## GRIEVANCES AND APPEALS

**Deficiency #1:**     **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to resolve appeals/grievances within 30 calendar days of receipt.**

**Documents Reviewed:**
- 336 appeal files and 61 Plan Regulatory complaint files
- Commercial Grievance Process Policy and Procedures
- California Division Health Plan Clinical Review Department Policy and Procedures
- Complaint, Grievance and Appeals Process and Resolution Policy and Procedures
- Health Plan Clinical Review Appeals Process
- Health Plan Clinical Review Organization Chart

**Criteria:** Section 1368(a)(1) and Rule 1300.68(a)

**Conditions:** The Department reviewed 336 appeal files and 61 Regulatory complaint files. Out of the 397 files reviewed, 30 files contained resolution letters sent later than the 30 days after the Plan received the appeal.

**Implications:** Timely resolution of appeals is an essential component of a fair and effective grievance system.

**Corrective Action:** Pursuant to Rule 1300.80.10, the Plan is directed to submit evidence that it consistently resolves all appeals for in-area, out-of-network emergency services within 30 calendar days and provides the enrollee with a written resolution within the statutory requirements.

**Plan's Compliance Effort:** The Plan has undertaken a comprehensive review statewide of the existing hand-off procedures between the Member Services Department and the Claims Department. The Plan has identified opportunities to improve the process so that appeal/grievances are resolved and a written resolution is issued to the enrollee within the statutory time frames. (Note: A comprehensive description of the Plan's compliance effort is listed in Appendix D.)

**The Plan Submitted the Following Documents:**
- Commercial Grievance Process, Health Plan Clinical Review
- California Division Health Plan Clinical Review Department Policy and Procedure
- Oversight of Clinical Review Staff, Clinical Review Department
- N.E.D. Policy, Clinical Review Department
- Quality Improvement Policy and Procedure
- Pay Rules, Clinical Review

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

5

**Department's Finding Concerning Plan's Compliance Effort:**

**STATUS:  NOT CORRECTED**

The Department finds the deficiency has not been fully corrected.  The Department found the Plan made a significant effort to address the deficiency.  However, the Plan's corrective action plan set a date of July 31, 2006 to complete full implementation of corrective actions, demonstrating full compliance.

The Department found policy and procedure revisions incomplete.  Policy review is suggested in the following areas:

- Monthly Grievance Audits, including validation of audit methodology
- Daily monitoring of open grievance cases by the Special Services Clinical Review Department

---

**Deficiency #2:**      **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to acknowledge appeals/grievances within five calendar days of receipt.**

**Documents Reviewed:**
- 336 appeal files and 61 Plan Regulatory complaint files
- Commercial Grievance Process Policy and Procedures
- California Division Health Plan Clinical Review Department Policy and Procedures
- Complaint, Grievance and Appeals Process and Resolution Policy and Procedures
- Health Plan Clinical Review Appeals Process
- Health Plan Clinical Review Organization Chart

**Criteria:**  Section 1368(a)(4)(A) and Rule 1300.68(d)(1)

**Conditions:**  The Department reviewed 336 appeal files and 61 Regulatory complaint files.  Out of the 397 files reviewed, 40 files contained acknowledgement letters sent later than five calendar days after the Plan received the appeal.

**Implications:**  Timely acknowledgement of appeals is an essential component of a fair and effective grievance system.

**Corrective Action:**  As referenced in Rule 1300.80.10, the Plan is directed to submit evidence that it consistently acknowledges all appeals for in-area, out-of-network emergency services within five calendar days of receipt.

**Plan's Compliance Effort:**  The Plan has undertaken a comprehensive review statewide of the existing hand-off procedures between the Member Services Department and the Claims

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey                                          6
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

Department and has identified opportunities to improve the process so that appeals/grievances are acknowledged with a letter to the enrollee within the statutory time frames. (Note: A comprehensive description of the Plan's compliance effort is listed in Appendix D.)

**The Plan Submitted the Following Documents:**
- Commercial Grievance Process, Health Plan Clinical Review
- California Division Health Plan Clinical Review Department Policy and Procedure
- Oversight of Clinical Review Staff, Clinical Review Department
- N.E.D. Policy, Clinical Review Department
- Quality Improvement Policy and Procedure
- Pay Rules, Clinical Review

**Department's Finding Concerning Plan's Compliance Effort:**

**STATUS: NOT CORRECTED**

The Department finds this deficiency has not been fully corrected.

The Plan has begun a process improvement initiative to ensure appeals/grievances are acknowledged timely. The Plan states evidence will not be submitted to demonstrate compliance until July 31, 2006.

The Department found policy and procedure revisions incomplete. Policy review is suggested in the following areas:

- Monthly Grievance Audits, including validation of audit methodology
- Daily monitoring of open grievance cases by the Special Services Clinical Review Department

---

**Deficiency #3:**    **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to ensure adequate consideration of appeals/grievances.**

**Documents Reviewed:**
- 336 appeal files and 61 Plan Regulatory complaint files
- Commercial Grievance Process Policy and Procedures
- California Division Health Plan Clinical Review Department Policy and Procedures
- Complaint, Grievance and Appeals Process and Resolution Policy and Procedures
- Health Plan Clinical Review Pay Determination Process
- Health Plan Clinical Review Appeals Process
- Health Plan Clinical Review Organization Chart
- Health Plan Auto Pay Catalog

**Criteria:** Section 1368(a)(1)

FILE NO: 933-0055

54

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

**Conditions:**   The information commonly used in making initial payment decisions (e.g. medical records, triage notes, nurses notes, physicians dictated notes, diagnostic laboratory and radiology reports), was not reviewed by the Plan during the appeal/grievance review. Information in several files demonstrated the Plan waited until the enrollee complained to the Department to review the documents within the file.

**Implications:**   A complete and thorough review of all available information is necessary in making the final determination of the appeals/grievances for in-area, out-of-network emergency services.

**Corrective Action:**   As referenced in Rule 1300.80.10, the Plan is directed to submit evidence of a complete and accurate clinical review of claims for in-area, out-of-network emergency services during the initial claims review.

**Plan's Compliance Effort:** The Plan has begun a number of process changes to ensure complete review of claims for in-area, out-of-network emergency services during the initial claims process.  (Note: A comprehensive description of the Plan's compliance effort is listed in Appendix D.)

**The Plan Submitted the Following Documents:**
- Commercial Grievance Process, Health Plan Clinical Review
- California Division Health Plan Clinical Review Department Policy and Procedure
- Oversight of Clinical Review Staff, Clinical Review Department
- N.E.D. Policy, Clinical Review Department
- Quality Improvement Policy and Procedure
- Pay Rules, Clinical Review

**Department's Finding Concerning Plan's Compliance Effort:**

**STATUS: NOT CORRECTED**

The Department finds this deficiency has not been fully corrected.  The Plan's full compliance is expected by July 31, 2006.

---

**Deficiency #4:**        **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to allow enrollees to submit appeals/grievances verbally.**

**Documents Reviewed:**
- 336 appeal files and 61 Plan Regulatory complaint files
- Commercial Grievance Process Policy and Procedures
- California Division Health Plan Clinical Review Department Policy and Procedures
- Complaint, Grievance and Appeals Process and Resolution Policy and Procedures

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey                                      8
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006


- Health Plan Clinical Review Appeals Process
- Health Plan Clinical Review Organization Chart
- Health Plan Appeals Intake Data, January 1, 2004 through June 30, 2005

**Criteria:** Section 1368(a)(1) and Rule 1300.68(b)(1) and 1300.68(b)(4)

**Conditions:**
- The Department conducted a series of follow-up telephone calls to the Plan's customer service 800 number to test the implementation of allowing enrollees to submit appeals/grievances verbally. The telephone calls were made between April 11 - 26, 2006. The following summarizes the conversations from each call placed by the Department.

| Call Date | Results of Call |
|---|---|
| 4/11/06 | The Plan representative stated in-area, out-of-network emergency service appeals would need to be submitted in writing. The mailing address was provided. |
| 4/14/06 | The Plan representative stated in-area, out-of-network emergency service appeals would need to be submitted in writing. The mailing address was provided. |
| 4/17/06 | The Department notified the Plan representative that the telephone call was from the Department. The Plan representative consented to answer a few questions. The Department wanted to know if the Plan would accept a complaint, grievance or appeal verbally. The representative advised the Department to contact the facility where services were rendered but the complaint, grievance or appeal needed to be in writing. The next question from the Department "does the Plan have a policy and procedure for accepting complaints, grievances or appeals verbally. The response was no, the appeal needed to be submitted in writing. |
| 4/18/06 | The Department notified the Plan representative that the telephone call was from the Department. The Plan representative consented to answer a few questions. The Department wanted to know if the Plan has a policy and procedure that allows enrollees to submit complaints, grievances or appeals verbally. The Plan representative said yes that it was a new policy effective mid-March 2006. |
| 4/18/06 | The Plan representative stated in-area, out-of-network emergency service appeals would need to be submitted in writing or by fax. The mailing address and fax number was provided. |
| 4/25/06 | The Plan representative stated to appeal in-area, out-of-network emergency service to contact a different 800 number. The 800 number was provided. |
| 4/26/06 | The Department notified the Plan representative that the Department had a few questions regarding telephone call routing and accepting verbal grievances.<br>• Telephone Call Routing – The Plan representative advised if the telephone call originates from northern California, the call would be routed to the northern California call center. If the telephone call originates from southern California, the call would be routed to the southern California call center.<br>• Accepting Verbal Appeals/Grievances – The Plan representative advised the southern call center could accept verbal appeals/grievances and the northern call center could not. |

Final Report of a Non-Routine Medical Survey                                        9
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

- Of 397 files, all contained written enrollee appeal letters or faxes.
- The Plan's Intake Data for the period January 1, 2004 through June 30, 2005 showed a total of 1655 appeals of which 1646 appeals were in writing (includes letter, e-mail, fax and website), two were received by telephone and seven were received as walk ins.
- In 12 files, the enrollee referenced Plan instructions to submit the appeal in writing.
- In two files, the appeal letter referenced phone advice to the enrollee to submit the appeal in writing. File review documentation in one file shows system screen prints from the Member Integrated Tracking System where enrollee contacted the Plan to file an appeal and the Plan representative documented the following:

  "Dad stated his sons claim was denied and disputes the denial. I informed of the appeal process and gave the appeal address and fax #".

- In eight files, the Plan returned the appeal letter to the enrollee for signature stating, "Your signature was omitted in your appeal letter. Please sign the enclosed copy of your appeal letter and return it in the enclosed envelope."
- The Plan's initial denial letters to the enrollee provide appeal instructions; however, the language encourages the enrollee to submit the appeal in writing.
- The Plan's template letter under appeal rights states: "You or a representative that you formally designate has the right to dispute this decision. To do so, you or your designated representative **must submit an appeal in writing** (*emphasis added*), visit your local Health Plan Member Services office, or contact our Member Service Call Center at (telephone number given). You may submit written comments, documents, records and other information relating to your request for us to consider along with your written appeal". The letter also states, "Please submit your request and any materials you wish to be considered to the address or telephone number below."
- The Plan provides a mailing address and telephone number; however, the information that accompanies the telephone number states "If you have questions regarding this notice or your financial liability for denied charges, please contact our Member Service Department at (telephone number given)".

**Implications:**   The ability to file a complaint or grievance with the Plan is the right of the enrollee. The Plan is required by law to accept telephonic grievances. The Plan's written grievance requirement is an operational barrier that impedes the enrollee's ability to state a concern, delays the resolution of the grievance, and may even discourage enrollees from submitting the grievance at all.

**Corrective Action:**   As referenced in Rule 1300.80.10, the Plan is directed to demonstrate that it adheres to procedures allowing enrollees to file verbal appeals and grievances.

**Plan's Compliance Effort:**   The Plan has begun a number of process improvements in the Member Service Departments, Northern California Call Center and Southern California Call Center, allowing enrollee's to submit grievances verbally. The Plan conducted a review of the Initial Denial Letter language and states in the section titled, "How to Dispute This

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey                                          10
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

Determination" that enrollees may initiate the resolution process by either visiting the Health
Plan Member Service Departments, or by contacting the Member Service Call Center by
telephone or through the Plan's website. (Note: A comprehensive description of the Plan's
compliance effort is listed in Appendix D.)

**The Plan Submitted the Following Documents:**
- Commercial Grievance Process, Health Plan Clinical Review
- California Division Health Plan Clinical Review Department Policy and Procedure
- Oversight of Clinical Review Staff, Clinical Review Department
- N.E.D. Policy, Clinical Review Department
- Quality Improvement Policy and Procedure
- Pay Rules, Clinical Review

**Department's Finding Concerning Plan's Compliance Effort:**

**STATUS:   NOT CORRECTED**

The Department finds this deficiency has not been fully corrected.

The Plan has initiated a number of process changes to ensure acceptance of verbal
appeals/grievances at each California Call Center.  Changes began March 15, 2006. The Plan
will demonstrate full compliance by July 31, 2006.

The Department found incomplete document submissions and revisions.  Document review is
suggested in the following areas in accordance with the Plan's corrective actions:

- Plan's Commercial Grievance Process policy and procedures, specifically, "A grievance
  should be (*emphasis added.*) submitted in written form, usually by letter or a Statement of
  Emergency."
- Initial Denial Letter, the language remains unclear.  Language could mislead enrollees.
  "Your Appeal Rights" section, enrollees or a designated representative, "must submit an
  appeal in writing, visit your local Health Plan Member Services office, or contact Member
  Service Call Center at" (phone number provided).
- Policy and procedures for the Member Services Department, Northern California Call Center
  and Southern California Call Center.
- Training procedures and mechanisms to audit and confirm process changes during change
  implementation.

---

| Deficiency #5: | When dealing with in-area, out-of-network emergency service appeals/grievances, the Plan repeatedly fails to pay for covered emergency services pursuant to the prudent layperson standard. The Plan also repeatedly fails to apply the prudent layperson standard pursuant to internal policies and procedures. |
|---|---|

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey                                                11
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

**Documents Reviewed:**
- 336 appeal files and 61 Plan Regulatory complaint files
- Commercial Grievance Process Policy and Procedures
- California Division Health Plan Clinical Review Department Policy and Procedures
- Complaint, Grievance and Appeals Process and Resolution Policy and Procedures

**Criteria:**    Section 1371.4(c)

**Conditions:**
- The Plan fails to pay for covered services, in cases where a Plan representative directed the enrollee to proceed to the nearest emergency department.
- The Plans policy, "Health Plan Clinical Review, Commercial Grievance Process," effective 11/10/96, revised 03/30/05, states on Page 3:

  "Directed Care: If a member is directed to care out of Plan by an authorized representative of the Health Plan, Medical Groups, or Hospital, that will be considered as an authorization for the emergency evaluation and treatment".
- The Department conducted interviews on December 14, 2005 in which the Plan reported operational gaps with internal systems. The Advice Log and the Member Service tape of calls were not available to the Medical Director or the Grievance Unit.
- In documentation evidenced in file review, 59 enrollee appeal letters stated the enrollee contacted the Plan and obtained authorization to access emergency care out-of-network.
- In documentation evidenced in file review, two files indicated that a Plan advice nurse directed the enrollee to seek emergency care out of network. However, the advice nurse failed to document the authorization in the system call log notes. Upon further investigation by the Plan and after the appeal was denied and the enrollee filed a complaint with the Department, the audio tape transcriptions were located by the Plan, which clearly instructed the enrollee to in-area, out-of-network emergency services.

**Implications:**    Once a Plan representative authorizes or directs care, the enrollee relies in good faith on that direction to access in-area, out-of-network emergency services. The failure of Plan representatives to document the authorization, or to review the audiotapes, negatively impacts the processing of claims and resolution of appeals/grievances and puts the enrollee at financial risk. Moreover, the enrollee's health could be jeopardized if they are now reluctant to follow the instructions of the advice nurse in subsequent encounters, knowing the Plan will deny the claim if they proceed to an out-of-network emergency department as instructed.

**Corrective Action:**    Pursuant to Rule 1300.80.10, the Plan is directed to revise policies and procedures to ensure thorough investigation and location of authorizations or referrals made by Plan representatives directing enrollees to access in-area, out-of-network emergency services.

**Plan's Compliance Effort:**    The Plan is implementing new policies and procedures to ensure Plan staff thoroughly investigate the existence of authorizations or referrals issued to enrollee's by Plan representatives. (Note: A comprehensive description of the Plan's compliance effort is listed in Appendix D.)

Final Report of a Non-Routine Medical Survey                                                12
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

**The Plan Submitted the Following Documents:**
- Commercial Grievance Process, Health Plan Clinical Review
- California Division Health Plan Clinical Review Department Policy and Procedure
- Oversight of Clinical Review Staff, Clinical Review Department
- N.E.D. Policy, Clinical Review Department
- Quality Improvement Policy and Procedure
- Pay Rules, Clinical Review

**Department's Finding Concerning Plan's Compliance Effort:**

**STATUS: NOT CORRECTED**

The Department finds this deficiency has not been fully corrected.

Implementation of new policy and evidence of compliance will be submitted by July 31, 2006.

---

**Deficiency #6:**    **When dealing with in-area, out-of-network emergency services, the Plan repeatedly applies a clinical standard not a "prudent layperson standard" until the enrollee appeals/grieves. The Plan is requiring the enrollee to utilize the appeals/grievance system to demonstrate to the Plan that s/he acted reasonably when seeking in-area, out-of-network emergency services.**

**Documents Reviewed:**
- 336 appeal files and 61 Plan Regulatory complaint files
- Commercial Grievance Process Policy and Procedures
- California Division Health Plan Clinical Review Department Policy and Procedures
- Complaint, Grievance and Appeals Process and Resolution Policy and Procedures
- Health Plan Clinical Review Pay Determination Process
- Health Plan Auto Pay Catalog

**Criteria:**   Sections 1367.01(b) and 1371.4(c)

**Conditions:**
- The Plan applies a clinical standard and fails to give adequate consideration to whether the enrollee acted in accordance with the prudent layperson standard, thereby forcing the enrollee to submit an appeal/grievance or complaint to the Department in order to obtain payment of the claim.
- The Plan reported a high denial overturn rate, approximately 50%, if the enrollee submitted an appeal.  This suggests the Plan did not have adequate information to make the correct decision during the initial review.

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey                                    13
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

- Of 61 regulatory complaints, 29 approved by the Plan's Regulatory Department citing a "prudent layperson" standard.
- Of 336 appeals, 38 approved as "prudent layperson" during the enrollee grievance process.
- In the majority of cases, the Plan overturns the initial denial based on, "additional information from the member."
- Plan staff confirmed reliance on enrollee's appeal letter to "tell the whole story," giving reasons why they accessed out-of-network emergency room services. This allowed Plan staff, "to get inside the member's head."
- Statements made by Plan staff suggested a need for written information from the enrollee to determine whether the enrollee acted prudently. This evidence suggests application of the "prudent layperson standard" occurs, only if the member submits an appeal.
- The file review and statements made by Plan staff confirm that at the claim review level, the Plan's practice is to solicit additional clinical information from the treating emergency department or provider, or to review the members recent clinical history, but at no time during this review is the enrollee contacted or asked to provide information.
- Staff comments during interviews on December 14, 2005 indicate the entire case is reviewed by the Plan once the enrollee complains to the Department. The "whole" picture is subject to review by staff, laypeople and clinical review.
- Staff comments during interviews on December 14, 2005 indicate the Plan utilizes clinical criteria to determine whether or not a member acted prudently in seeking in-area, out-of-network emergency services, however, criteria are not in writing.
- The Plan letters to the Department indicate that previous grievance determinations are overturned due to the Plan's application of the "prudent layperson" standard, suggesting this standard had not been applied until the enrollee complained to the Department. The Department reviewed the cases with the Plan on December 14, 2005.

**Implications:**   The standard of review requires an interpretation based on the circumstances whether a reasonable person would consider it necessary to seek emergency services for a particular medical condition. Placing responsibility on the enrollee to demonstrate he/she acted reasonably or applying a clinical standard in evaluating the enrollee's experience serves to confuse and misapply the standard.

**Corrective Action:**   As referenced in Rule 1300.80.10, the Plan is directed to submit evidence of consistent application of the "prudent layperson standard" during initial claims review pursuant to Rule 1371.4(c).

**Plan's Compliance Effort:**   The Plan submitted revised policies and procedures changing the "prudent layperson standard" to "Emergency Medical Condition". (Note: A comprehensive description of the Plan's compliance effort is listed in Appendix D.)

Final Report of a Non-Routine Medical Survey                                    14
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

**The Plan Submitted the Following Documents:**
- Commercial Grievance Process, Health Plan Clinical Review
- California Division Health Plan Clinical Review Department Policy and Procedure
- Oversight of Clinical Review Staff, Clinical Review Department
- N.E.D. Policy, Clinical Review Department
- Quality Improvement Policy and Procedure
- Pay Rules, Clinical Review

**Department's Finding Concerning Plan's Compliance Effort:**

**STATUS: NOT CORRECTED**

The Department finds the Plan's corrective action plan non-responsive to this deficiency.

A revised corrective action plan is required within 30 days of the issuance of this report. The elimination of the prudent layperson standard of review in the Plan's policies and procedures was a change that minimized the enrollee experience in determining claims payment. Therefore, the response was not adequate and compliance cannot be determined.

**II. SURVEY CONCLUSION**

The Department has completed a non-routine survey of in-area, out-of-network emergency claims review for the Plan. The Department will conduct a follow-up review in six months from the Final Report's issue date. At that time, the Department will validate the correction of all cited deficiencies.

Final Report of a Non-Routine Medical Survey                                    15
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006


# A P P E N D I X     A

## A LIST OF SURVEYORS


The Survey Team consisted of the following persons:

| DEPARTMENT OF MANAGED HEALTH CARE REPRESENTATIVES | |
|---|---|
| Ann Vuletich | Staff Health Plan Analyst – Team Leader |
| Roxann Floyd | Staff Health Plan Analyst |
| Marilou Lasam | Staff Health Plan Analyst |
| Debra L. Denton | Assistant Chief Counsel, Office of Enforcement |
| Andrew George | Staff Counsel, HMO Help Center |
| Laura Plummer | Nurse Consultant, HMO Help Center |

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

16

# A P P E N D I X    B

## B. LIST OF STAFF INTERVIEWED

The following are the key Plan officers and staff who were interviewed during the on-site survey at the Plan.

| | |
|---|---|
| Dr. Bruce Locke | Medical Director, Clinical Review |
| Sheila Tucker | Director, Clinical Review |
| Martha Sikkens | Director, Survey Readiness, Health Plan Regulatory Services |
| Elizabeth Moorehead | Director, Regulatory Compliance for California Claims Administration |
| Daniel Chesir | Manager, Regulatory Investigation and Regulatory Response |
| Susan McGee | Managing Director, Regulatory Response, Health Plan Regulatory Services |
| Christie Larner | Director, Regulatory Investigation and Regulatory Response |
| Lateefah Herron | Lead Examiner, NCAL Claims Department |
| Debbie Galan | Medical Audit Supervisor, Clinical Review |

Final Report of a Non-Routine Medical Survey                                    17
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

# A P P E N D I X   C

## C: APPLICABLE STATUTES AND REGULATIONS

The following are the specific citations used in this report as the basis for the deficiencies.

## GRIEVANCES and APPEALS

**Deficiency #1:**        **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to resolve appeals/grievances within 30 calendar days of receipt.** [Section 1368(a)(1) and Rule 1300.68(a)]

### Citations:
**Section 1368(a)(1)**
Every Plan shall do all of the following:
Establish and maintain a grievance system approved by the Department under which enrollees may submit their grievances to the Plan. Each system shall provide reasonable procedures in accordance with Department regulations that shall ensure adequate consideration

**Rule 1300.68(a)**
The grievance system shall be established in writing and provide for procedures that will receive, review and resolve grievances within 30 calendar days of receipt by the plan, or any provider or entity with delegated authority to administer and resolve the plan's grievance system.

---

**Deficiency #2:**        **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to acknowledge appeals/grievances within five calendar days of receipt.** [Section 1368(a)(4)(A) and Rule 1300.68(d)(1)]

### Citations:
**Section 1368(a)(4)(A)**
Every plan shall do all of the following:
Provide for a written acknowledgment within five calendar days of receipt of a grievance, except as noted in subparagraph (B). The acknowledgment shall advise the complainant of the following:
(i)  That the grievance has been received.
(ii)  The date of receipt.
(iii) The name of the plan representative and the telephone number and address of the plan representative who may be contacted about the grievance.

**Rule 1300.68(d)(1)**
The plan shall respond to grievances as follows:
A grievance system shall provide for a written acknowledgement within five (5) calendar days of receipt, except as noted in subsection (d)(8). The acknowledgment will advise the complainant

FILE NO: 933-0055



Final Report of a Non-Routine Medical Survey                                18
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

that the grievance has been received, the date of receipt, and provide the name of the plan
representative, telephone number and address of the plan representative who may be contacted
about the grievance.

---

| **Deficiency #3:** | **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to ensure adequate consideration of appeals/grievances.** [Section 1368(a)(1)] |
|---|---|

**Citation:**
**Section 1368(a)(1)**
Every plan shall do the following:
Establish and maintain a grievance system approved by the department under which enrollees
may submit their grievances to the plan. Each system shall provide reasonable procedures in
accordance with department regulations that shall ensure adequate consideration of enrollee
grievances and rectification when appropriate.

---

| **Deficiency #4:** | **When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to allow enrollees to submit appeals/grievances verbally.** [Section 1368(a)(1) and Rule 1300.68(b)(1) and 1300.68(b)(4)] |
|---|---|

**Citations:**
**Section 1368(a)(1)**
Every plan shall do the following:
Establish and maintain a grievance system approved by the department under which enrollees
may submit their grievances to the plan. Each system shall provide reasonable procedures in
accordance with department regulations that shall ensure adequate consideration of enrollee
grievances and rectification when appropriate.

**Rule 1300.68(b)(1)**
The Plan's grievance system shall include the following:
An officer of the Plan shall be designated as having primary responsibility for the Plan's
grievance system whether administered directly by the Plan or delegated to another entity. The
officer shall continuously review the operation of the grievance system to identify any emergent
patterns of grievances. The system shall include the reporting procedures in order to improve
plan policies and procedures.

**Rule 1300.68(b)(4)**
The Plan's grievance system shall include the following:
The Plan shall maintain a roll-free number, or a local telephone number in each service are, for
the filing of grievances.

---

Final Report of a Non-Routine Medical Survey                                                    19
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

**Deficiency #5:**    **When dealing with in-area, out-of-network emergency service appeals/grievances, the Plan repeatedly fails to pay for covered emergency services pursuant to the prudent layperson standard. The Plan also repeatedly fails to apply the prudent layperson standard pursuant to internal policies and procedures. [Section 1371.4(c)]**

<u>Citation:</u>
**Section 1371.4(c)**
Payment for emergency services and care may be denied only if the health care service plan reasonably determines that the emergency services and care were never performed; provided that a health care service plan may deny reimbursement to a provider for a medical screening examination in cases when the plan enrollee did not require emergency services and care and the enrollee reasonably should have known that an emergency did not exist. A health care service plan may require prior authorization as a prerequisite for payment for necessary medical care following stabilization of an emergency medical condition.

---

**Deficiency #6:**    **When dealing with in-area, out-of-network emergency services, the Plan repeatedly applies a clinical standard not a "prudent layperson standard" until the enrollee appeals/grieves. The Plan is requiring the enrollee to utilize the appeals/grievance system to demonstrate to the Plan that he/she acted reasonably when seeking services. [Sections 1367.01(b) and 1371.4(c)]**

<u>Citations:</u>
**Section 1367.01(b)**
A health care service plan that is subject to this section shall have written policies and procedures establishing the process by which the plan prospectively, retrospectively, or concurrently reviews and approves, modifies, delays or denies, based in whole or in part on medical necessity, requests by providers of health care services for Plan enrollees. These policies and procedures shall ensure that decisions based on the medical necessity of proposed health care services are consistent with criteria or guidelines that are supported by clinical principles and processes. These criteria and guidelines shall be developed pursuant to Section 1363.5. These policies and procedures, and a description of the process by which the plan reviews and approves, modified, delays, or denies requests by providers prior to, retrospectively, or concurrent with the provision for health care services to enrollees, shall be filed with the Director for review and approval, and shall be disclosed by the plan to providers and enrollees upon request, and by the Plan to the public upon request.

**Section 1371.4(c)**
Payment for emergency services and care may be denied only if the health care service plan reasonably determines that the emergency services and care were never performed; provided that a health care service plan may deny reimbursement to a provider for a medical screening examination in cases when the plan enrollee did not require emergency services and care and the enrollee reasonably should have known that an emergency did not exist. A health care service

Final Report of a Non-Routine Medical Survey                                    20
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

plan may require prior authorization as a prerequisite for payment for necessary medical care
following stabilization of an emergency medical condition.

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

21

# A P P E N D I X    D

## D. DETAILED CORRECTIVE ACTION PLAN

| DMHC Identified Deficiency | DMHC Required Corrective Action | KFHP Response |
|---|---|---|
| **Deficiency I**<br>When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to resolve appeals/grievances within 30 calendar days of receipt (Section 1368 (a)(1) and Rule 1300.68(a) | **Deficiency I**<br>As referenced in Rule 1300.80.10, the Plan is directed to submit evidence that it consistently resolves all appeals for in-area, out-of-network emergency services within 30 calendar days and provides enrollee with a written resolution within the statutory requirements. | (a) Include name(s) and title(s) of person(s) who will be responsible for implementing CAP<br>b) a time schedule for implementing CAP<br>c) Documents or evidence that the deficiency has been corrected)<br><br>**Deficiency I**<br>By July 31, 2006, the Plan will submit evidence that will demonstrate that we consistently resolve all appeals for in-area, out-of-network emergency services within 30 calendar days and provide the enrollee with a written resolution within the statutory requirements.<br><br>A comprehensive review of our existing hand-off process between our Member Services Department and the Claims Department statewide identified the following opportunity to improve the process such that consistently claims appeals/grievances are resolved and a written resolution is issued within 30 calendar days. The process improvement is described below:<br><br>**Member Services:**<br>Effective March 15, 2006, the current hand-off process for claims appeals/grievances received by Member Services will be changed from a paper process to an electronic process. Below is a description of the electronic process:<br><br>• The service representatives at the Member Services offices statewide will take the grievance from the member in person or by telephone. The Member Service representative will:<br>   Record all information regarding the grievance in the Member Contact Tracking System (MCTS), using the date of the in person or telephonic contact |

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

22

| DMHC Identified Deficiency | DMHC Required Corrective Action | KFHP Response (a) Include name(s) and title(s) of person(s) who will be responsible for implementing CAP b) a time schedule for implementing CAP c) Documents or evidence that the deficiency has been corrected |
|---|---|---|
| | | with the member as the grievance received date. Member Services will immediately forward the grievance case electronically via MCTS to Special Services Clinical Review. <br><br>• MCTS will retain the received date that was initially entered for the case. <br>• The Member Service representative will immediately forward the case electronically via MCTS to Special Services Clinical Review. <br>• Special Services Clinical Review will receive the grievance via MCTS and will begin to process the case. <br><br>Claims Administration: <br>Effective March 15, 2006, The California Claims (CCA) statewide will implement a comprehensive review of all written correspondence within 24 hours of receipt. Correspondence from members involving a claims grievance will be forwarded the same day to Special Services Clinical Review for processing. The CCA designated staff will be in-serviced on the revised process by March 13, 2006. <br><br>• To ensure that appeals/grievance cases are being handled within the required timeframes, open cases will be monitored daily. The manager/supervisor of Special Services Clinical Review will be responsible for monitoring open grievance cases on a daily basis, utilizing a daily aging report from MCTS. The manager/supervisor will work with the staff assigned to the open cases to ensure that acknowledgement letters are sent on cases that are 3 days old and resolution letters are sent on cases that are 25 days old. The CCA Regulatory Compliance Team will meet with the manager of Special Services Clinical Review on a weekly and monthly basis to review the weekly and monthly timeliness performance. <br><br>• The management team in Special Services Clinical Review will continue to conduct monthly audits of a random sample of completed grievance cases. |

FILE NO: 933-0055

70

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

23

71

| DMHC Identified Deficiency | DMHC Required Corrective Action | KFHP Response<br>(a) Include name(s) and title(s) of person(s) who will be responsible for implementing CAP<br>b) a time schedule for implementing CAP<br>c) Documents or evidence that the deficiency has been corrected |
|---|---|---|
| | | The CCA Compliance Team will validate the audit methodology and results. The audit results will be tracked, trended and reported to the monthly compliance meetings and quarterly claims executive review meeting.<br><br>**Responsible Party:**<br>• Elizabeth Moorehead (Director of Regulatory Compliance, CCA)<br>• Shelia Tucker (Director of Clinical Review, CCA)<br>• Lydia Sweatt (Manager of Special Services Clinical Review, CCA)<br>• Jeff Dankwerth (Leader, NCAL Claims)<br>• Kimberly D Stone (Manager, SCAL Claims Operations)<br>• Regional Director of Member Services, NCAL<br>• Regional Director of Member Services, SCAL |

| DMHC Identified Deficiency | DMHC Required Corrective Action | KFHP Response<br>(a) Include name(s) and title(s) of person(s) who will be responsible for implementing CAP<br>b) a time schedule for implementing CAP<br>c) Documents or evidence that the deficiency has been corrected |
|---|---|---|
| **Deficiency 2**<br>When dealing with in-area, out-of-network emergency services, the Plan repeatedly fails to acknowledge appeals/appeals within five calendar days of | **Deficiency 2**<br>As referenced in Rule 1300.80.10, the Plan is directed to submit evidence that it consistently acknowledges all appeals for in-area. | **Deficiency 2**<br>By July 31, 2006, the Plan will submit evidence that will demonstrate that the Plan consistently acknowledges all appeals for in-area, out-of-network emergency services within five (5) calendar days of receipt.<br><br>A comprehensive review of our existing hand-off process between our Member Services Department and the Claims Department statewide identified the following opportunity to improve the process so that consistently |

FILE NO: 933-0055

Final Report of a Non-Routine Medical Survey
Kaiser Foundation Health Plan, Inc.
A Full Service Health Plan
April 28, 2006

24

| DMHC Identified Deficiency | DMHC Required Corrective Action | KFHP Response: (a) Include name(s) and title(s) of person(s) who will be responsible for implementing CAP b) a time schedule for implementing CAP c) Documents or evidence that the deficiency has been corrected) |
|---|---|---|
| receipt (Section 1368 (a)(4)(A) and Rule 1300.68(a) | out-of-network emergency services within five (5) calendar days after the Plan received the appeal. | claims appeals/grievances are acknowledged within five (5) calendar days of receipt. The process improvement are described below.

**Member Services:**
Effective March 15, 2006, the current hand-off process for claims appeals/grievances received by Member Services will be changed from a paper process to an electronic process. Below is a description of the electronic process:

- The service representatives at the Member Services offices statewide will take the grievance from the member in person or by telephone. The Member Service representative will:
- Record all information regarding the grievance in the Member Contact Tracking System (MCTS), using the date of the in person or telephonic contact with the member as the grievance received date. Member Services will immediately forward the grievance case electronically via MCTS to Special Services Clinical Review.
- MCTS will retain the received date that was initially entered for the case.
- The Member Service representative will immediately forward the case electronically via MCTS to Special Services Clinical Review.
- Special Services Clinical Review will receive the grievance via MCTS and will begin to process the case.

**Claims Administration:**
Effective March 15, 2006, The California Claims (CCA) statewide will implement a comprehensive review of all written correspondence within 24 hours of receipt. Correspondence from members involving a claims grievance will be forwarded the same day to Special Services Clinical Review for processing. The CCA designated staff will be in-serviced on the revised process by March 13, 2006. |

FILE NO: 933-0055