William A. Helvestine    State Bar No. 58755
Andrew J. Hefty          State Bar No. 220450
Jamie S. Platto          State Bar No. 226723
Carri Becker Maas        State Bar No. 245816
EPSTEIN BECKER & GREEN, P.C.
One California Street, 26th Floor
San Francisco, California 94111-5427
Telephone:  415.398.3500
Facsimile:  415.398.0955
whelvestine@ebglaw.com, ahefty@ebglaw.com,
jplatto@ebglaw.com, cmaas@ebglaw.com

Attorneys for Defendants,
KAISER FOUNDATION HEALTH PLAN, INC.,
KAISER FOUNDATION HOSPITALS, and SOUTHERN
CALIFORNIA PERMANENTE MEDICAL GROUP

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME HEALTHCARE PARADISE VALLEY, LLC, a Delaware limited liability company, doing business as Paradise Valley Hospital;<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California corporation, et al.<br><br>Defendants. | CASE NO.  08CV 0523 JLS BLM<br><br>**NOTICE OF RELATED CASES**<br>**(Local Rule 40.1(e))** |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

**SOUTHERN DISTRICT OF CALIFORNIA:**

Please take notice that, pursuant to Local Rule 40.1(e), Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Southern California Permanente Medical Group[1] (collectively "Defendants" or "Kaiser") hereby give notice that the above captioned action is one of five (5) related cases, four (4) of which are pending before the United States District Court for the Central District of California, and one (1) of which is pending before the United States District Court for the Southern District of California. The five (5) related cases are as follows:

Cases Pending Before the United States District Court for the
Central District of California

1. **Prime Sherman Oaks**: *Prime Healthcare Services II, LLC vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. CV 08-01858 GW FMOx, removed March 19, 2008 from California Superior Court for the County of Los Angeles, Case No. LC080295, filed January 23, 2008 ("Prime Sherman Oaks");

2. **Prime Desert Valley**: *Desert Valley Hospital, Inc. et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. EDCV 08-00385 SGL (OPx), removed March 20, 2008 from California Superior Court for the County of San Bernardino, Case No. CIVVS800317, filed January 23, 2008 ("Prime Desert Valley");

3. **Prime Chino Valley**: *Veritas Health Services, Inc. et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. EDCV 08-00386 SGL (OPx), removed March 20, 2008 from California Superior Court for the County of San Bernardino, Case No. CIVRS800590, filed January 23, 2008 ("Prime Chino Valley");

4. **Prime Orange County**: *Prime Healthcare La Palma, LLC et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. SACV08-00318 DOC (ANx), removed March 20, 2008 from California Superior Court for the County of Orange, Case No. 30-2008-00101717-CU-BT-CJC, filed January 23, 2008 ("Prime Orange County"); and,

---

[1] Improperly captioned as Southern California Permanente Medical Group, Inc.

Case Pending Before the United States District Court for the
<u>Southern District of California</u>

5. **Prime Paradise Valley**: *Prime Healthcare Paradise Valley, LLC vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. 08CV 0523 JLS BLM, removed March 20, 2008 from California Superior Court for the County of San Diego, Case No. 37-2008-00068370-CU-NP-SC, filed January 23, 2008 ("Prime Paradise Valley").

Prime Sherman Oaks, Prime Desert Valley, Prime Chino Valley, Prime Orange County, and Prime Paradise Valley are related cases (collectively referred to as "Prime Cases") in that all five (1) involve substantially the same parties and are based on the same or similar claims, (2) involve substantially the same property, transactions, or events, (3) involve substantially the same facts and the same questions of law, and (4) would entail substantial duplication of labor if heard by different judges. Any one of these points satisfies the definition of a related case set forth in Local Rules 40.1(e) and 40.1(f). Accordingly, these five cases are related, and should be consolidated for all purposes including trial.[2]

**Background**

Prime Healthcare Services, Inc. ("Prime") is a for-profit company that acquires and manages hospitals.[3] Prime's initial acquisitions included ownership/control of Desert Valley Hospital and Desert Valley Medical Group, both in Victorville, California. Since 2004, Prime has proceeded to acquire Chino Valley Medical Center in Chino, CA, Paradise Valley Hospital

---

[2] Federal Courts have the power *sua sponte* to order consolidation under Fed. R. Civ. P., 42(a) and to transfer under 28 U.S.C. § 1404(a). *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987) (Rule 42(a) affords courts "broad discretion" to consolidate cases pending in the same district, either upon motion by a party or *sua sponte*); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 965 (9th Cir. 1993) (describing *sua sponte* transfer pursuant to 28 U.S.C. § 1404).

[3] "Prime Healthcare Services, Inc., founded by Dr. Prem Reddy, currently owns and operates nine acute care hospitals in Southern California …." <http://www.primehealthcareservices.com/primestyle/shtm/about/leadership.shtm> (as of March 26, 2008). This list includes the eight plaintiff hospitals. The one non-hospital plaintiff is Desert Valley Medical Group, of which Dr. Prem Reddy is the Chairman of the Board. Prime has also acquired Centinela Hospital Medical Center in Inglewood, CA, which is not named as a plaintiff in the Prime Cases.

- 3 -

in National City, CA, Huntington Beach Hospital in Huntington Beach, CA, La Palma Intercommunity Hospital in La Palma, CA, Montclair Hospital Medical Center in Montclair, CA, Sherman Oaks Hospital in Sherman Oaks, CA, and West Anaheim Medical Center in Anaheim, CA (collectively, the "Prime Hospitals").  In 2007, Prime sought to acquire Anaheim Memorial Medical Center but the California Attorney General denied approval, finding that the proposed acquisition by Prime was not in the community's interest based on the terms and conditions of the sale.

Prime has now brought these Prime Cases in the name of nine subsidiary owned or controlled entities, the primary focus of which is on Kaiser Members who find themselves admitted to a Prime Hospital as a result of receiving care through the facility's emergency room. The Prime Hospitals generally do not have written contracts with Kaiser.[4]  While Kaiser covers emergency services provided to its Members by non-contracted hospitals, Kaiser is not required under governing law or employer sponsored ERISA plans to pay for post-stabilization care – medically necessary care following stabilization of an emergency medical condition – at a non-contracted hospital unless Kaiser pre-authorizes that care.  The law and the ERISA plans require the hospitals to contact Kaiser <u>before</u> rendering post-stabilization care in order to allow Kaiser the opportunity to transmit "any appropriate portion of the enrollee's medical record" and to either "authorize poststabilization care or inform the hospital that it will arrange for the prompt transfer of the enrollee to another hospital." Cal. Health & Saf. Code § 1262.8 (requiring hospitals to contact patients' health plan prior to providing post-stabilization care); *id.* at § 1371.4 (payment is not required for unauthorized post-stabilization care); *see* 42 C.F.R. § 422.113 (post-stabilization care not covered for Medicare members unless authorized by health plan).

---

[4] Kaiser had contracts with the former owners of La Palma Intercommunity Hospital, Huntington Beach Hospital, and West Anaheim Medical Center, referred to by Plaintiffs as the Vanguard LOA and the Acute Rehab Agreement, which are raised in the first cause of action in the Prime Orange County Complaint.  Prime denies that it is bound by these contracts.  These two contracts contain arbitration clauses, and Defendants anticipate filing a petition to compel arbitration of these limited issues.

1    Kaiser maintains a 24/7 telephone line staffed by emergency physicians for the purpose
2 of making available medical information for Kaiser Members who present at the Emergency
3 Departments of non-Kaiser facilities. The same 24/7 telephone facility also serves to coordinate
4 post-stabilization care for Kaiser Members and to either authorize such care at the non-Kaiser
5 facility or arrange the appropriate level of transport to transfer the Member back into the Kaiser
6 system.

7    Unfortunately, once Prime takes control of a hospital the pre-admission calls to Kaiser
8 virtually cease and the hospital actively obstructs Kaiser's efforts to assess its Members' post-
9 stabilization care needs and either authorize the care or arrange a transfer to a Kaiser facility in
10 appropriate cases. Upon acquisition by Prime, the hospital's practices change dramatically,
11 resulting in significant interference with Kaiser's ability to coordinate its Members' care under
12 the provisions of law regarding post-stabilization care. Although Kaiser pays for emergency
13 services provided to its Members, Prime now seeks additional payments for unauthorized post-
14 stabilization care in these law suits.

15    Attached as Exhibit A are charts showing the change in hospital practices once Prime
16 takes control. Exh. A-1 shows how the hospitals cease contacting Kaiser prior to admitting
17 stable patients for authorization of post-stabilization care. Exh. A-2 shows the dramatic increase
18 in inpatient hospitalization through the Emergency Department once Prime takes control
19 (resulting in higher inpatient billing for these patients). Exh. A-3 shows the increase in stays that
20 are only "1-day admissions" once Prime takes control (a high 1-day admission rate is an
21 indicator of possible unnecessary inpatient hospitalizations).

22    These practices represent a deliberate and carefully orchestrated scheme implemented by
23 the parent corporation, Prime Healthcare Services, Inc. and its Chairman, Dr. Prem Reddy, in
24 order to maximize the revenue from the Prime Hospitals, as evidenced by prior testimony of
25 employees who worked with Prime and its Chairman:

26 //
27 //
28 //

Witness #1

- Q: What did Doctor Reddy say during this meeting about patient B and your concerns that were being expressed?  A: … he had already announced his intentions to admit all the Kaiser patients and bill Kaiser for every service, and this was an example of going overboard and doing it at the risk of a patient and doing what we believed to be illegally charging Kaiser for things that were not necessary.

- Q: Did Doctor Reddy tell you?  A: Yes.  He told me that he didn't want Kaiser notified.  He told me that he didn't want primary care doctors notified.  He told me he wanted that because they would become out-of-network patients and we would get paid for them as fee-for-service patients.  And he told me that was his plan, and he directed the staff to do that.

- Q: What did Doctor Reddy tell you he wanted done with regard to the notification of Kaiser?  A: He didn't want the Kaiser physicians notified because he wanted physicians in his hospital taking care of those patients so he could bill Kaiser and get paid as fee-for-service.  He didn't want the patients transferred out from his hospital.  That was the bottom line.

Witness #2

- Q: What can you recall Doctor Reddy saying about Kaiser patients?  A: It was at the time he started discussing his new philosophy about how to make money.  He would mention that he doesn't have a contract per se with Kaiser; so he wanted to have Kaiser patients admitted so he could bill them and bill them heavily.

- Q: Is that what he said?  A: Yes.  He said "I don't care what they're coming in here for.  I want them admitted, and I want to bill them because I can."

(Trial Testimony, *Buchanan v. Desert Valley Hospital, Inc. et al.* (Cal. Super. Ct. San Bernardino County, 2005, No. VCVVS030193).)

Aside from the obvious financial consequences, Prime's practices also disrupt the continuity of patient care.  The Medicare post-stabilization and transfer regulations, as well as California law, both recognize the value of a health plan's ability to provide health care services to its members within its own provider system.  Prime's failure to communicate and its obstruction of patient transfers to a Kaiser-designated hospital result in patients being treated without benefit of their medical history and without the continuity of care that Kaiser's integrated health system provides.

1  A secondary issue in the Prime Cases involves the appropriate payment rate for those
2  claims that are properly payable. Where the claims are properly denied because they are for
3  unauthorized post-stabilization care, Prime is not entitled to any payment. But for claims that are
4  paid (or partially paid), the common issue is the reasonable value of the payable hospital
5  services. Non-contracted hospitals such as the Prime Hospitals are only entitled to recover the
6  reasonable value of their services, not their unilaterally determined "billed charges." Once Prime
7  acquires a hospital, that hospital's charges escalate dramatically. While the exact dollar amounts
8  of charges will vary by hospital, the legal and factual issues are substantially similar because
9  Kaiser's methodology for determining reasonable value is substantially the same across the
10 Prime Hospitals.[5]

11  In summary, Prime's practices at issue in these lawsuits – increased volume of patients
12 admitted to the hospital through the emergency room, refusal to obtain authorization for post-
13 stabilization care, refusal to cooperate in the transfer of stable patients for post-stabilization care,
14 and escalating charges – are designed to significantly increase revenues in order to boost Prime's
15 return on its investment for these newly-acquired hospitals. Common issues of law and fact
16 pervade the Prime Cases and, as described in more detail below, demonstrate that the five Prime
17 Cases are inextricably related to one-another.

18  **Discussion**
19  Local Rule 40.1(f) defines related cases as ones that

   (1) Involve some of the same parties and are based on the same or similar claims, or
   (2) Involve the same property, transaction, or event, or
   (3) Involve substantially the same facts and the same questions of law.

23 The five Prime Cases meet these three criteria. All five Prime Cases arise from closely related
24 transactions, happenings or events in that each is based on the same or similar claims arising
25 from identical or substantially similar incidents, and are brought against the same defendants by

---

[5] For services to Medicare members, the hospitals are paid at Medicare established rates. Any disputes as to the application of Medicate rates should be similarly uniform across the Prime Hospitals.

- 7 -

plaintiffs that are owned or closely controlled by the same parent corporation and that are using the same lawyers.

The Prime Cases have essentially the same parties. The defendants in each case are named identically as Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Southern California Permanente Medical Group, Inc.[6] The plaintiffs in the five cases are nine companies, all of whom are either subsidiaries of Prime and/or are controlled by Prime's founder and Chairman of the Board, Dr. Prem Reddy. (See Note 3, *supra*.) Each of these nine plaintiff entities are represented by the same attorneys who are in-house attorneys for the parent, Prime.

The fact that all the Prime Cases are based on the same or similar claims is evidenced by the claims asserted in each complaint. All five complaints assert seven of the same causes of action: (1) Breach of Implied-In-Law Contract, (2) Breach of Implied-In-Fact Contract, (3) Breach of Assigned Contract, (4) Breach of Implied Covenant of Good Faith & Fair Dealing, (5) Quantum Meruit, (6) Intentional Interference with Contract, and (7) Violation of Bus. & Prof. Code §17200.[7]

The seven identical claims are based on substantially similar facts relating to the payment of claims for medical services provided to Kaiser Members at the Prime Hospitals. Each complaint alleges

> Under Federal and State law ... [Plaintiffs] must provide an appropriate medical screening examination to each and every individual who seeks treatment at the [Hospitals] and, regardless of the patient's insurance or financial status, provide such care as is necessary to stabilize the patient's emergency medical condition unless the patient refuses such care. ... Kaiser fails to properly pay claims submitted by the [Hospitals] for emergency medical services rendered based on claims that the services were not medically necessary, the patient was stable for transfer, and/or Hospitals' charges are in excess of the reasonable and customary value of the services provided.

---

[6] Southern California Permanente Medical Group is not a corporation, and is incorrectly named as one in the Prime Cases.

[7] The Prime Orange County complaint includes one additional claim for Declaratory Relief, described in footnote 4, above. The Prime Desert Valley complaint states each of these causes of action twice, once for each named plaintiff.

- 8 -

(Prime Sherman Oaks Complaint, p. 3:8-23; Prime Chino Valley Complaint, p. 3:18-4:5; Prime Desert Valley Complaint, p. 4:9-24; Prime Orange County Complaint, p. 3:12-27; and Prime Paradise Valley Complaint, p. 3:8-23).

The complaints in each of the Prime Cases use substantially identical language to describe Kaiser's allegedly improper actions. For example, each complaint contains a paragraph with numerous substantively identical subparts alleging types of actions by which Kaiser allegedly "deprive[s] healthcare providers of the opportunity to be paid for Emergency Medical Services …." (Prime Sherman Oaks Complaint, ¶ 20; Prime Chino Valley Complaint, ¶ 23; Prime Desert Valley Complaint, ¶ 19; Prime Orange County Complaint, ¶ 30; and Prime Paradise Valley Complaint, ¶ 16).

Each complaint further alleges a paragraph, again with numerous substantively identical subparts, anticipating Kaiser's responses to Prime's allegations. (Prime Sherman Oaks Complaint, ¶ 24; Prime Chino Valley Complaint, ¶ 27; Prime Desert Valley Complaint, ¶ 23; Prime Orange County Complaint, ¶ 35; and Prime Paradise Valley Complaint, ¶ 20).

Thus, each of the Prime Cases will require practically identical or overlapping determinations by a court because the facts alleged in each of the five Prime Cases, and the causes of action raised in each of those Complaints are, as shown above, virtually identical. In particular, the Prime Cases will each require a determination of the same issues relating to the provision of emergency medical services and the parties' rights and responsibilities regarding the payment for emergency medical services and post-stabilization care. Further, the fact that each of the Prime Cases requires determinations by the court of the propriety of operating practices common to all the Prime Hospitals highlights the duplication of effort and risk of inconsistent judgments if these cases are not found to be related and adjudicated together.

Defendants' will also raise the same or similar issues of law as defenses. Defendants removed all five cases based on federal preemption grounds: complete preemption under Medicare; complete preemption under ERISA; and Medicare federal actor jurisdiction under 28 U.S.C. § 1442. Defendants' motion to dismiss in each of the five cases will raise the same issues

regarding federal preemption and will require substantial duplication of labor if heard by different judges.

To the extent any part of these actions survives defendants' motion to dismiss, defendants presently intend to counterclaim against the Plaintiff hospitals and to cross-claim against the parent, Prime Healthcare Services, Inc., based on its systematic interference with its subsidiaries' compliance with the laws and regulations regarding post-stabilization transfers. Defendants expect the evidence will show the same or substantially similar control exercised by Prime at each subsidiary hospital. (See charts attached as Exhibit A.)

Accordingly, the Prime Cases all involve essentially the same parties, are based on the same or similar claims, and arise from substantially similar events requiring determination of substantially similar questions of law and fact. Due to this overwhelming overlap of facts, claims, and parties, the separate litigation of these five related cases would require a substantial duplication of judicial labor because each case would require the court to review much of the same evidence, hear testimony from many of the same party and expert witnesses, and make determinations on the same questions of law. Accordingly, the Prime Cases listed above qualify for related case transfers.

DATED: March 28, 2008                    EPSTEIN BECKER & GREEN, P.C.


By: /s/ Jamie S. Platto
    William A. Helvestine
    Andrew J. Hefty
    Jamie S. Platto
    Carri Becker Maas
Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.,
KAISER FOUNDATION HOSPITALS, and
SOUTHERN CALIFORNIA PERMANENTE
MEDICAL GROUP

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

1. At the time of service I was at least 18 years of age and **not a party to this legal action.**

2. My business address is One California Street, 26th Floor, San Francisco, California 94111-5427.

3. I served copies of the following documents (specify the exact title of each document served):

   **NOTICE OF RELATED CASES AND NOTICE OF PENDENCY OF OTHER ACTION**

4. I served the documents listed above in item 3 on the following persons at the addresses listed:

   Michael J. Sarrao, Esq.  
   Radha A. Savitala, Esq.  
   Sepand Akhavanhaidary, Esq.  
   5451 Walnut Avenue  
   Chino, CA 91710

   *Attorneys for Plaintiff*  
   Tel. 909-464-8847  
   Fax 909-464-8887

5. a. ☐ **By personal service.** I personally delivered the documents on the date shown below to the persons at the addresses listed above in item 4. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party delivery was made to the party or by leaving the documents at the party's residence between the hours of eight in the morning and six in the evening with some person not less than 18 years of age.

   b. ☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 4 and *(specify one):*

   (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid on the date shown below, or

   (2) ☒ placed the envelope for collection and mailing on the date shown below, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

   I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

- 18 -

SF:163311v1

Notice of Related Cases  
Case No. 08CV 0523 JLS BLM

1  c. ☐  **By overnight delivery.** I enclosed the documents on the date shown below in an envelope or package provided by an overnight delivery carrier and addressed to the person at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

4  d. ☐  **By messenger service.** I served the documents on the date shown below by placing them in an envelope or package addressed to the person on the addresses listed in item 4 and providing them to a professional messenger service for service. (A declaration by the messenger must accompany this proof of service or be contained in the Declaration of Messenger below.)

7  e. ☐  **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents on the date shown below to the fax numbers of the persons listed in item 4. No error was reported by the fax machine that I used. A copy of the fax transmission, which I printed out, is attached.

10  f. ☐  **By e-mail or electronic transmission.** Based on an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent on the date shown below to the e-mail addresses of the persons listed in item 4. I did not receive within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

13  6.   I served the documents by the means described in item 5 on *(date)*: March 28, 2008

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| 3/28/08 | Melissa D. Guffey | |
|---|---|---|
| DATE | (TYPE OR PRINT NAME) | (SIGNATURE OF DECLARANT) |

- 19 -