William A. Helvestine  State Bar No. 58755
Andrew J. Hefty  State Bar No. 220450
Jamie S. Platto  State Bar No. 226723
Carri Becker Maas  State Bar No. 245816
EPSTEIN BECKER & GREEN, P.C.
One California Street, 26th Floor
San Francisco, California 94111-5427
Telephone:   415.398.3500
Facsimile:   415.398.0955
whelvestine@ebglaw.com
ahefty@ebglaw.com
jplatto@ebglaw.com
cmaas@ebglaw.com

Attorneys for Defendants,
KAISER FOUNDATION HEALTH PLAN, INC.,
KAISER FOUNDATION HOSPITALS, and SOUTHERN
CALIFORNIA PERMANENTE MEDICAL GROUP

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME HEALTHCARE PARADISE VALLEY, LLC, a Delaware limited liability company, doing business as Paradise Valley Hospital,<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC., a California corporation, et al.,<br><br>Defendants. | CASE NO.  3:08-CV-0523-JLS-BLM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE**<br><br>Honorable Janis L. Sammartino<br><br>Date:   July 25, 2008<br>Time:   10:30 a.m.<br>Courtroom:   6 |

**TO PLAINTIFF PRIME HEALTHCARE PARADISE VALLEY, LLC, AND TO ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 25, 2008 at 10:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 6 of the above-entitled court, located at 940 Front Street, Suite 3142, San Diego, California 92101, Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Southern California Permanente Medical Group (collectively

///

"Kaiser") will, and hereby do, move the Court pursuant to Rule 12(f) of the Federal Rules of Civil Procedure for an order striking the following portions of Plaintiff's Complaint filed herein.

1. Page 2, line 2, to page 3, line 7, which alleges as follows:

> In an era where the rising costs of providing healthcare has [sic.] forced many hospitals to close, file bankruptcy, reduce or eliminate services, or face other difficult decisions due to severe financial burdens imposed upon them, HMOs like Kaiser are generating profits at record highs. Indeed, at the same time that Kaiser has generated billions of dollars in profits, more than seventeen (17) hospitals have closed throughout Southern California including, but not limited to, Bellwood General Hospital in Bellflower, Northridge Hospital Medical Center in Van Nuys, Santa Teresita Hospital in Duarte, St. Luke's Medical Center in Pasadena, Robert F. Kennedy Medical Center in Hawthorne, Brea Community Hospital in Brea, and Granada Community Hospital in Granada Hills. In addition, several other hospitals, including Brea Community Hospital, Brotman Medical Center, Hemet Valley Medical Center, Menifee Valley Medical Center, Moreno Valley Medical Center, and Parkview Community Hospital have been forced to file bankruptcy.
>
> In contrast to hospitals who [sic.] have been forced to close, file bankruptcy, or who [sic.] are struggling with the financial burdens imposed upon them, Kaiser reported profits of **$1.3 Billion** in 2006 and profits of **$2.5 Billion** in 2007 (an increase of more than 50% from 2006 profits). Not surprisingly, at the same time Kaiser has been generating billions of dollars in profits, the percentage of revenue Kaiser spends on medical and hospital expenses for patient care (commonly referred to as the Medical Loss Ratio ("MLR") has decreased from 93% of revenue in 2005, to 92.7% of revenue in 2006, and to 87.2% of revenue for the first six months of 2007. In other words, Kaiser is generating more profits while spending less on patient care. To make matters worse, Kaiser is not required to pay taxes on the billions of dollars in profits it has generated in light of its non-profit status. This is especially ironic since the only real difference between Kaiser and other for-profit HMOs is that

- 2 -

> Kaiser is not required to pay taxes. Indeed, many believe that Kaiser's profits are due to its aggressive and intractable approach to claims processing and a decision on the part of Kaiser to force hospitals and other healthcare providers to sue Kaiser if they want to receive fair and adequate reimbursement. In this regard, Kaiser has been sued in both Northern and Southern California by hospitals seeking to receive fair and adequate reimbursement for services provided to Kaiser members as referenced by legal proceedings commenced by Alvarado Hospital Medical Center, Providence Medical Center, Community Hospital of Los Gatos, South Coast Medical Center, Glendale Adventist Medical Center, Simi Valley Hospital, VacaValley Hospital, and North Bay Medical Center have all recently instituted legal action against Kaiser to recover amounts due for healthcare services. Plaintiffs [sic.] also believe that several other prominent hospitals are engaged in legal disputes with Kaiser and will be filing lawsuits in the near future. [Emphasis in original.]

2. The portion of ¶ 10 at page 6, lines 5-16, which alleges as follows:

> Although Kaiser Health Plan routinely boasts about its non-profit status, the only real difference between Kaiser Health Plan and other for profit HMOs is that Kaiser Health Plan is not required to pay taxes. Indeed, Kaiser is a profit oriented and profit-motivated organization that generates substantial profits and pays generous salaries, perks, and bonuses to its executives and employees. Recently, Kaiser Permanente reported profits at a staggering $2.5 Billion, which is a fifty-three percent (53%) increase from the generated profits of more than $1.3 Billion in 2006. At the same time, the financial statements reveal that the percentage of revenue spent by Kaiser on medical and hospital expenses for patient care (commonly referred to as Medical Loss Ratios (MLR)) has decreased from 93% of revenue in 2005 to 92.47% of revenue in 2006 to 87.2% of revenue for the first six months of 2007. This data demonstrates that Kaiser is spending less on patient care for its members while at the same time earning more profits.

///

1  3. The portion of ¶ 12 at page 6, line 26, to page 7, line 2, which alleges as follows:

2  Plaintiff is informed and believes and thereon alleges that physicians who are employed by SCPMG and/or are partners in SCPMG earn financial incentives/bonuses if the cost of care provided to Kaiser Members is less than the premiums paid by or on behalf of Kaiser Members. As a result, SCPMG physicians are financially motivated to provide less care to Kaiser Members.

4. The full text of ¶ 13 at page 7, which alleges as follows:

Like Kaiser Health Plan, Kaiser Hospitals is a non-profit corporation that avoids paying taxes while at the same time being a financially lucrative corporation that is driven by profits. Indeed, data available from the Office of Statewide Health Planning and Development ("OSHPD") indicates that despite owning and operating 29 hospitals with combined net revenue in excess of $8 Billion, Kaiser Hospitals did not provide any charity care in 2005.

5. The portion of ¶ 15, at page 7, line 24, to page 8, line 2, which alleges as follows:

Rather, the sole purpose of the EPRP physicians is to effectuate transfers of Kaiser Members to Kaiser facilities for financial reasons. In this regard, Plaintiff is informed and believes and thereon alleges that the real goal of EPRP is to decrease the cost of medical care provided to Kaiser Members and to transfer Kaiser Members to Kaiser facilities regardless of whether the transfer is appropriate and in the best interest and safety of the patient and the patient's medical condition so that defendants can earn more profits and SCPMG physicians can earn larger bonuses.

6. The portion of ¶ 16, at page 8, lines 14-15, which alleges as follows:

Furthermore, defendants' actions are interfering with the efficient operations of emergency rooms throughout Southern California.

7. The portion of ¶ 17, at page 12, line 28, to page 18, line 9, which alleges as follows:

In November 2006, Justen Deal, a Kaiser employee, raised concerns to Kaiser's Chief Compliance Officer and Kaiser's Board of Directors, that Kaiser was recklessly spending more than $1.5 billion in waste every year, primarily on

- 4 -

|   |   |
|---|---|
| 1 | HealthConnect, an IT system being developed by Epic, and other inefficient and |
| 2 | ineffective information technology projects.  Plaintiff is informed and believes and |
| 3 | thereon alleges that rather than investigating and responding in good faith to the |
| 4 | concerns raised by Mr. Deal, Kaiser terminated his employment and attempted to |
| 5 | sweep his complaints under the rug.  Mr. Deal's complaints are particularly relevant |
| 6 | to the Hospital's assertions as one of Kaiser's many responses to demands for |
| 7 | payment of outstanding claims was that there were IT problems or issues which |
| 8 | causes claims processing problems. |

8. The full text of ¶ 18, at pages 13-14, which alleges as follows:

> Plaintiff is informed and believes that they are not the only providers of Emergency Medical Services that must deal with defendants' improper denial of claims for emergency services and other improper conduct and that both healthcare providers and enrollees have had to deal with such conduct.  During the period of April 1, 2005 to April 30, 2007 DMHC instituted at least 19 different enforcement actions against Kaiser Health Plan to address various deficiencies with Kaiser Health Plan's practices. On April 28, 2006 DMHC conducted a non-routine medical survey of Kaiser Health Plan to address the following six (6) deficiencies related to emergency services provided by non-contracted hospitals:  (1) when dealing with in-area, out-of-network emergency services, Kaiser Health Plan repeatedly fails to resolve grievances within 30 calendar days of receipt; (2) when dealing with in-area, out-of-network emergency services, Kaiser Health Plan repeatedly fails to acknowledge appeals/grievances within five calendar days of receipt; (3) when dealing with in-area, out-of-network emergency services, Kaiser Health Plan repeatedly fails to ensure adequate consideration of appeals/grievances; (4) when dealing with in-area, out-of-network emergency services, Kaiser Health Plan repeatedly fails to allow enrollees to submit enrollees/grievances [sic.] verbally; (5) **when dealing with in-area, out-of-network emergency services, Kaiser Health Plan repeatedly fails to pay for covered emergency services** pursuant to the

- 5 -

prudent layperson standard and repeatedly fails to apply the prudent layperson standard pursuant to internal policies and procedures; and (6) when dealing with in-area, out-of-network emergency services, Kaiser Health Plan repeatedly applies a clinical standard not a "prudent layperson standard" until the employee appeals/grievances [sic.] and Kaiser Health Plan to requiring [sic.] the enrollee to utilize the appeals/grievance system to demonstrate to the Plan that he/she acted reasonably when seeking in-area, out-of-network emergency services. Plaintiff's review of claims denied by defendants also suggests that defendants routinely denies [sic.] claims for emergency services when the patient presents with a condition for which there is no doubt that the prudent layperson standard is met and for which the Federal government has identified as automatic payments [sic.]. On May 3, 2007, Kaiser entered into a Letter of Agreement by which Kaiser agreed to pay a fine of $250,000.00 and submit a Corrective Action Plan to address these deficiencies by May 1, 2007. A true and correct copy of the Survey and the Letter of Agreement is attached hereto as Exhibit 1. Plaintiff is informed and believes that Kaiser Health Plan has taken no steps to address the deficiencies outlined above and continues to routinely deny claims for emergency services which clearly meet the prudent layperson standard and force enrollees and providers to appeal denials of claims in order to obtain benefits they are entitled to under the terms of their contract benefits with Kaiser Health Plan. [Emphasis in original.]

9. The full text of ¶ 19, at page 14, which alleges as follows:

Defendants' practices are not limited to the Hospital but affect hospitals throughout Southern California as evidenced by the case of <u>South Coast Medical Center v. Kaiser Permanente</u>, OCSC Case No. 05CC12905, which involved claims by four hospitals against Kaiser related to claims payment issues, and <u>Alvarado Hospital Medical Center v. Kaiser Foundation Health Plan</u>, OCSC Case No. 06CC13335, which involved claims by thirty-seven (37) different hospitals related to Kaiser's

///

claims payment practices.  True and correct copies of face pages of these complaints are attached hereto as Exhibits 2 and 3.

10. Exhibit 1 of the Complaint in its entirety.

11. Exhibit 2 of the Complaint in its entirety.

12. Exhibit 3 of the Complaint in its entirety.

This Notice of Motion and Motion will be based on the grounds that the foregoing allegations and exhibits constitute redundant, immaterial, impertinent and/or scandalous matters that are not properly included within the Complaint and serve no other purpose than to prejudice Kaiser.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on **April 16, 2008**.

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, on all the pleadings and files in this action, and on such further and additional points and authorities and evidence as may be presented at the time of the hearing.

DATED:  April 24, 2008

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: s/ William A. Helvestine
William A. Helvestine
Andrew J. Hefty
Jamie S. Platto
Carri Becker Maas
Attorneys for Defendants,
KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP