1   William A. Helvestine          State Bar No. 58755
    Andrew J. Hefty                State Bar No. 220450
2   Jamie S. Platto          State Bar No. 226723
    Carri Becker Maas              State Bar No. 245816
3   EPSTEIN BECKER & GREEN, P.C.
    One California Street, 26th Floor
4   San Francisco, California 94111-5427
    Telephone:  415.398.3500
5   Facsimile:  415.398.0955
    whelvestine@ebglaw.com
6   ahefty@ebglaw.com
    jplatto@ebglaw.com
7   cmaas@ebglaw.com

8   Attorneys for Defendants,
    KAISER FOUNDATION HEALTH PLAN, INC.,
9   KAISER FOUNDATION HOSPITALS, and SOUTHERN
    CALIFORNIA PERMANENTE MEDICAL GROUP

10

11              **UNITED STATES DISTRICT COURT**

12           **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  PRIME HEALTHCARE PARADISE              CASE NO.  3:08-CV-0523-JLS-BLM
    VALLEY, LLC, a Delaware limited liability
15  company, doing business as Paradise Valley    **MEMORANDUM OF POINTS AND**
    Hospital,                              **AUTHORITIES IN SUPPORT OF**
16                                         **DEFENDANTS' MOTION TO DISMISS**
                    Plaintiff,
17                                         **(FED. R. CIV. P. 12(b)(1) and 12(b)(6))**
            v.
18                                         Honorable Janis L. Sammartino
    KAISER FOUNDATION HEALTH PLAN,
19  INC., a California corporation, et al.,
                                           Date:   July 25, 2008
20                  Defendants.            Time:   10:30 a.m.
                                           Courtroom:  6
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND AND STATEMENT OF FACTS ....................................................2

ARGUMENT .............................................................................................................4

I.   AS TO MEDICARE MEMBERS, ALL OF PRIME'S STATE LAW
     CLAIMS ARE PREEMPTED BY THE MEDICARE ACT ...........................4

     A.   The Medicare Advantage Program ..........................................................4

     B.   Prime's State Law Claims Are Expressly Preempted By The
          Medicare Act ...........................................................................................5

     C.   This Court Lacks Jurisdiction Over Prime's Claims Because Prime
          Has Failed To Exhaust The Administrative Remedies Required By
          The Medicare Act .....................................................................................7

          1.   Prime's Claims Arise Under The Medicare Act And Are
               Therefore Subject To The Administrative Process .....................7

          2.   Medicare Provides Specific Administrative Remedies That
               Address Prime's Claims .............................................................8

II.  AS TO ERISA BENEFICIARIES, ALL OF PRIME'S STATE LAW
     CAUSES OF ACTION ARE PREEMPTED BY ERISA ...............................11

     A.   Kaiser Members Are Enrolled In ERISA-Governed Plans....................11

     B.   Prime's State Law Causes Of Action Are Preempted By ERISA
          § 514(a) And ERISA § 502(a) ...............................................................12

     C.   Prime Has Failed To Exhaust ERISA's Mandatory Administrative
          Remedies..................................................................................................16

III. TO THE EXTENT ANY CLAIMS REMAIN BECAUSE THEY DO
     NOT RELATE TO MEDICARE OR ERISA MEMBERS, PRIME'S
     SECOND, THIRD, FOURTH, AND SIXTH CAUSES OF ACTION
     SHOULD BE DISMISSED ...........................................................................17

     A.   Prime's Second Cause Of Action For Breach Of Implied-In-Fact
          Contract Fails To State A Claim.............................................................17

          1.   No Mutual Agreement Is Alleged.............................................17

          2.   No Consideration Exists For Implied-In-Fact Contract............18

     B.   Prime's Third Cause Of Action For Breach Of Contract And Its
          Fourth Cause Of Action For Bad-Faith Should Be Dismissed
          Because The Alleged Assignments Are Invalid .....................................19

     C.   Prime Lacks Standing To Pursue Its Second And Fourth Causes Of
          Action For Breach Of Implied-In-Fact Contract And Bad-Faith..........19

- i -

D.    Prime's Sixth Cause Of Action For Intentional Interference With
Contract Fails To State A Claim .............................................................................20

CONCLUSION .............................................................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- ii -

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Health Inc. v. Davila*,
    542 U.S. 200, 159 L. Ed. 2d 312,
    124 S. Ct. 2488 (2004)......................................................................................11, 13, 14

*Amato v. Bernard*,
    618 F.2d 559 (9th Cir. 1980) ...........................................................................................16

*Americopters, LLC v. FAA*,
    441 F.3d 726 (9th Cir. 2006) ...........................................................................................10

*Atkins v. PacifiCare of Wash., Inc.*,
    No. C04-5889RBL, 2005 WL 2396826 (W.D. Wash. Sept. 27, 2005) ............................6

*Blue Cross v. Anesthesia Care Associates Medical Group, Inc.*,
    187 F.3d 1045 (9th Cir. 1999) ...................................................................................14, 15

*Bodimetric Health Servs. v. Aetna Life & Casualty*,
    903 F.2d 480 (7th Cir. 1990) .............................................................................................8

*Cleghorn v. Blue Shield*,
    408 F.3d 1222 (9th Cir. 2005) .....................................................................................11, 14

*Davidowitz v. Delta Dental Plan of California, Inc.*,
    946 F.2d 1476 (9th Cir. 1991) .........................................................................................19

*Dial v. HealthSpring of Ala., Inc.*,
    501 F. Supp. 2d 1348 (S.D. Ala. 2007).............................................................................6

*Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*,
    50 F.3d 1478 (9th Cir. 1995) ...........................................................................................16

*Egelhoff v. Egelhoff*,
    532 U.S. 141, 149 L. Ed. 2d 264, 271, 121 S. Ct. 1322 (2001)..................................12, 13

*Elliot v. Fortis Benefits Ins. Co.*,
    337 F.3d 1138 (9th Cir. 2003) .........................................................................................14

*General American Life Ins. Co. v. Castonguay*,
    984 F.2d 1518 (9th Cir. 1993) .....................................................................................12, 13

*Heckler v. Ringer*,
    466 U.S. 602, 8 L. Ed. 2d 622, 635, 104 S.Ct. 2013 (1984)...........................................7, 8

*Kaiser v. Blue Cross*,
    347 F.3d 1107 (9th Cir. 2003) .........................................................................................10

- iii -

*Kanne v. Conn. Gen. Life Ins. Co.*,
    867 F.2d 489 (9th Cir. 1988) .................................................................12, 14

*Kentucky Ass'n of Health Plans, Inc. v. Miller*,
    538 U.S. 329, 155 L. Ed. 2d 468, 123 S. Ct. 1471 (2003)...............................12

*Marin v. Hew, Health Care Fin. Agency*,
    769 F.2d 590 (9th Cir. 1985) ....................................................................10

*Metropolitan Life Ins. Co. v. Taylor*,
    481 U.S. 58, , 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987)..............................13, 14

*Misic v. Building Serv. Employees Health & Welfare Trust*,
    789 F.2d 1374 (9th Cir. 1986) ...................................................................15

*Papasan v. Allain*,
    478 U.S. 265, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986)................................18

*Parkview Hosp. Inc. v. White's Residential & Family Servs.*,
    No. 1:07-CV-0208 WCL, 2008 U.S. Dist. LEXIS 1289
    (N.D. Ill. Jan. 7, 2008) ............................................................................15

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ..............................................................12, 13, 14

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41, 95 L. Ed. 2d 39, 46, 107 S. Ct. 1549 (1987)..........................12, 13

*Sarraf v. Standard Ins. Co.*,
    102 F.3d 991 (9th Cir. 1997) .....................................................................16

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983)..................................12

*Spain v. Aetna Life Ins. Co.*,
    11 F.3d 129 (9th Cir. 1993) .......................................................................13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................18, 21

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .....................................................................10

*The Meadows v. Employers Health Ins.*,
    47 F.3d 1006 (9th Cir. 1995) ................................................................14, 15

- iv -

*Uhm v. Humana, Inc.*,
    No. C06-0185-RSM, 2006 WL 1587443 (W.D. Wash. Jun. 5, 2006)..........................6, 10

*Vencor Hosps. Ltd. P'ship v. Aetna Life Ins. Co.*,
    2001 U.S. Dist. LEXIS 17546 (S.D. Ind. Sept. 6, 2001) ....................................................14

*Zimmerman v. City of Oakland*,
    255 F.3d 734 (9th Cir. 2001) ..............................................................................................4

## STATE CASES

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
    7 Cal. 4th 503, 28 Cal. Rptr. 2d 475 (1994)......................................................................21

*Auerbach v. Great W. Bank*,
    74 Cal. App. 4th 1172, 88 Cal. Rptr. 2d 718 (1999)..........................................................18

*California Emergency Physicians Med. Grp. v. Pacifcare*,
    111 Cal. App. 4th 1127, 4 Cal. Rptr. 3d 583 (2003)..........................................................19

*Coleman v. Gulf Ins. Group*,
    41 Cal. 3d 782, 226 Cal. Rptr. 90 (1986)..........................................................................19

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*,
    69 Cal. App. 3d 268, 137 Cal. Rptr. 855 (1977)..........................................................17, 18

*Dryden v. Tri-Valley Growers*,
    65 Cal. App. 3d 990, 135 Cal. Rptr. 720 (1977)................................................................21

*Guz v. Bechtel National, Inc.*,
    24 Cal. 4th 317, 100 Cal. Rptr. 2d 352 (2000)............................................................17, 18

*Maglica v. Maglica*,
    66 Cal. App. 4th 442, 78 Cal. Rptr. 2d 101 (1998)............................................................17

*Ochs v. PacifiCare of California*,
    115 Cal. App. 4th 782, 9 Cal. Rptr. 3d 734 (2004)............................................................19

*Johnson v. County of Fresno*,
    111 Cal. App. 4th 1087, 4 Cal. Rptr. 3d 475 (2003)..........................................................21

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26, 77 Cal. Rptr. 2d 709 (1998)......................................................................20

*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*,
    102 Cal. App. 4th 765, 125 Cal. Rptr. 2d 804 (2002)........................................................20

*Shoemaker v. Myers,*
    52 Cal. 3d 1, 276 Cal. Rptr. 303 (1990)..........................................................................21

*Wilson v. 21st Century Ins. Co.,*
    42 Cal. 4th 713, 68 Cal. Rptr. 3d 746 (2007).................................................................20

## FEDERAL STATUTES AND REGULATIONS

42 C.F.R.
    § 422.113...........................................................................................................2, 3, 4, 5, 6
    § 422.402.................................................................................................................5
    § 422.560 *et seq.*.....................................................................................................9
    § 422.566(b)............................................................................................................9
    § 422.566(c)............................................................................................................9
    § 422.578................................................................................................................9

29 U.S.C.
    § 1002(1)...............................................................................................................11
    § 1003(a)...............................................................................................................11
    § 1132(a)...........................................................................................................11, 14
    § 1144(a)...........................................................................................................11, 12
    § 1144(b)...............................................................................................................12

42 U.S.C.
    § 405(g)...............................................................................................................5, 7
    § 405(h)...............................................................................................................5, 7
    § 1395w-21 *et seq.*.................................................................................................4, 8
    § 1395w-26(b)(3).....................................................................................................5, 6
    § 1395w-22(g)(5)........................................................................................................7
    § 1395ii....................................................................................................................7

Pub. L. No. 108-173, 117 Stat. 2006 ..............................................................................4

65 Fed. Reg. 40203 .......................................................................................................10

ERISA
    3(1) ......................................................................................................................11
    4(a) ......................................................................................................................11
    502(a) ...............................................................................................11, 12, 13, 14, 15
    514(a) .....................................................................................................11, 12, 13

Fed. R. Civ. P.
    12(b)(1)..............................................................................................................2, 10
    12(b)(6)...........................................................................................................2, 4, 10

**STATE STATUTES AND REGULATIONS**

28 Cal. Code Regs.
  § 1300.71.28................................................................................................4

Cal. Bus. & Prof. Code
  § 17200.................................................................................3, 4, 6, 12, 14

Cal. Civ. Code
  § 1621...............................................................................................17

Cal. Health & Safety Code
  § 1262.8..........................................................................................2, 3, 4
  § 1317...............................................................................................2
  § 1340 *et seq.* ..................................................................................2
  § 1371.4.....................................................................................2, 3, 4, 14
  § 1371.4(j)...................................................................................3, 4

**INTRODUCTION**

This dispute concerns Kaiser members who find themselves admitted to the plaintiff hospital ("Prime Hospital" or "Prime") as a result of receiving care through the hospital's emergency room.  Prime does not have a written contract with Kaiser.  While Kaiser covers emergency services provided to its members by non-contracted hospitals, Kaiser is not required under governing state and federal law and employer sponsored ERISA plans to pay for post-stabilization care – care following stabilization of an emergency medical condition – at a non-contracted hospital unless Kaiser pre-authorizes that care.  Non-contracted hospitals such as Prime are required to contact Kaiser before rendering post-stabilization care to facilitate the coordination of care and either authorize the care or transfer the patient to a Kaiser-designated hospital.

Unfortunately, once Prime acquired the hospital at issue in this litigation the pre-admission calls to Kaiser virtually ceased and Prime began actively to obstruct Kaiser's efforts to assess its members' post-stabilization care needs and transfer the patient to a Kaiser facility in appropriate cases.  These dramatic changes in the hospital's practices significantly interfere with Kaiser's ability to coordinate its members' care under the provisions of law regarding post-stabilization care.  Although Kaiser has paid for emergency services provided to its members, Prime now seeks additional payments for unauthorized post-stabilization care alleging various state law claims.

Prime's actions simply reflect its plan to ignore the law and maximize the revenue to the hospital at all costs.  In addition to the obvious financial consequences, Prime's practices disrupt the continuity of patient care within Kaiser.  The Medicare post-stabilization and transfer regulations, as well as California law, both recognize the value of a health plan's ability to provide health care services to its members within its own provider system.  Prime's failure to communicate and its obstruction of patient transfers to a Kaiser-designated hospital result in patients being treated without the benefit of their medical history and without the continuity of care that Kaiser's integrated health system provides.

- 1 -

1    In addition to their lack of merit, Prime's claims are barred by both Medicare and ERISA

2  and fail to state a claim.  All of Prime's causes of action seek payment of benefits for members

3  covered under Medicare and ERISA.  As to these members, Medicare and ERISA preempt the

4  state law causes of action and provide the exclusive administrative remedy for denial of benefits.

5  To the extent Prime's state law claims involve non-Medicare and non-ERISA members, Prime's

6  second, third, fourth and sixth causes of action fail to state a claim.  Accordingly, Kaiser

7  respectfully moves this Court, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of

8  Civil Procedure, to dismiss this action.

9  **BACKGROUND AND STATEMENT OF FACTS**

10    Kaiser is a licensed health care service plan under the California Knox-Keene Health

11  Care Service Plan Act of 1975, California Health & Safety Code § 1340 *et seq.*  Complaint

12  ("Cmpt.") ¶ 10.  The primary focus of the dispute is on Kaiser members who enter the Prime

13  hospital through the emergency department.  Prime is a non-contracted hospital, meaning it has

14  no express contract with Kaiser to provide services to Kaiser members and is not within the

15  Kaiser system.  *Id.* ¶ 16(b).  When a Kaiser member presents for treatment in Prime's emergency

16  room, Prime is required by federal and state law to provided a screening examination and

17  stabilize the patient's emergency medical condition (*Id.* p. 3:8-13),[1] and Kaiser is obligated by

18  state and federal Medicare law and the terms of its members' ERISA plans to pay non-contracted

19  hospitals for this care until the patient is stabilized.  *Id.* ¶ 16(a) (citing EMTALA and Cal. Health

20  & Safety Code § 1317).

21    Once the emergency medical condition has been stabilized, Kaiser is not required to pay

22  for post-stabilization care – medically necessary care following stabilization of an emergency

23  medical condition – at a non-contracted hospital unless Kaiser pre-authorizes that care.  *See* Cal.

24  Health and Safety Code §§ 1262.8, 1371.4; 42 C.F.R. § 422.113 (2005) (applicable to members

25  enrolled in Kaiser's Medicare Advantage Plan).[2]  The same requirements apply to Kaiser

26  ─────────────

27  [1] The federal and state laws are the Emergency Medical Treatment and Active Labor Act ("EMTALA") and Cal. Health & Safety Code § 1317.  Cmpt. p. 3:8-9.

28  [2] Cal. Health & Saf. Code § 1262.8(a) provides that "[a] hospital shall contact an enrollee's health care service plan to obtain the enrollee's medical record information prior to admitting the

- 2 -

members enrolled in ERISA plans, the terms of which preclude coverage for unauthorized post-stabilization care.  *See* § II.B. *infra*.  To receive payment, a non-contracted hospital must therefore call Kaiser to seek authorization prior to providing post-stabilization care and give Kaiser the opportunity to authorize the care or transfer the patient to a Kaiser-designated hospital.

Unfortunately, Prime fails to seek authorization prior to providing post-stabilization care, and Kaiser has, accordingly, denied Prime's claims for benefits.  Prime brings seven state law causes of action based on Kaiser's denial of claims for benefits:  (1) breach of implied-in-law contract based on 42 C.F.R § 422.113 and Cal. Health & Saf. Code § 1371.4; (2) breach of implied-in-fact contract based on the written contracts, or "Policies," between Kaiser and its members; (3) breach of contract – written assignment based on Kaiser member's alleged assignment of benefits to Prime; (4) breach of the covenant of good faith and fair dealing implied in the Policies; (5) *quantum meruit* for services provided to Kaiser members; (6) intentional interference with express and implied contracts between Prime and Kaiser members; and (7) Cal.

---

enrollee for poststabilization care as an inpatient, or prior to transferring the enrollee for poststabilization care to a noncontracting hospital, or prior to providing poststabilization care to an enrollee who was admitted to a noncontracting hospital for medically necessary care prior to stabilization of an emergency condition …."  *See* Cmpt. ¶¶ 16(b) and 20(b) (referencing Cal. Health & Saf. Code § 1262.8) and ¶¶ 16(c) and 20(a) (referencing calls to or contacts with Kaiser).

Pursuant to Cal. Health & Saf. Code § 1371.4(j)(1), Kaiser must, within 30 minutes of receiving the initial call from the hospital, "transmit any appropriate portion of the enrollee's medical record requested" and "[e]ither authorize post-stabilization care or inform the hospital that it will arrange for the prompt transfer of the enrollee to another hospital."  Pursuant to Cal. Health & Saf. Code § 1371.4(j)(2)(A), Kaiser is only required to pay for pre-authorized post-stabilization care.  *See* Cmpt. ¶¶ 16(j), 22, 25, 64(a), 64(e) and 64(f) (referencing Cal. Health & Saf. Code § 1371.4).

Similarly, for Medicare members, pursuant to 42 C.F.R. § 422.113(c)(2)(i) through (iii), a Medicare Advantage organization is financially responsible only for the following care:  (i) pre-approved post-stabilization care; (ii) non pre-approved post-stabilization care administered to maintain the enrollee's stabilized condition within 1 hour of a request for pre-approval; or (iii) non pre-approved post-stabilization care administered to maintain, improve, or resolve the enrollee's stabilized condition if the organization does not respond within 1 hour, cannot be contacted, or its representative and the treating physician cannot reach an agreement concerning the enrollee's care and a plan physician is not available for consultation.  42 C.F.R. § 422.113(c)(2).  *See* Cmpt. ¶¶ 22, 25, 64(a) and 64(c) (referencing 42 C.F.R. § 422.113).

- 3 -

Bus. & Prof. Code § 17200, *et seq*., for activities concerning Cal. Health & Saf. Code §§ 1262.8 and 1371.4(j), 28 Cal. Code Regs. § 1300.71.28, and 42 C.F.R. § 422.113.

With respect to the Medicare and ERISA members, all of these causes of action are preempted and barred. With respect to non-ERISA and non-Medicare members, even accepting Prime's allegations as true, as Kaiser must for purposes of dismissal,[3] the claims for implied in-fact contract, assigned contract, bad-faith and interference with contract fail to state a claim, and Prime lacks standing to pursue its claims for breach of implied-in-fact contract and bad-faith.

**ARGUMENT**

**I.    AS TO MEDICARE MEMBERS, ALL OF PRIME'S STATE LAW CLAIMS ARE PREEMPTED BY THE MEDICARE ACT**

The complaint does not exclude Medicare members. It seeks the payment of Medicare covered benefits, that is, payment for services rendered to Medicare members. As to Medicare members, the claims are barred by the express preemption of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2006 (codified in scattered sections of 42 U.S.C.) ("the Act," or collectively with other Medicare Statutes, the "Medicare Act") and by Prime's failure to pursue the exclusive administrative channel for resolving Medicare disputes.

**A.    The Medicare Advantage Program**

At all times alleged in the complaint, Kaiser provided services to members of Kaiser's Medicare Advantage Plan pursuant to agreements between Kaiser and the U.S. Department of Health and Human Services. *See* Cmpt., ¶ 10 ("Medicare beneficiaries … have enrolled in Medicare HMOs offered by Kaiser Health Plan."); *see also id*. ¶ 16(k) ("Emergency Services provided [by Plaintiff] to [Kaiser] Medicare + Advantage Plan members."). Under the Medicare Advantage Plan, Kaiser covered medical and hospital services for enrollees in accordance with the standards set forth in Part C of the Medicare Act, 42 U.S.C. § 1395w-21 *et seq*.

---

[3] *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001) (well-pleaded allegations of fact in the complaint are accepted as true for purpose of dismissal under Fed. R. Civ. P. 12(b)(6)).

The Medicare Act expresses a clear Congressional intent to protect the operation of the Medicare program, including the Medicare Advantage Program, from unwarranted state law interference.  The Act achieves this goal through the inclusion of parallel protective principles to prevent the Medicare Advantage program from being whipsawed by state laws or regulations or by courts and juries across 50 different states.  First, the Act protects against interference by granting express federal preemption.  42 U.S.C. § 1395w-26(b)(3).  Second, the Act mandates that claims arising under the Medicare Act must be submitted to the comprehensive and exclusive administrative process mandated by Congress and administered by the Federal Centers for Medicare & Medicaid ("CMS").  42 U.S.C. § 405(g)-(h).  In doing so, Congress elected to protect the Medicare program against premature involvement of any court, state or federal, by expressly denying any court jurisdiction except for federal judicial review following exhaustion of the agency's administrative process.  Prime's action violates both principles.

**B.    Prime's State Law Claims Are Expressly Preempted By The Medicare Act**

The Medicare Act expressly preempts "any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part," regardless of whether the state law conflicts with federal standards.  42 U.S.C. § 1395w-26(b)(3); *see also* 42 C.F.R. § 422.402 (2005) ("The standards established under this part supersede any State law or regulation … with respect to the MA plans that are offered by MA organizations.").

Thus, it follows that Prime's state law claims are preempted.  The complaint alleges that Kaiser has failed to pay for emergency services and stabilizing care under its Medicare Advantage Plans.  Federal regulations specify the standards governing payment for emergency services and stabilizing care at 42 C.F.R. § 422.113.  Pursuant to 42 C.F.R. § 422.113(c)(2), a Medicare Advantage Organization is not responsible for post-stabilization care unless the

- 5 -

1   organization pre-approved the care or failed to respond within a specified period of time.  *See* fn.

2   2, *supra*.[4]

3         Prime's first (breach of implied-in-law contract) and seventh (Cal. Bus. & Prof. Code

4   § 17200) causes of action *expressly* allege violation of the federal regulation 42 C.F.R.

5   § 422.113.  Cmpt. ¶¶ 22, 25, 64(a) and 64(c).  These two causes of action are clearly preempted.

6   Similarly, although "artfully pleaded" as state law claims, Prime's remaining causes of action

7   also seek benefits for services for what Prime alleges constitute emergency medical care

8   provided to Kaiser members enrolled in Medicare Advantage Plans.  The terms and conditions

9   governing whether such services are payable are specifically addressed by § 422.113 and, as

10  such, these causes of action are likewise expressly preempted by 42 U.S.C. § 1395w-26(b)(3).

11        In *Dial v. HealthSpring of Ala., Inc*., 501 F. Supp. 2d 1348, 1359 (S.D. Ala. 2007),

12  plaintiffs brought state law claims against a Medicare Advantage Plan, including breach of

13  contract claims relating to failure to properly pay benefits.  The court found that plaintiffs' state

14  law claims "fall within areas which Congress intended to regulate through the [Medicare Act],

15  and thus are preempted by federal law."  *See also Uhm v. Humana, Inc.*, No. C06-0185-RSM,

16  2006 WL 1587443, *2 (W.D. Wash. Jun. 5, 2006) (state law claims against sponsor of Medicare

17  Part D prescription drug benefit plan preempted because "there are federal standards which

18  govern the subject matter of each of plaintiffs' claims"); *Atkins v. PacifiCare of Wash., Inc*., No.

19  C04-5889RBL, 2005 WL 2396826 (W.D. Wash. Sept. 27, 2005) (state law contract claim

20  preempted by the Medicare Act because plaintiff sought recovery of Medicare Advantage

21  benefits for which federal standards existed).

22        Here, as in *Dial, Uhm* and *Atkins*, Prime's claims are nothing more than claims for the

23  payment of Medicare benefits.  Indeed, Prime's third and fourth causes of action are explicitly

24  brought as the alleged assignee of benefits from the beneficiaries.  It makes no difference

25  whether the plaintiff is the beneficiary, as in the cited cases, the assignee of beneficiaries, or the

---

[4] "Post-stabilization" services are "covered services, related to an emergency medical condition, that are provided after an enrollee is stabilized in order to maintain the stabilized condition, or, under the circumstances described in paragraph (c)(2)(iii) of this section, to improve or resolve the enrollee's condition."  42 C.F.R. § 422.113(c)(1).

health care provider.  The claims seek the payment of Medicare benefits in each case, and the same federal standard applies.  Federal standards exist regarding these claims with respect to Medicare beneficiaries and as such the state law claims are expressly preempted by the Medicare Act.

C.     **This Court Lacks Jurisdiction Over Prime's Claims Because Prime Has Failed To Exhaust The Administrative Remedies Required By The Medicare Act**

1.     **Prime's Claims Arise Under The Medicare Act And Are Therefore Subject To The Administrative Process**

All claims relating to Medicare benefits, including Prime's claims here, are subject to the exclusive administrative process mandated by Congress and administered by CMS.  42 U.S.C. § 405(g)-(h), applicable to Medicare Advantage plans pursuant to 42 U.S.C. §§ 1395w-22(g)(5) and 1395ii.  This process protects against premature judicial involvement in Medicare benefits disputes by expressly denying jurisdiction except for limited federal judicial review following the agency's mandated administrative process.

This mandatory administrative process applies whenever claims "arise under" the Medicare Act.  *Heckler v. Ringer*, 466 U.S. 602, 614, 8 L. Ed. 2d 622, 635, 104 S.Ct. 2013, 2021 (1984).  Claims "arise under" the Medicare Act where either of two tests are met:  (1) "both the standing and the substantive basis for the presentation" of the claims are the Medicare Act; or (2) where the claims are "inextricably intertwined" with a claim for benefits.  *Id.* at 614-615.  In *Heckler*, the Supreme Court addressed whether claims requesting payment of Medicare benefits and challenging Medicare procedures were "cognizable only under" federal law, and thus subject to exhaustion of the administrative process prior to judicial review.  The Court held that 42 U.S.C. § 405(g) "is the sole avenue for judicial review for all claims arising under the Medicare Act," thereby rejecting respondents' argument that they "sought only declaratory and injunctive relief and not an actual award of benefits."  *Id.* at 615 (internal quotations omitted).  Even plaintiffs' claims that did not specifically seek benefits were subject to the administrative process because they were "inextricably intertwined" with a claim for benefits.  *Id.* at 614.  Thus, the Court held that claims "at bottom" seeking Medicare benefits or "inextricably intertwined" with

- 7 -

a claim for benefits must be "channeled first into the administrative process which Congress has provided for the determination of claims for benefits." *Id*.

The courts similarly dismiss lawsuits by providers based on failure to pay Medicare benefits where the administrative process was not exhausted.  In *Kaiser v. Blue Cross*, 347 F.3d 1107 (9th Cir. 2003), plaintiffs, owners of a home health agency, sued Blue Cross and CMS for the loss of their business and personal bankruptcy resulting from alleged wrongs committed by the defendants.  Although plaintiffs did not specifically seek recovery of Medicare benefits, the court found that because their statutory and common law claims arose under Medicare, the court lacked jurisdiction absent exhaustion of the administrative process.  *Id*. at 1115.  Similarly, in *Marin v. Hew, Health Care Fin. Agency*, 769 F.2d 590 (9th Cir. 1985), the court found that a home health provider's suit against the government for economic damages caused by negligent processing of claims arose under Medicare, noting that "the substantive cause of action [was] anticipated by the statute" and his "demand for greater damages than the statute provides would render meaningless the jurisdiction restriction of § 405(h)." *Id*. at 592.  *See also Bodimetric Health Servs. v. Aetna Life & Casualty*, 903 F.2d 480, 487 (7th Cir. 1990) (provider's claims subject to § 405(h)).

Therefore, where claims arise under or are intertwined with the Medicare Act, they are subject to the exclusive Medicare administrative process.  *Heckler*, 466 U.S. at 614; *Kaiser*, 347 F.3d at 1115; *Marin*, 769 F.2d at 592; *Bodimetric*, 903 F.2d at 487.  Here, it is indisputable that Prime's claims arise under the Medicare Act and are subject to exhaustion of the required administrative process.

### 2. Medicare Provides Specific Administrative Remedies That Address Prime's Claims

As a Medicare Advantage Organization, Kaiser is obligated to determine which claims merit payment, and in what amount, in accordance with the standards set forth in Part C of the Medicare Act, 42 U.S.C. § 1395w-21 *et seq*.  Kaiser's payment determinations are deemed "organizational determinations" and include an "MA organization's *refusal* to provide or pay for

- 8 -

services, in whole or in part, including the type or level of services … ."  42 C.F.R. § 422.566(b) (2005).

Medicare provides an administrative process to challenge organizational determinations made by Medicare Advantage Organizations such as Kaiser.  The process is available to both beneficiaries and providers, such as Prime.  Providers specifically have the right to both request organizational determinations and appeal them, with or without the beneficiary's participation. 42 C.F.R. §§ 422.566(c) (2005), 422.578 (1998).  A provider or a beneficiary seeking to challenge an MA organization's payment practices must first request reconsideration of the organization's decision and, if dissatisfied with the reconsideration decision, has the right to appeal the decision, the right to an Administrative Law Judge ("ALJ") hearing, followed by Medicare Appeals Council review of the ALJ hearing, and, finally, the right to judicial review in the federal courts.  42 C.F.R. § 422.560 *et seq*. (1998).

Prime's complaint alleges that Kaiser has "failed and refused … to appropriately reimburse the Hospital for the Emergency Medical Services provided by the Hospital to Kaiser Members."  Cmpt. ¶ 27.  In essence, Prime alleges that Kaiser has made numerous organizational determinations with which Prime disagrees.  Prime's complaint is thus nothing more than a masked attempt to end run Medicare's administrative process and have its appeals heard in court. At bottom, each of Prime's claims seek Medicare benefits:  "the reasonable and customary value of Emergency Medical Services and further stabilizing care provided to Kaiser members as they are required to do by the express provisions of 42 C.F.R. § 422.113"  Cmpt. ¶ 64(a).

Prime is clearly familiar with the required administrative appeals process and has chosen to utilize it for particular cases of benefit denials.  Apparently dissatisfied with the outcome of the Medicare administrative process, Prime opted to ignore it and file this lawsuit in state court. Appeals for Kaiser's Medicare denials are sent to Maximus Federal Services, a company hired by Medicare to make independent decisions regarding whether Kaiser's organizational determinations were correct.  Declaration of Cheryl McCaughan, ¶ 3 ("McCaughan Decl.").

- 9 -

1   Examples of such Medicare appeal determinations are attached at Exhibits A-1 through A-6 of

2   the McCaughan Decl.[5]

3           Prime could and should have submitted its claims for non-reimbursed care for Medicare

4   members to the administrative process and completed this process.  In fact, the Federal Register

5   comments to § 422.113 anticipate precisely this situation:  "a dispute over whether the conditions

6   for [Medicare Advantage] coverage for post-stabilization services under § 422.100 and

7   § 422.113 have been met could be resolved in an enrollee's appeal … or in an appeal by a

8   provider if the provider agrees not to charge the enrollee."  65 Fed. Reg. 40203 (2000).[6]  This

9   process is the exclusive manner in which a provider can seek direct payment from Medicare

10  plans, because as explained in the proceeding section, state law claims are preempted.  Thus,

11  Congress and CMS conferred standing on providers to pursue Medicare appeals directly in the

12  administrative process.  Instead of submitting its claims to this exclusive appeals process, Prime

13  pleaded them as state law claims and went straight to court.  Because Prime failed to exhaust its

14  administrative remedies, its claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and

15  12(b)(6).[7]

16

17

18  [5] Kaiser submits these decisions for the limited purpose of illustrating steps in the Medicare
    appeals process.  Prime alleges that Kaiser does not "forward denials of claims related to
19  Medicare HMO Enrollees [to] Maximus" for review (Cmpt. ¶ 15(k)), and submission of these
    decisions is therefore appropriate.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In
20  ruling on a 12(b)(6) motion, a court … may consider a writing referenced in a complaint but not
    explicitly incorporated therein if the complaint relies on the document and its authenticity is
21  unquestioned."); *Americopters, LLC v. FAA*, 441 F.3d 726, 732 (9th Cir. 2006) ("in a Rule
    12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the
22  complaint").

23  [6] The agreement by the provider not to charge the enrollee is merely a reflection that (1) a
    provider seeking Medicare payment for services provided to an enrollee must do so through the
24  administrative process and cannot go directly to court for relief; and (2) a provider seeking
    payment from Medicare, including a Medicare health plan, cannot thereafter bill the enrollee.
25  The Federal Register comments to § 422.113 parallel the no-billing-of-enrollees rule that applies
    under traditional Medicare (Part A or B) when the provider seeks payment from Medicare.
26

27  [7] Courts dismiss Medicare claims for failure to exhaust under both Fed. R. Civ. P. 12(b)(1) and
    12(b)(6).  *See Marin* and *Kaiser* (dismissing on 12(b)(1) grounds); *Uhm* (dismissing on 12(b)(6)
28  grounds).

- 10 -

## II.    AS TO ERISA BENEFICIARIES, ALL OF PRIME'S STATE LAW CAUSES OF ACTION ARE PREEMPTED BY ERISA

The complaint is broadly written so as to include ERISA members.  Because they seek payment of ERISA benefits as to ERISA members, Prime's state law claims are preempted and should be dismissed.  Both the Supreme Court and the Ninth Circuit have recognized the broad preemptive force of ERISA.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 159 L. Ed. 2d 312, 327, 124 S. Ct. 2488, 2496 (2004) (noting ERISA's "extraordinary pre-emptive power"); *Cleghorn v. Blue Shield*, 408 F.3d 1222, 1225 (9th Cir. 2005) (noting ERISA's "powerful preemptive force").  ERISA has two preemptive provisions:  ERISA § 514(a), 29 U.S.C. § 1144(a), and ERISA § 502(a), 29 U.S.C. § 1132(a).  ERISA § 514(a) expressly preempts state laws that relate to an employee benefit Plan.  ERISA § 502(a) is even broader and provides the exclusive permissible remedies under ERISA.  "Any state-law cause of action that duplicates, supplements or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted."  *Davila*, 542 U.S. at 209.

### A.    Kaiser Members Are Enrolled In ERISA-Governed Plans

At all times alleged in the complaint, Kaiser provided health care coverage for employees (and their enrolled dependents) under group agreements entered into between Kaiser and commercial employers ("Commercial Group Agreements").  *See* Cmpt. ¶ 10 (Kaiser "offers health insurance plans to … employers for the benefit of their employees.).  These Commercial Group Agreements are referred to in the complaint as "Policies."  Cmpt. ¶¶ 30-33, 40, 42-44 and 46.

An "employee welfare benefit plan" is "any plan, fund or program … established or maintained by an employer … for the purpose of providing …  medical, surgical, or hospital care or benefits …."  29 U.S.C. § 1002(1).  The Commercial Group Agreements through which Kaiser arranged for the provision of medical and hospital services are an integral part of employee welfare benefit plans within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1) and are subject to ERISA § 4(a), 29 U.S.C. § 1003(a).  For each of these policies at issue in the complaint, Kaiser issued an Evidence of Coverage ("EOC") that summarizes the terms and

- 11 -

1   conditions of benefits covered under the policy, and therefore reflects the terms of coverage for

2   the ERISA plans at issue.  Declaration of Maria Borje-Bonkowski, ¶¶ 4-5 ("Borje Decl.").

3       **B.    Prime's State Law Causes Of Action Are Preempted By ERISA § 514(a) And**
            **ERISA § 502(a)**

4

5       ERISA "shall supersede any and all State laws insofar as they may now or hereafter

6   relate to any employee benefit plan."  ERISA § 514(a), 29 U.S.C. § 1144(a).[8]  ERISA's statutory

7   preemption provision is expansive.  *See Egelhoff v. Egelhoff*, 532 U.S. 141, 146, 149 L. Ed. 2d

8   264, 271, 121 S. Ct. 1322, 1327 (2001) (ERISA § 514(a) is "clearly expansive"); *Pilot Life,* 481

9   U.S. at 45-46 (ERISA § 514(a) is "deliberately expansive").  A state law "relates to" an

10  employee benefit plan "if it has a connection with or reference to such a plan."  *Shaw v. Delta*

11  *Air Lines*, *Inc.*, 463 U.S. 85, 96-97, 77 L. Ed. 2d 490, 500-01, 103 S. Ct. 2890 (1983).  ERISA

12  § 514(a) "preempts even generally applicable laws, not just laws aimed exclusively at employee

13  benefit plans."  *General American Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir.

14  1993).  A state law claim alleging improper denial or processing of benefits under an ERISA

15  plan "relates to" a plan and is preempted.  *Pilot Life,* 481 U.S. at 47; *Parrino v. FHP, Inc.*, 146

16  F.3d 699, 705 (9th Cir. 1998) ("Section 514(a) preempts state causes of action based on alleged

17  improper handling of claims for medical benefits under an ERISA plan.").  State law that

18  "specif[ies] the basis on which payments are made to and from the plan," interferes with a plan

19  administrator's duty to administer plans "in accordance with the documents and instruments

20

21  [8] The "savings clause" saves from preemption any state law that "regulates insurance."  ERISA
    § 514(b)(2)(a), 29 U.S.C. § 1144(b)(2)(a).  For a law to "regulate insurance" it must be

22  "specifically directed toward entities engaged in insurance" and "substantially affect the risk
    pooling arrangement between the insurer and the insured."  *Kentucky Ass'n of Health Plans, Inc.*

23  *v. Miller*, 538 U.S. 329, 341-342, 155 L. Ed. 2d 468, 480-81, 123 S. Ct. 1471, 1479 (2003).
    None of Prime's causes of action – breach of contract, bad-faith, *quantum meruit*, interference

24  with contract, and Cal. Bus. & Prof. Code § 17200 – are "directed towards the insurance
    industry;" nor do they "substantially affect[] the risk pooling arrangement between" insurers and

25  insureds.  They are, therefore, not saved from preemption.  *See Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41, 50-51, 95 L. Ed. 2d 39, 49-50, 107 S. Ct. 1549, 1554-55 (1987) (state law claims

26  under insurance policy for tortious breach of contract and bad faith are not based on laws
    regulating insurance) (overruled in part on other grounds); *Kanne v. Conn. Gen. Life Ins. Co.*,

27  867 F.2d 489, 494 (9th Cir. 1988) ("California's common law of contract interpretation is not a
    law that 'regulates insurance' and therefore is not saved from preemption.").

28

- 12 -

1    governing the plan," or impedes "nationally uniform plan administration," is preempted by

2    ERISA § 514(a). *Egelhoff*, 532 U.S. at 147-148.

3        ERISA § 502(a) also has broad preemptive force in that it provides the exclusive avenue

4    for enforcing claims under ERISA, completely preempting any state law cause of action that

5    duplicates, supplements or supplants ERISA's civil enforcement remedy. *Davila*, 542 U.S. at

6    209.  Any claim that falls within the scope of ERISA's civil enforcement provisions is preempted

7    by ERISA § 502(a). *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-67, 95 L. Ed. 2d 55,

8    63-65, 107 S. Ct. 1542, 1547-48 (1987).

9        As to ERISA members, each of Prime's causes of action seeks benefits under an ERISA

10   plan, and each alleges that Kaiser has improperly processed and incorrectly denied Prime's

11   claims for benefits.  The causes of action clearly "relate to" the plans.  As indicated by the

12   attached EOC excerpts (which reflect plan terms) the ERISA plans contain terms governing

13   coverage, including terms denying coverage if Kaiser does not pre-approve any post-stabilization

14   care.  Borje Decl., ¶¶ 5-12 and Exs. B-1 to B-6.  Kaiser has rightfully followed the plans' terms

15   and denied Prime's claims for non-covered post-stabilization care.  The propriety of these

16   determinations, which all "relate to" the plans, is the issue Prime impermissibly seeks to

17   adjudicate through state law claims in court.  Similarly, each cause of action seeks an alternative

18   method of acquiring benefits through state law and is, therefore, preempted by ERISA § 502(a).

19       Courts consistently recognize that state law tort, contract and statutory claims by plan

20   participants or beneficiaries seeking ERISA benefits are preempted by ERISA § 514(a).[9]

21   Likewise, courts consistently hold state law tort, contract and statutory claims by participants or

22

23

---

24   [9] *See, e.g., Pilot Life*, 481 U.S. at 57 (state law claims for tortious breach of contract, breach of
     fiduciary duties and fraud in the inducement asserting improper processing of a claim for
25   benefits preempted by ERISA 514(a)); *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir.
     1993) (state law claim for wrongful death by wife and daughter of participant and beneficiary
26   seeking "damages for the negligent administration of benefit claims" preempted by ERISA
     § 514(a)); *Parrino*, 146 F.3d at 705 (participant's claims for breach of implied covenants of good
27   faith and fair dealing, civil conspiracy, general negligence, and fraud in the inducement
     preempted by ERISA § 514(a)).
28

beneficiaries seeking benefits or to enforce rights under ERISA preempted by ERISA § 502(a).[10]

Indeed, the Ninth Circuit recently held that a plan participant's claims under Cal. Bus. & Prof.

Code § 17200 based on unfair business practices relating to Cal. Health & Safety Code § 1371.4

– a near clone of Prime's seventh cause of action here – were preempted under ERISA § 502(a).

*Cleghorn*, 408 F.3d at 1227.  If Prime were a beneficiary, its entire complaint would

unquestionably be preempted.  The only question is whether Prime's status as a provider changes

this result, either because such claims no longer "relate to" the plan or because Prime lacks

standing to bring a claim under ERISA § 502(a).[11]

There are two general categories of cases involving suits by providers that concern

ERISA preemption.  *Parkview Hosp. Inc. v. White's Residential & Family Servs.*, No. 1:07-CV-

0208 WCL, 2008 U.S. Dist. LEXIS 1289, *12-14 (N.D. Ill. Jan. 7, 2008) (noting categories and

cases in each) (citing *Vencor Hosps. Ltd. P'ship v. Aetna Life Ins. Co.*, 2001 U.S. Dist. LEXIS

17546 (S.D. Ind. Sept. 6, 2001)).  The first category is a narrow category of cases in which a

provider seeks to enforce an express promise by plan administrators or an express contract

between the provider and the ERISA health plan.  *See Parkview* at *13 (noting category and

collecting cases); *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995) (claims

based on express promise not preempted); *Blue Cross v. Anesthesia Care Associates Medical*

*Group, Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999) (claims based on express contract not

preempted).  In such cases, the claims are not preempted as they do not seek benefits nor relate to

---

[10] *See, e.g., Davila,* 542 U.S. at 221 (claims by participant and beneficiary against plan administrator under Texas statute requiring HMO to exercise ordinary care preempted by ERISA § 502(a)); *Metropolitan Life*, 481 U.S. at 64-67 (1987) (participant's state law tort and contract causes of action preempted by ERISA § 502(a));  *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (participant's cause of action under Montana's Unfair Trade Practices Act "which seeks non-ERISA damages for what are essentially claim processing causes of action … clearly falls under the § 1132 preemption exemplified by *Pilot Life*."); *Parrino*, 146 F.3d at 703-04 (participant's claims for breach of implied covenant of good faith and fair dealing and for civil conspiracy preempted by ERISA §502(a)); *Kanne*, 867 F.2d at 493-94 (participant's claims for compensatory and punitive damages under California statutory law prohibiting unfair insurance practices preempted by ERISA § 502).

[11] ERISA § 502(a) provides that civil actions to enforce ERISA may be brought by participants, beneficiaries, fiduciaries, or the Secretary of Labor.  29 U.S.C. § 1132(a).

the ERISA plans, but rather "function irrespective of" the plan, *The Meadows*, 47 F.3d at 1010 (citation omitted), and derive from the terms of independent promises or contractual relationship between the provider and the health plan. *Blue Cross*, 187 F.3d at 1050-51. Prime has no express contract with Kaiser and its claims do not allege express promises made by Kaiser. Thus, its causes of action do not fit into this category of cases finding no preemption.

The second category involves claims by non-contracted third-party providers either seeking to enforce or expand the rights of beneficiaries under the terms of ERISA plans or seeking benefits through assignment from plan participants. *Parkview,* 2008 U.S. Dist. LEXIS 1289 at *12-13. Such claims are consistently held preempted, and Prime's claims fall into this second category. *Id.* The Ninth Circuit has held that a provider suing for benefits based on assignment of the beneficiary's rights to benefits under an ERISA plan – Prime's third cause of action (Breach of Contract – Written Assignment ) and fourth cause of action (Breach of Implied Covenant) – are preempted by ERISA § 502. *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986).

Prime's remaining causes of action are not based on assignment, but that does not avoid preemption. These causes of action clearly would be preempted if brought by the beneficiary, as they seek payment of benefits and relate to the plans. Prime's status as a provider does not change this result. These causes of action continue to "relate to" the ERISA plans, even though brought by Prime. They are not based on any independent express promise or contract between Prime and Kaiser (the first category discussed above). Because Prime's causes of action seek benefits, ERISA's civil enforcement mechanism is the only permissible method to acquire them. A plaintiff seeking ERISA benefits whose state claims are dismissed ordinarily can attempt to plead a claim for benefits under ERISA § 502. However, to the extent Prime lacks derivative standing to bring the claim because it failed to plead assignment, or because assignment is ultimately ineffective[12] it cannot state a § 502 claim.

---

[12] Prime neglects to allege the fact that each of the ERISA plans or policies at issue in this litigation contain a provision prohibiting assignment. *See, infra*, section III.B. Kaiser accepts as true Prime's allegations, as it must for purposes of dismissal, but reserves its rights to assert that Prime lacks even derivative standing to bring any claims against Kaiser.

- 15 -

C.   **Prime Has Failed To Exhaust ERISA's Mandatory Administrative Remedies**

Even if Prime had properly pleaded claims for benefits under ERISA, which it has not, those claims would be dismissed because Prime has not alleged that it exhausted available administrative remedies under the applicable benefit plans before seeking judicial relief.  The Ninth Circuit has repeatedly held that plaintiffs asserting claims for benefits under ERISA must first exhaust available administrative remedies under the applicable ERISA plan prior to commencing an action in court.[13]  This requirement serves several purposes, including "the reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claim settlement, the minimization of costs of claims settlement and a proper reliance on administrative expertise."  *Diaz*, 50 F.3d at 1483.  Claims brought prior to exhaustion of administrative remedies are properly dismissed.  *Diaz*, 50 F.3d at 1486 (affirming summary judgment for failure to exhaust); *Sarraff*, 102 F.3d at 993 (same).

To the extent Prime challenges Kaiser's determinations that the claims constitute unauthorized post-stabilization care, Prime must pursue the administrative grievance procedures dictated by the ERISA plans.  Only after this process is exhausted can Prime seek relief from this court, and only if Prime pleads proper claims under ERISA.  Prime has not pleaded that it exhausted its mandatory administrative remedies under ERISA and, as to ERISA members, its claims should be dismissed.

---

[13] *See*, *e.g.*, *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1997) ("[plaintiff's] failure to request in writing review of the Administrator's adverse decision precludes the instant claims under the ERISA plan"); *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995) ("a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court."); *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) ("we conclude that the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so.").

III.    **TO THE EXTENT ANY CLAIMS REMAIN BECAUSE THEY DO NOT RELATE TO MEDICARE OR ERISA MEMBERS, PRIME'S SECOND, THIRD, FOURTH, AND SIXTH CAUSES OF ACTION SHOULD BE DISMISSED**

A.    **Prime's Second Cause Of Action For Breach Of Implied-In-Fact Contract Fails To State A Claim**

An implied-in-fact contract requires both mutual agreement and consideration. *Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275, 137 Cal. Rptr. 855, 859 (1977) (essential elements of implied contract are mutual assent, usually accomplished through offer and acceptance, and consideration). Prime has pleaded neither, and, accordingly, its second cause of action should be dismissed.

### 1.    No Mutual Agreement Is Alleged

An implied-in-fact contract is predicated on an actual agreement and "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455-56, 78 Cal. Rptr. 2d 101, 109 (1998); Cal. Civ. Code § 1621. The intent to promise must be manifested by a "meeting of minds or an agreement." *Division of Labor*, 69 Cal. App. 3d at 275. "[T]he assumption, intention or expectation of either party alone can give rise to no inference of an implied contract." *Id*. at 277. Prime must also allege facts demonstrating mutual understanding of "the *particular* terms and conditions" of the contract. *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 337, 100 Cal. Rptr. 2d 352, 366 (2000) (emphasis in original).

Prime does not allege any mutual intent to be bound to a contract, let alone the particular terms or conditions of a contract. Prime makes the following pertinent allegations in support of the existence of implied-in-fact contracts: (1) Kaiser had written contracts ("Policies") with individuals that obligated Kaiser to pay for the individuals' emergency health care expenses, Cmpt. ¶ 30; (2) the Policies were entered into to guarantee members' access to emergency care at hospitals like Prime, and Kaiser knew or should have known that emergency services provided under the Policies would be rendered by the nearest facility, including Prime, *Id*. ¶ 33; (3) "In consideration for the Hospital's implied agreement to treat Kaiser Members, defendants

- 17 -

implicitly agreed to pay" Prime for the treatment, *Id.* ¶ 34; and (4) "Hospital and defendants have agreed in [sic] a course of conduct consistent with this implied agreement." *Id.*

Beginning with the last two of these four allegations, the alleged existence of "implied agreements," as well as the alleged agreed upon "course of conduct consistent with" these alleged agreements are merely legal conclusions and conclusory statements unsupported by factual allegations in the complaint and, as such, are properly disregarded and cannot provide the support necessary to sustain Prime's claims. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 232, 106 S. Ct. 2932 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences).

Neither of the remaining two allegations, nor any other allegations in the complaint, allege facts demonstrating an "actual mutual intent to create enforceable limitations" and an understanding of the "particular terms and conditions" of a contract. *Guz*, 24 Cal. 4th at 337. Prime has simply failed to plead mutual agreement.

### 2. No Consideration Exists For Implied-In-Fact Contract

An essential element of a claim for breach of an implied-in-fact contract is consideration. *Division of Labor*, 69 Cal. App. 3d at 275. Prime not only fails to plead consideration, but admits that there was no such consideration. Prime alleges that it was under a state and federal mandate to provide a medical screening examination and necessary care to stabilize the patient's emergency condition "regardless of the patient's insurance or financial status," (Cmpt. ¶ 9) and that it was prohibited by law from "delay[ing] or deny[ing] a medical screening examination and necessary stabilizing care in order to inquire about a person's insurance." *Id.* These allegations are incorporated by reference into Prime's breach of implied-in-fact contract claim (*id.*, ¶ 29) and demonstrate conclusively the lack of consideration. *Auerbach v. Great W. Bank*, 74 Cal. App. 4th 1172, 1185, 88 Cal. Rptr. 2d 718, 727 (1999) ("doing … something one is already legally bound to do cannot constitute … consideration."). As pleaded by Prime, statutory law, and not any implied contract, provided the inducement for the services at issue.

- 18 -

**B.    Prime's Third Cause Of Action For Breach Of Contract And Its Fourth Cause Of Action For Bad-Faith Should Be Dismissed Because The Alleged Assignments Are Invalid**

Prime's third and fourth causes of action for breach of contract and bad-faith are both based on alleged assignment of benefits under the policies by Kaiser members to Prime.  These alleged assignments are, however, invalid, as the policies at issue in this litigation prohibit the members from assigning their rights.  Borje Decl., ¶¶ 6-12 and Exs. B-1 to B-6.  The right to prohibit assignment is recognized and legally valid.  *Davidowitz v. Delta Dental Plan of California, Inc.,* 946 F.2d 1476, 1481 (9th Cir. 1991) ("The court concludes that ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan.").  Absent assignment, these causes of action fail to state a claim and should be dismissed.

**C.    Prime Lacks Standing To Pursue Its Second And Fourth Causes Of Action For Breach Of Implied-In-Fact Contract And Bad-Faith**

Prime's second cause of action for breach of implied-in-fact contract is based on the contracts, or "Policies" between Kaiser and its members.  Cmpt. ¶ 30.  Similarly, Prime's fourth cause of action alleges breach of the implied covenant of good faith and fair dealing ("bad faith") "contain[ed], implied in fact and law" in the "Policies"  and that "[t]he Hospital is an assignee of the benefits under the Policies."  Cmpt. ¶ 46.

Prime lacks standing to pursue these causes of action.  Prime is neither a party to nor a third-party beneficiary of the policies and therefore has no cause of action arising from them.  *See Ochs v. PacifiCare of California*, 115 Cal. App. 4th 782, 9 Cal. Rptr. 3d 734 (2004) (noncontracting provider only incidental beneficiary of contract between enrollee and health plan and cannot seek payment from health plan under contract); *see also California Emergency Physicians Med. Grp. v. Pacifcare*, 111 Cal. App. 4th 1127, 1134, 4 Cal. Rptr. 3d 583, 594-95 (2003) (non-contracting provider not third-party beneficiary of policies between health plan and enrollees**)**.  In addition, the implied covenants on which Prime relies only inure to the benefit of parties to the contract and not third parties.  *Coleman v. Gulf Ins. Group*, 41 Cal. 3d 782, 795, 226 Cal. Rptr. 90, 96 (1986) ("[A]n alleged breach of the covenant [of good faith and fair dealing] does not give rise to a cause of action by *third party claimants*") (emphasis in original).

- 19 -

Only Kaiser members, and not Prime, have rights to enforce any implied covenants in the policies.

Even assuming its validity, the assignment pleaded in the bad-faith cause of action does not change this result.  Prime does not allege, and cannot allege, that it was assigned the right to pursue a bad-faith claim, but merely asserts that the policyholders assigned their rights "to any reimbursement and/or payment from defendants for Emergency Medical Services" (Cmpt. ¶ 40), and then relies on the assignment of "the benefits under the Policies" to support its bad-faith claim.  *Id.*, ¶ 46.  The partial assignment of rights to reimbursement under the policies is not a wholesale assignment of other rights arising from the policies, including a right to pursue a bad-faith cause of action.  *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.,* 102 Cal. App. 4th 765, 774, 125 Cal. Rptr. 2d 804, 810-11 (2002) (partial assignment of statutory rights cannot be construed to include assignment of contract claims).  In addition, the elements of, and potential damages for, these two causes of action – bad-faith and breach of contract for failure to reimburse benefits – are completely different from one another,[14] and an assignment of one could not thereby imply an assignment of the other.

### D.    Prime's Sixth Cause Of Action For Intentional Interference With Contract Fails To State A Claim

The tort of intentional interference with contract requires the plaintiff to allege facts demonstrating the existence of:  (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the relationship; and (5) resulting damage.  *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55, 77 Cal. Rptr. 2d 709, 726 (1998).

Prime's sixth cause of action for intentional interference with contract alleges in conclusory fashion that Prime was a party to "express and implied contracts" with Kaiser members who received emergency medical services.  Cmpt. ¶ 57.  The court need not accept as

---

[14] *Wilson v. 21st Century Ins. Co*., 42 Cal. 4th 713, 723, 68 Cal. Rptr. 3d 746, 754  (2007) (bad-faith requires unreasonable denial and creates potential tort liability).

true these conclusory allegations. *Sprewell*, 266 F.3d at 988. In the absence of any non-conclusory facts establishing the existence or validity of these contracts, the cause of action fails to state a claim.

To the extent the "express and implied contracts" in the sixth cause of action refers to the alleged written assignment of benefits from Kaiser members under the policies in Prime's third cause of action, the claim also fails to state a claim. Even assuming the validity of the assignment, Prime as assignee merely stands in the shoes of Kaiser members and becomes the "owner" of any assigned claims under the policies. *Johnson v. County of Fresno*, 111 Cal. App. 4th 1087, 1096, 4 Cal. Rptr. 3d 475, 482 (2003) (assignee stands in shoes of assignor). Kaiser members, however, have no claim against Kaiser for interfering with the policies and neither would Prime if standing in their shoes. *Shoemaker v. Myers*, 52 Cal. 3d 1, 24, 276 Cal. Rptr. 303, 317 (1990) ("there can be no action for inducement of breach of contract against the other party to the contract"). Indeed, no matter who brings the claim, Kaiser cannot be liable for interfering with its own policies. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514, 28 Cal. Rptr. 2d 475, 480 (1994) ("The tort duty not to interfere with the contract falls only on strangers" with no legitimate interest in "the contract's performance."). In addition, allowing both a tort and a breach of contract claim against Kaiser based on the alleged assignment is impermissible and would violate public policy. *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990, 999, 135 Cal. Rptr. 720, 726 (1977) (allowing interference with contract claim by party to contract is superfluous and not permitted).

**CONCLUSION**

For the forgoing reasons, Kaiser therefore respectfully requests the following: (1) dismissal of the complaint as to any and all claims relating to Medicare members; (2) dismissal of the complaint as to any and all claims relating to ERISA members; and (3) dismissal of Prime's second, third, fourth and sixth causes of action for failure to state a claim and lack of standing. All dismissals should be without leave to amend.

- 21 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  April 25, 2008

Respectfully submitted,
EPSTEIN BECKER & GREEN, P.C.


By:  s/ William A. Helvestine
     William A. Helvestine
     Andrew J. Hefty
     Jamie S. Platto
     Carri Becker Maas
Attorneys for Defendants
KAISER FOUNDATION HEALTH PLAN, INC.,
KAISER FOUNDATION HOSPITALS, and
SOUTHERN CALIFORNIA PERMANENTE
MEDICAL GROUP

- 22 -