# Exhibit A-1



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

RECEIVED

APR 08 2008    Medicare Hearings and Appeals
                Western Field Office
                27 Technology Drive, Suite 100
                Irvine, CA 92618

RECEIVED    *Legal*

                Telephone:    949-788-8000
                      FAX:    949-788-2778

APR 03 2008

PASADENA
MEMBER SERVICES

MAR 31 2008

### NOTICE OF UNFAVORABLE DECISION

This Notice is to inform you that we have made a decision in Administrative Law Judge (ALJ) Appeal Number ▇▇▇▇▇▇ that is unfavorable to the appellant.

Please read the remainder of this Notice and the Decision carefully.

**The Next Level of Appeal**

If you do not agree with the ALJ's decision, you or other parties to this appeal may appeal by filing a "request for review" with the Medicare Appeals Council. The Centers for Medicare and Medicaid Services (CMS) may also ask the Medicare Appeals Council to review the ALJ's decision.

You will have no right to ask a federal court to review the ALJ's decision, unless:

- The Medicare Appeals Council reviews the ALJ's decision on the appeal of a party or on its own motion; or
- The Medicare Appeals Council denies the appeal of a party and a party asks for federal court review.
- A party uses the expedited appeals process under 20 C.F.R. §§ 404.923-404.928.

You may appoint an attorney or other person to represent you. Legal aid groups may provide legal services at no charge.

**What to Include in your Appeal**

You should use the enclosed form to appeal. You may also appeal in writing if you provide:

1) the beneficiary's name;
2) the beneficiary's Medicare health insurance claim number;

Page 1 of 3

5

3) the item(s) or service(s) in dispute for which review is requested;
4) the date(s) of the item(s) or service(s);
5) the date of the ALJ's decision;
6) the ALJ Appeal Number; and
7) your name and signature, or the name and signature of your representative.

You also should submit any documents or other evidence that you wish to have considered by the Medicare Appeals Council with your request for review.

***Please send a copy of the ALJ's decision with your appeal.***

**How to File an Appeal**

You must file a request for review ***within 60 days*** after you receive this notice. The Medicare Appeals Council will assume that you received this notice five days after the date stated on the top of this notice, unless you show that you received it later. If you file the request for review late, you must show that you had good cause for submitting this request late (*e.g.*, serious illness).

Mail the appeal to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201.

Or you may fax the appeal to (202) 565-0227. If you send a fax, please do not also mail a copy. You may also file the appeal with any Social Security Office, **the Veterans Administration Regional Office in the Philippines, or an office of the Railroad Retirement Board if you have 10 or more years of service in the railroad industry.** However, it may take longer to work on your case if you file anyplace except the Medicare Appeals Council.

The regulations at 20 C.F.R. Part 404, Subpart J, apply to this case. Any relevant Medicare agency rulings also apply. If you have questions about the Medicare Appeals Council, you may call (202) 565-0100. You may also look at the Council's web site at http://www.hhs.gov/dab.

**Medicare Appeals Council Action**

The Medicare Appeals Council may deny, dismiss, or grant your appeal. The Council will review the ALJ's decision only if it finds present one of the reasons for review listed in the regulations at 20 C.F.R. § 404.970.

If the Medicare Appeals Council decides to review your case, ***it may change parts of the ALJ's decision that you agree with.*** The Council may adopt, change, or reverse the ALJ's decision, in

whole or in part, or it may send the case back to an ALJ for further action. The Medicare Appeals Council may also dismiss the appeal to the ALJ.

**Limits on Disclosure**

The Department of Health and Human Services limits disclosure of any identifying information (including beneficiary(ies) name(s), address(es), and Health Insurance Claim Number(s) (HICN)) or other personal identifiers relating to the named beneficiary(ies) in this correspondence to the appellant or the named beneficiary(ies), unless the disclosure to others is permitted by Federal law. Disclosure of such identifying information, without the express written consent of the named beneficiary(ies) or otherwise authorized by Federal law, may violate section 1106(a) of the Social Security Act, which is punishable by a fine not exceeding $10,000 fine and/or imprisonment not exceeding five years, or the Privacy Act, 5 U.S.C. § 552a, which is punishable by a fine not exceeding $5000.

**If You Have Any Questions**

If you have any questions regarding this notice, please call or write this Office. Our telephone number and address are noted above.

Sincerely yours,

Teresa L. Bole
Administrative Law Judge

Enclosure:  Form DAB-101
            Exhibit List


CC:   Girard Thomas
      Member Relations
      Kaiser Foundation Health Plan
      393 East Walnut Street, 2nd Floor
      Pasadena, CA  91188

      Maximus Federal Services
      50 Square Drive, Suite 210
      Victor, NY  14564



**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Western Region**
**Irvine, California**

| | |
|---|---|
| Appeal of: ▮▮▮▮▮ | ALJ Appeal No.: ▮▮▮▮▮ |
| HICN: ▮▮▮▮▮ | **Medicare Part C** |
| MAO:   **Kaiser Foundation Health Plan** | Before:   **Teresa L. Bole**<br>Administrative Law Judge |

## DECISION

After careful consideration of the evidence and arguments presented in the record, an **UNFAVORABLE** decision is entered for ▮▮▮▮▮ (hereinafter "the appellant").

### Procedural History

The appellant called for an ambulance and was subsequently transported to the Emergency Department at Chino Valley Medical Center (hereinafter "CVMC") on ▮▮▮▮▮, 2007. The appellant is enrolled in the Kaiser Permanente Senior Advantage Medicare Medi-Cal Plan and CVMC is a non-plan provider. The appellant was admitted into CVMC and received unauthorized post-stabilization inpatient hospital services from ▮▮▮▮▮, 2007, to ▮▮▮▮▮, 2007. CVMC (hereinafter "the provider") submitted a claim to Kaiser for the emergency and inpatient services rendered to the appellant. Kaiser covered the emergency services, but denied coverage for the inpatient services.

Kaiser issued a Notice of Denial of Payment on April 16, 2007. (Ex. 4.) The notice stated that Kaiser would not cover the inpatient services rendered from ▮▮▮▮▮, 2007, because the patient was stable for transfer from the emergency department. The total amount billed for the inpatient services was $9,855.93. The appellant filed an appeal with Kaiser on May 23, 2007. (Ex. 5.)

Kaiser forwarded the appeal to Maximus Federal Services for an independent review. (Ex. 6.) On September 19, 2007, Maximus issued an unfavorable reconsideration decision, finding that Kaiser did not have to pay for the inpatient hospital services provided by the non-



plan hospital from ████████ through ██, 2007. The appellant was stable for transfer prior to her acute admission into CVMC. Consequently, Kaiser should have been notified of the appellant's condition and given the opportunity to transfer her to a plan facility for treatment. (Ex. 10.)

The appellant timely filed a request for hearing before an Administrative Law Judge (hereinafter "ALJ") on September 28, 2007. (Ex. 12.) A hearing was held in Irvine, California on November 19, 2007. The appellant appeared in person and was represented by ████████ ████████. A Spanish interpreter, ████████, was provided at the hearing to interpret for ████████. The appellant's representative, ████████ did not require an interpreter. The MAO was represented by Girard Thomas, who appeared and testified by telephone. Exhibits 1 through 16 were admitted into evidence without objection.

The amount in controversy meets the jurisdictional requirements for a hearing before OMHA.

### Issue

The issue to be decided is whether the Medicare Advantage Organization is required, under the provisions of Title XVIII of the Social Security Act and implementing regulations or under the terms of the Medicare Advantage Organization's health plan, to cover the inpatient hospital care provided to the appellant by Chino Valley Medical Center, a non-plan hospital, on ████████ and ██, 2007.

### Findings of Fact

At all relevant times herein, the appellant was a member of the Kaiser Permanente Senior Advantage Medicare Medi-Cal Plan. On ████████, 2007, the appellant was at home when she experienced shortness of breath, numbness on the left side, and substernal chest pain radiating to her left arm. An ambulance was called and the appellant was transported to the closest emergency room, which was at Chino Valley Medical Center (CVMC). (Ex. 3, pg. 1.)

The appellant was seen in the emergency room at 8:50 a.m. on ████████, 2007. The appellant's blood pressure was 143/90. Her oxygen saturation was 100% on room air and respirations were 16. She was given aspirin, nitroglycerin sublingual, Tylenol, and nitroglycerin paste. She was worked up with a full cardiac panel. Her rhythm strip showed normal sinus rhythm with some occasional PVCs at a rate of 80. A 12-lead EKG showed a sinus rhythm with occasional ventricular complexes and possibly some PACs at a rate of 78. There were no signs of any acute ischemia. Her troponin was negative. Her cholesterol was 118 and the rest of her biliary profile was normal. Her electrolytes were normal except for glucose of 160, BUN 19, and creatinine 0.8. (Ex. 3, pgs. 5-8.) A chest x-ray was normal. (Ex. 3, pg. 85.) Cardiac enzymes were negative. (Ex. 3, pgs. 73 and 89–93.)

The attending physician decided to admit the appellant to the direct observation unit (hereinafter "DOU") for overnight observation. Even though there was no evidence of cardiac

etiology, the doctor based this decision on the assessment of chest pain, dehydration, out of control diabetes, and out of control hypertension. The physician stated "If the patient is ruled out for myocardial infarction and feels better, she will be discharged in the morning. However, if she needs to stay further, she will be transferred to Kaiser in the morning." (Ex. 3, pgs. 89-90.) The physician's order sheet indicates the decision to admit was made at 10:35 a.m. on █████, 2007. (Ex. 3, pg. 31.) The Emergency Department Physician Record indicates the appellant was accepted for admission to the DOU at 10:00 a.m. on █████, 2007. (Ex. 3, pg. 5.) The CVMC admission registration record indicates the appellant was admitted at 10:12 a.m. on █████, 2007. (Ex. 3, pg. 45.)

Kaiser paid for the emergency services that the appellant received at CVMC; however, Kaiser did not pay for the post-stabilization care since the hospital failed to notify Kaiser and request authorization for further treatment. (Ex. 6, pgs. 4–12.) The appellant was admitted into CVMC at 10:12 on █████, 2007. CVMC notified Kaiser via fax at 8:20 a.m. on █████, 2007 that the patient was stable and would be discharged home. (Ex. 3, pg. 79.) The patient was discharged to her home at 9:42 a.m. on █████, 2007. (Ex. 3, pg. 32.) Since CVMC failed to make the required contact with Kaiser to request authorization for post-stabilization care and services, Kaiser argues that it has no financial responsibility for the unauthorized services CVMC chose to provide. Kaiser contends that under California hospital licensing law and federal regulations, the provider is not permitted to pursue the patient for post-stabilization care not paid by Kaiser due to the provider's failure to notify. Therefore, neither Kaiser nor the appellant is financially responsible to CVMC for the unauthorized post-stabilization care it provided to the appellant. (Ex. 6, pg. 7.)

At the hearing █████ testified that on █████, 2007, the appellant was feeling ill and experienced numbness on her left side. █████ checked █████ blood pressure and it was 165, which was high. She called for an ambulance. When the ambulance arrived the paramedics were informed that the appellant was a member of Kaiser. The appellant requested that she be taken to a Kaiser hospital, but the paramedics indicated they were required to take the patient to the nearest hospital. Upon arrival at the hospital █████ talked with the Emergency Room doctor treating █████ requested that █████ be transferred to a Kaiser facility, since she was a Kaiser patient. The doctor responded that the patient had to remain at their facility and could not be transferred. (See also Ex. 5.)

Mr. Thomas testified the issue in this case has been a recurring problem with the provider in question. The provider, CVMC, rendered emergency medical treatment to the patient. After the patient's condition was stabilized, CVMC elected to admit the MAO member without authorization instead of notifying the MAO of the situation. Under Medicare regulations and state regulations, the provider is required to notify the health plan when the provider is treating a clinically stabile patient who is a member of the health plan. The MAO paid for the emergency services but denied payment for the hospital admission and post stabilization care because the appellant was clinically stable. The provider failed to notify the MAO about the admission until the appellant was about to be discharged to home.

The plan's Emergency Prospective Review Program (EPRP) is a clinical department in Kaiser that tracks patients in non-plan hospitals nationwide. EPRP is Kaiser's pre-admission

authorization mechanism for post-stabilization care at non-plan facilities and is staffed 24 hours a day, seven days a week. CVMC, like all non-plan providers in California, has been provided with detailed information on how to contact EPRP to obtain authorization for admission. (*See* Ex. 6, pg. 7.) There was no notification to EPRP in this case. (*See* Ex. 3, pg. 79.) With regard to this appeal, it is Kaiser's opinion that the provider is in violation of State regulations and elected not to notify Kaiser. Consequently, Kaiser believes that neither Kaiser nor the appellant is liable to CVMC for the post-stabilization care at issue.

## Legal Framework

### I.      ALJ Review Authority

#### A. Jurisdiction

An individual who, or an organization that, is dissatisfied with the reconsideration of an initial determination is entitled to a hearing before the Secretary of the Department of Health and Human Services (hereinafter "HHS"), provided there is a sufficient amount in controversy and a request for hearing is filed in a timely manner. (Section 1869(b)(1)(A) of the Social Security Act (hereinafter "the Act")).

In implementing this statutory directive, the Secretary has delegated his authority to administer the nationwide hearings and appeals system for the Medicare program to OMHA. The ALJs within OMHA issue the final decisions of the Secretary, except for decisions reviewed by the Medicare Appeals Council. (*See,* 70 Fed. Reg. 36386, 36387 (June 23, 2005)). A hearing before an ALJ is available only if the remaining amount in controversy meets the jurisdictional amount. A request for hearing is timely if filed within sixty days after receipt of the reconsideration decision.

#### B. Scope of Review

All initial determinations by CMS contracted Carriers are governed by the ALJ hearing procedures set forth at 20 C.F.R. §§ 404.929 through 404.961 prior to October 1, 2005 and 42 C.F.R. § 405.1000 as of October 1, 2005. (*See,* 70 Fed. Reg. 11420, 11424-26 (Mar. 8, 2005)).

#### C. Standard of Review

OMHA is staffed with ALJs who conduct *de novo* hearings. (*See,* 70 Fed. Reg. 36386 (June 23, 2005)). An ALJ qualified and appointed pursuant to the Administrative Procedure Act acts as an independent finder of fact in conducting a hearing pursuant to section 1869 of the Act. This requires *de novo* consideration of the facts and law.

### II.      Principles of Law

#### A. Statutes and Regulations

Section 1831 of the Social Security Act established a supplementary medical insurance program for the aged and disabled. Coverage of medical and other health services is qualified by

the overarching principles of sections 1862(a) and 1833(e) of the Act. Section 1862(a)(1)(A) limits Medicare payments to items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," notwithstanding any other provision of Title XVIII of the Act. (*See also* 42 C.F.R. § 411.15(k)(1)). Section 1833(e) of the Act requires a claim for payment under Medicare Part B to be supported by sufficient information and documentation. (*See also* 42 C.F.R. § 424.5(a)(6)).

Medicare Advantage Organization programs (also known at Medicare + Choice plans) provide their members with those items and services for which benefits are available under Medicare Parts A and B. (See Section 1852 of the Act and 42 C.F.R. § 422.101).

Section 1852 (A)(1) of the Social Security Act states that each Medicare+Choice (M+C) plan shall provide to members enrolled under this part, through providers and other persons that meet the applicable requirements of this title and part A of Title XI:

(A) Those items and services (other than hospice care) for which benefits are available under parts A and B to individuals residing in the area served by the plan, and
(B) Additional benefits required under section 1854(f) (1) (A).

Pursuant to Section 1852(c) of the Act, the following disclosure requirements include:

(1) Detailed Description of Plan Benefits - A Medicare+Choice organization shall disclose, in clear, accurate, and standardized form to each enrollee with a Medicare+Choice plan offered by the organization under this part at the time of enrollment and at least annually thereafter, the following information regarding such plan:

(A) Service Area —the plan's service area.
(B) Benefits —Benefits offered under the plan, including information described in section 1851(d)(3)(A) and exclusions from coverage and, if it is an MSA plan, a comparison of benefits under such a plan with benefits under other Medicare+Choice plans.
(C) Access —the number, mix, and distribution of plan providers, out-of-network coverage (if any) provided by the plan, and any point-of-service option (including the supplemental premium for such option).
(D) Out of Area Coverage —Out-of-area coverage provided by the plan.
(E) Emergency Coverage —Coverage of emergency services, including—

(i) the appropriate use of emergency services, including use of the 911 telephone system or its local equivalent in emergency situations and an explanation of what constitutes an emergency situation;
(ii) The process and procedures of the plan for obtaining emergency services; and
(iii) The locations of (I) emergency departments, and (II) other settings, in which plan physicians and hospitals provide emergency services and post-stabilization care.

(F) Supplemental Benefits —Supplemental benefits available from the organization offering the plan, including—

(i) Whether the supplemental benefits are optional,

(ii) The supplemental benefits covered, and

(iii) The Medicare+Choice monthly supplemental beneficiary premium for the supplemental benefits.

(G) **Prior Authorization Rules** —Rules regarding prior authorization or other review requirements that could result in nonpayment. (Emphasis added.)

(H) Plan Grievance and Appeals Procedures — All plan appeal or grievance rights and procedures.

(I) Quality Assurance Program —a description of the organization's quality assurance program under subsection (e).

Special rules for ambulance services, emergency and urgently needed services, and maintenance and post-stabilization care services are set forth in 42 C.F.R. § 422.113. Subsection (c) specifically deals with maintenance and post-stabilization care.

(a) Ambulance services. The MA organization is financially responsible for ambulance services, including ambulance services dispatched through 911 or its local equivalent, where other means of transportation would endanger the beneficiary's health.

(b) Emergency and urgently needed services—

    (1) Definitions.

...

    (2) **MA organization financial responsibility. The MA organization is financially responsible for emergency and urgently needed services—** (Emphasis added.)

...

    (3) **Stabilized condition. The physician treating the enrollee must decide when the enrollee may be considered stabilized for transfer or discharge, and that decision is binding on the MA organization.** (Emphasis added.)

(c) Maintenance care and post-stabilization care services (hereafter together referred to as ``post-stabilization care services'').

    (1) Definition. Post-stabilization care services means covered services, related to an emergency medical condition, that are provided after an enrollee is stabilized in order to maintain the stabilized condition, or, under the circumstances described in paragraph (c)(2)(iii) of this section, to improve or resolve the enrollee's condition.

    (2) MA organization financial responsibility. The MA organization—

        (i) Is financially responsible (consistent with Sec. 422.214) for post-stabilization care services obtained within or outside the MA organization that are pre-approved by a plan provider or other MA organization representative;

        (ii) Is financially responsible for post-stabilization care services obtained within or outside the MA organization that are not pre-approved by a plan provider or other MA organization

representative, but administered to maintain the enrollee's stabilized condition within 1 hour of a request to the MA organization for pre-approval of further post-stabilization care services;

(iii) Is financially responsible for post-stabilization care services obtained within or outside the MA organization that are not pre-approved by a plan provider or other MA organization representative, but administered to maintain, improve, or resolve the enrollee's stabilized condition if—

    (A) The MA organization does not respond to a request for pre-approval within 1 hour;

    (B) The MA organization cannot be contacted; or

    (C) The MA organization representative and the treating physician cannot reach an agreement concerning the enrollee's care and a plan physician is not available for consultation. In this situation, the MA organization must give the treating physician the opportunity to consult with a plan physician and the treating physician may continue with care of the patient until a plan physician is reached or one of the criteria in Sec. 422.113(c)(3) is met; and

(iv) Must limit charges to enrollees for post-stabilization care services to an amount no greater than what the organization would charge the enrollee if he or she had obtained the services through the MA organization. For purposes of cost sharing, post-stabilization care services begin upon inpatient admission.

(3) End of MA organization's financial responsibility. The MA organization's financial responsibility for post-stabilization care services it has not pre-approved ends when—

    (i) A plan physician with privileges at the treating hospital assumes responsibility for the enrollee's care;

    (ii) A plan physician assumes responsibility for the enrollee's care through transfer;

    (iii) An MA organization representative and the treating physician reach an agreement concerning the enrollee's care; or

    (iv) The enrollee is discharged.

## B. Policy and Guidance

The Kaiser Permanente Senior Advantage Medicare Medi-Cal Plan's Individual Plan Membership Agreement and Disclosure Form and Evidence of Coverage for Southern California Region, effective January 1, 2007, discusses the topics of emergency, post-stabilization, and urgent care on pages 17 through 18. (Ex. 1, pgs. 29-30.) The sections provide in part:

**Kaiser Permanente will help manage and follow up on your Emergency Care**

Post-stabilization Care is the Services you receive after your treating physician determines that your Emergency Medical Condition is Clinically Stable.

Your post-stabilization care will be covered according to Medicare guidelines. In general we will try to arrange for Plan Providers to take over your care as soon as your medical condition and the circumstances allow. We cover post-stabilization care if one of the following is true:
- We provide or authorize the care.
- The care was medically necessary to maintain stabilization, and it was administered within one hour following a request for authorization, and we have not yet responded.
- The non-plan provider and we do not agree about your care, and a plan physician is not available for consultation.
- In the rare circumstance that we are unavailable or cannot be contacted.

Covered post-stabilization care is effective until one of the following events occurs:
- You are discharged from the non-plan hospital.
- We assume responsibility for your care.
- The non-plan provider and we agree to other arrangements.

To request authorization to receive post-stabilization care from a non-plan provider, the non-plan provider must call us at 1-800-225-8883 or the notification telephone number on your ID care before you receive the care.

## Analysis

The instant appeal is from a party dissatisfied with the reconsideration decision to affirm the MAO's denial of payment. The request for hearing was timely filed and there is a sufficient amount in controversy. The appeal is therefore properly before the undersigned ALJ in the OMHA Western Field Office. The primary issue for this adjudication is whether the MAO is required to cover the inpatient care provided to the appellant by CVMC from ███████ to █ 2007. To determine what is covered under the Kaiser Permanente Senior Advantage Medicare Plan we must look to the services covered under Medicare Parts A and B, and the Evidence of Coverage (hereinafter "EOC") for 2007. (See Section 1852 of the Act and 42 C.F.R. § 422.101.)

Under 42 C.F.R. § 422.113(c), a Medicare health plan is financially responsible for post-stabilization care services that are pre-approved by a plan provider or MAO representative. There are certain conditions when the Medicare health plan would be responsible for post-stabilization care services without pre-approval, but those situations did not occur in this case. (See 42 C.F.R. § 422.113(c)(2)). In this case, the appellant was provided emergency services and Kaiser did not contest payment for those charges. Kaiser contends that the provider did not seek authorization to treat the appellant after her condition was stabilized. The attending

physician decided to admit the appellant to the direct observation unit for overnight observation (Ex. 3, pg. 89.), despite the fact that there was no evidence of cardiac etiology and despite the appellant's request to transfer to a Kaiser facility. Even though the appellant was admitted to the DOU shortly after 10:00 a.m. on ███████, 2007, the provider did not notify Kaiser until 8:20 a.m. on ███████, 2007. (Ex. 3, pg. 79.) The appellant was then discharged from CVMC at 9:42 a.m. (Ex. 3, pg. 32.) The provider failed to fulfill its obligation to contact the MAO to request authorization for post-stabilization treatment. Therefore, the MAO is not obligated to cover the inpatient services provided to the appellant by CVMC.

The inpatient services provided to the appellant on █████ and ██ 2007, also are not covered under the terms of the EOC. The EOC states that post-stabilization care will be covered according to Medicare guidelines. Kaiser will cover post-stabilization care if one of the following is true: 1) Kaiser provides or authorizes the care, 2) the care was medically necessary to maintain stabilization, it was administered within one hour following a request for authorization, and Kaiser has not responded, 3) the non-plan provider and Kaiser do not agree about your care, and a plan physician is not available for consultation, and 4) Kaiser is unavailable or cannot be contacted. None of the enumerated circumstances occurred. The provider failed to notify the MAO once the patient was stabilized and did not seek prior authorization for post-stabilization care. (Ex. 3, pgs. 32, 79, and 89.) Therefore, under the terms of the EOC, Kaiser is not required to cover the inpatient service provided to the appellant on █████ and ██ 2007.

The appellant also is not liable for the inpatient services provided to the appellant on █████ and ██ 2007. Under California hospital licensing law and federal regulations, the provider is not permitted to pursue the patient for post-stabilization care not paid by the MAO due to the provider's failure to notify the MAO. Therefore, neither the MAO nor the appellant is financially responsible to CVMC for the unauthorized post-stabilization care it provided to the appellant.

## Conclusions of Law

The Medicare Advantage Organization is not required to cover the inpatient hospital care provided to the appellant by Chino Valley Medical Center, a non-plan hospital, on █████ and ██ 2007, because Chino Valley Medical Center failed to request authorization for the post-stabilization care from the Medicare Advantage Organization.

### Order

The Medicare contractor is **DIRECTED** to process the claim in accordance with this decision. The reconsideration decision is affirmed.

**SO ORDERED.**

Dated:  MAR 3 1 2008
_____

_Teresa L. Bole_
Teresa L. Bole
Administrative Law Judge

17

# Exhibit A-2

March 19, 2008

**The Appeal Number is:**

MAXIMUS
Federal Services

Monica Vazquez
Chino Valley Medical Center
5451 Walnut Ave.
Chino, CA 91710

RECEIVED

APR 08 2008

*Legal*

RECEIVED

MAR 28 2008

PASADENA
MEMBER SERVICES

RE:  Enrollee:
Medicare Number:

Dear Ms. Vazquez:

This letter is about **our decision in your appeal to Kaiser Foundation
Health Plan, Inc. (Kaiser). You asked Kaiser to pay for inpatient
hospital services provided to** _____ She was admitted to
**Chino Valley Medical Center on** _____

### Our decision

**We agree with Kaiser.** We decided that Kaiser does not have to pay for
these services. To learn more about how we made our decision, read the
following pages of this letter.

### If you do not agree with us

**You may have rights to a Hearing with an Administrative Law Judge
(ALJ).** This is called an ALJ Hearing. A *Hearing* is a meeting with you and
the ALJ so that you can talk about your appeal.

You can ask for an ALJ Hearing if the amount of money in your appeal
meets the Hearing limit. To find out what the Hearing limit is, please call
1-800-MEDICARE (1-800-633-4227).

To ask for an ALJ Hearing, fill out the "ALJ Hearing Request" form in this
letter and send it to us. You must send the ALJ Hearing request to us within
60 days of the date of this letter.

Please read the brochure called, "Medicare Appeals and Your Rights" to
learn more about Medicare appeals and your appeal rights.

### Do you need help?

Call 1-800-MEDICARE (1-800-633-4227) for help or more information
about what you can do in this case. TTY users should call 1-877-486-2048.

cc: H0524: Kaiser Foundation Health Plan, Inc., c/o Cyndi Fields
    San Francisco CMS Regional Office

---

Medicare
Managed Care & PACE
Reconsideration Project

**Reviewing
Medicare Appeals**

50 Square Drive
Suite 210
Victor, New York  14564
Tel: 585-425-5210
Fax: 585-425-5292
www.medicareappeal.com

**Who We Are**

*We are MAXIMUS
Federal Services. We are
experts on appeals.
Medicare hired us to
review your file and decide
if your health plan made
the correct decision. We
work for Medicare. We do
not work for your health
plan.*

*Janice Eidem
Project Director
Medicare Managed Care &
PACE Reconsideration
Project*

v1.0

19

**How we made our decision**

1. We read all the papers in the file.
2. We checked Medicare rules.
3. We checked ███████ contract with Kaiser.
4. We sent the file to a MAXIMUS Federal Services Doctor Consultant.

To make our decision we read all the papers in the file very carefully. We used the Medicare rules. We looked to see if Kaiser correctly followed Medicare rules and regulations.

Medicare rules say that the health plan must give members a subscriber agreement. It is ███████ ███████ contract with the health plan. It is usually called the "Evidence of Coverage" or "Member Agreement." We read this contract carefully to see what Kaiser is supposed to cover.

We sent the case to a MAXIMUS Federal Services Doctor Consultant. This doctor works for us, *not the health plan*. We asked this doctor to review all of the medical records in the file.

**Medicare rules**

The rules say that health plans must pay for a medical service or item if regular Medicare would pay for it. You can find this rule at 42 CFR §422.101.

The rules say that a health plan is financially responsible for post-stabilization care services that **are not** pre-approved by a plan provider or other plan representative, but administered to maintain, improve, or resolve the enrollee's stabilized condition if the plan does not respond to a request for pre-approval within 1 hour; if the plan cannot be contacted; or if the plan representative and the treating physician cannot reach an agreement concerning the enrollee's care and a plan physician is not available for consultation. You can find these rules at 42 CFR §422.113(c)(2).

If you want to read these Medicare rules, you can go to this web site: www.medicareappeal.com.

**The health plan contract**

The health plan contract says that Kaiser pays for services that would be covered by original Medicare.

**Doctor review**

Our MAXIMUS Federal Services Doctor Consultant carefully reviewed the file. This doctor says that ███████ was stable for transfer to a plan hospital prior to her admission to the floor. She improved with treatment in the emergency room. Transfer might have been undertaken without substantial risk to her well-being.

**Our decision**

Our decision is that Kaiser does not have to pay for inpatient hospital services provided to ████████████ at Chino Valley Medical Center on ████/07.

The record shows that ████████ was taken to Chino Valley Medical Center due to a low blood sugar and altered mental status. She was treated in the emergency room. She was admitted on ████/07. Kaiser was not notified of the admission until ████/07 at 10:07 am. ██████████ was discharged at 10:38 am. Kaiser paid for the emergency room services, but refused to pay for the inpatient services. They say it was unauthorized post stabilization care. You appealed this denial.

Medicare rules say that plans must pay for post stabilization care if the plan does not respond to a request for pre-approval within 1 hour; if the plan cannot be contacted; or if the plan representative and the treating physician cannot reach an agreement concerning the enrollee's care and a plan physician is not available for consultation. In this case, the plan was not notified of the admission until the next morning, less than one hour before discharge. They did not have the opportunity to assume care through transfer. The Maximus consultant doctor determined that ████████ was stable before she was actually admitted to the hospital. She could have been transferred to a plan hospital. The emergency services ended and post stabilization services began upon her admission. Since the plan was not notified, and she was stable for transfer to a plan hospital, Kaiser does not have to pay for the inpatient hospital services of ████/07.

# Exhibit A-3



**MAXIMUS**
Federal Services

---

Medicare
Managed Care & PACE
Reconsideration Project

*Reviewing
Medicare Appeals*

50 Square Drive
Suite 210
Victor, New York  14564
Tel: 585-425-5210
Fax: 585-425-5292
www.medicareappeal.com

**Who We Are**

*We are MAXIMUS
Federal Services. We are
experts on appeals.
Medicare hired us to
review your file and decide
if your health plan made
the correct decision.* **We
work for Medicare.** *We do
not work for your health
plan.*

*Janice Eidem
Project Director
Medicare Managed Care &
PACE Reconsideration
Project*

---

February 29, 2008



**The Appeal Number is:**

RECEIVED

*Legal*

**RECEIVED**

MAR 10 2008

PASADENA
MEMBER SERVICES

Desert Valley Hospital
Attn: Steve Vasan
16850 Bear Valley Road
Victorville, CA  92392

RE: Enrollee:
    Medicare Number:

Dear Mr. Vasan:

This letter is about **our decision in your appeal to Kaiser Foundation
Health Plan for payment of a claim for hospital inpatient services
rendered to ████ from █/07 – █/07.**

### Our decision

**We agree with Kaiser.** We decided that Kaiser does not have to pay for the
hospital inpatient services. To learn more about how we made our decision,
read the following pages of this letter.

### If you do not agree with us

**You may have rights to a Hearing with an Administrative Law Judge
(ALJ).** This is called an ALJ Hearing. A *Hearing* is a meeting with you and
the ALJ so that you can talk about your appeal.

You can ask for an ALJ Hearing if the amount of money in your appeal
meets the Hearing limit. To find out what the Hearing limit is, please call 1-
800-MEDICARE (1-800-633-4227).

To ask for an ALJ Hearing, fill out the "ALJ Hearing Request" form in this
letter and send it to us. You must send the ALJ Hearing request to us within
60 days of the date of this letter.

Please read the brochure called, "Medicare Appeals and Your Rights" to
learn more about Medicare appeals and your appeal rights.

### Do you need help?

Call 1-800-MEDICARE (1-800-633-4227) for help or more information
about what you can do in this case. TTY users should call 1-877-486-2048.

cc: H0524: Kaiser Foundation Health Plan, c/o Stella Rosales
        San Francisco CMS Regional Office

v1 0



**How we made our decision**

1. We read all the papers in the file.
2. We checked Medicare rules.
3. We checked ████████████ contract with Kaiser.
4. We sent the file to a MAXIMUS Federal Services Doctor Consultant.

To make our decision we read all the papers in the file very carefully. We used the Medicare rules and looked to see if Kaiser correctly followed Medicare rules and regulations.

Medicare rules say that the health plan must give ████████████ a subscriber agreement. It is ████████████ contract with the health plan and is usually called the "Evidence of Coverage" or "Member Agreement." We read this contract carefully to see what Kaiser is supposed to cover.

We sent the case to a MAXIMUS Federal Services Doctor Consultant. This doctor works for us, *not the health plan*. We asked this doctor to review all of the medical records in the file.

## Medicare rules

The rules say that health plans must pay for a medical service or item if regular Medicare would pay for it. You can find this rule at 42 CFR §422.101.

The rules say that a Medicare health plan is financially responsible for emergency services whether they are obtained within or outside the health plan. Prior authorization is not required. Emergency services end and post-stabilization services begin after an enrollee is stabilized. You can find these rules at 42 CFR §422.113(b)(2) – (c)(1).

The rules say that when an emergent medical condition exists and services are obtained within or outside of the services area, the health plan is obligated to provide coverage under post stabilization rules until: a plan physician with privileges assumes care; a plan physician assumes care through transfer; the health plan representative and treating physician reach an agreement concerning the enrollee's care; the enrollee is discharged. You can find this rule at 42 CFR §422.113.

If you want to read these Medicare rules, you can go to this web site: www.medicareappeal.com.

## The health plan contract

The health plan contract says Kaiser does not have to pay for any services that Medicare does not cover.

## Doctor review

Our MAXIMUS Federal Services Doctor Consultant carefully reviewed the file. This doctor says that ████████████ presented at the emergency department (ED) with chest discomfort and an altered level of consciousness. The medical reviewer says that ████████████ vital signs and respiratory status were stable in the ED. His cardiac lab results and EKG reports were within

normal limits. Regarding his altered level of consciousness, there was no evidence of seizures and the head CT was negative for bleeding, which would be contraindicated for a safe transfer to another hospital. ==The medical reviewer says that▓▓▓▓▓▓ was stable for transfer to a plan hospital on▓▓/07 prior to his admission to the hospital.==

## Our decision

Our decision is that Kaiser does not have to pay for the acute inpatient hospital services ▓▓ ▓▓▓▓ received from ▓▓/o7 – ▓▓/07.

The record shows that ▓▓▓▓▓▓ presented at the Desert Valley Hospital (DVH) ED on ▓▓/07 at 9:30AM. DVH is not a contracted plan provider. He was admitted to DVH for post-stabilization services on ▓▓/07 at 11:55AM. The plan has denied coverage for the hospital inpatient services rendered to ▓▓▓▓▓▓ because they were not medically necessary, nor approved by the health plan. You disagree with this decision. You are appealing coverage for the hospital inpatient services ▓▓▓▓▓ received from ▓▓/07 – ▓▓/07.

We find that Kaiser does not have to pay for the hospital inpatient services. The rules say that the plan is required to pay for emergency services obtained within or outside of the plan service area. The record shows that the plan did authorize and pay for the emergency services ▓▓▓▓▓▓ received at DVH on ▓▓/07. The rules say that the plan is not responsible for post-stabilization care if the plan was not notified of the admission by the non-contracted hospital. In this case, the record clearly shows that Kaiser was not notified about ▓▓▓▓▓ hospital admission until the morning of ▓▓/07. ==The medical reviewer says that ▓▓▓▓▓ was stable for transfer to a plan hospital prior to his admission on ▓▓/07. Therefore, we find that Kaiser is not required to pay for the hospital inpatient services ▓▓▓▓▓ received from ▓▓/07 – ▓▓/07.==

# Exhibit A-4

**MAXIMUS**
Federal Services | *logo*

Medicare
Managed Care & PACE
Reconsideration Project

*Reviewing*
*Medicare Appeals*

50 Square Drive
Suite 210
Victor, New York 14564
Tel: 585-425-5210
Fax: 585-425-5292
www.medicareappeal.com

**Who We Are**

*We are MAXIMUS*
*Federal Services. We are*
*experts on appeals.*
*Medicare hired us to*
*review your file and decide*
*if your health plan made*
*the correct decision.* **We**
**work for Medicare.** *We do*
*not work for your health*
*plan.*

*Janice Eidem*
*Project Director*
*Medicare Managed Care &*
*PACE Reconsideration*
*Project*

February 14, 2008

**The Appeal Number is:**
███████

Monica Vasquez
Chino Valley Medical Center
5451 Walnut Ave.
Chino, CA 91710

**RECEIVED**
APR 0 2 2008
*Legal*

**RECEIVED**

**MAR 0 3 2008**

PASADENA
MEMBER SERVICES

RE:  Enrollee: ██████████
     Medicare Number: ██████████

Dear Ms. Vasquez:

This letter is about **our decision in your appeal to Kaiser Foundation
Health Plan, Inc. (Kaiser). You asked Kaiser to pay for inpatient
hospital services provided to** ██████████ **at Chino Valley Medical
Center from** ██/07 **to** ██/07.

**Our decision**

**We agree with Kaiser.** We decided that Kaiser does not have to pay for
these services. To learn more about how we made our decision, read the
following pages of this letter.

**If you do not agree with us**

**You may have rights to a Hearing with an Administrative Law Judge
(ALJ).** This is called an ALJ Hearing. A *Hearing* is a meeting with you and
the ALJ so that you can talk about your appeal.

You can ask for an ALJ Hearing if the amount of money in your appeal
meets the Hearing limit. To find out what the Hearing limit is, please call
1-800-MEDICARE (1-800-633-4227).

To ask for an ALJ Hearing, fill out the "ALJ Hearing Request" form in this
letter and send it to us. You must send the ALJ Hearing request to us within
60 days of the date of this letter.

Please read the brochure called, "Medicare Appeals and Your Rights" to
learn more about Medicare appeals and your appeal rights.

**Do you need help?**

Call 1-800-MEDICARE (1-800-633-4227) for help or more information
about what you can do in this case. TTY users should call 1-877-486-2048.

cc: H0524: Kaiser Foundation Health Plan, Inc., c/o Nicole Evans
    San Francisco CMS Regional Office

**RECEIVED**

FEB 2 5 2008

**MCRC-PLS**

v1 0

27

## How we made our decision

1. We read all the papers in the file.
2. We checked Medicare rules.
3. We checked the contract with Kaiser.
4. We sent the file to a MAXIMUS Federal Services Doctor Consultant.

To make our decision we read all the papers in the file very carefully. We used the Medicare rules. We looked to see if Kaiser correctly followed Medicare rules and regulations.

Medicare rules say that the health plan must give members a subscriber agreement. It is the member's contract with the health plan. It is usually called the "Evidence of Coverage" or "Member Agreement." We read this contract carefully to see what Kaiser is supposed to cover.

We sent the case to a MAXIMUS Federal Services Doctor Consultant. This doctor works for us, *not the health plan*. We asked this doctor to review all of the medical records in the file.

## Medicare rules

The rules say that health plans must pay for a medical service or item if regular Medicare would pay for it. You can find this rule at 42 CFR §422.101.

The rules say that when an emergent medical condition exists and services are obtained within or outside of the services area, the health plan is responsible for covering those services. When the member becomes stable the health plan is obligated to provide coverage under post stabilization rules until: a plan physician with privileges assumes care; a plan physician assumes care through transfer; the health plan representative and treating physician reach an agreement concerning the enrollee's care; the enrollee is discharged. You can find this rule at 42 CFR §422.113.

If you want to read these Medicare rules, you can go to this web site: www.medicareappeal.com.

## The health plan contract

The health plan contract says that Kaiser pays for services that would be covered by original Medicare.

## Doctor review

Our MAXIMUS Federal Services Doctor Consultant carefully reviewed the file. This doctor says that ███████ had a near syncopal episode and was taken to the emergency room. She was diagnosed with pneumonia and urinary tract infection. This doctor says the infection provided a reasonable explanation for her symptoms. This doctor says she was medically stable for transfer to a plan hospital prior to her admission to the floor.

RECEIVED

FEB 2 5 2008

MCRC-FLS

MAXIMUS Federal Services
Medicare Managed Care & PACE Reconsideration Project

v1 0

28

**Our decision**

Our decision is that Kaiser does not have to pay for ████████ inpatient hospital services from ██/07 to ██/07.

The record shows that ████████ was brought in to the emergency room at Chino Valley Medical Center. She was admitted to the hospital from ██/07 to ██/07. Kaiser was not notified of this admission until ██/07. Kaiser paid for the emergency room services. Kaiser denied payment for the inpatient hospital services. They say it was unauthorized post stabilization care. You appealed this denial.

Medicare rules say that when an emergent medical condition exists, the health plan is responsible for covering those services. When the member becomes stable the health plan is obligated to provide coverage until a plan physician assumes care, a plan physician assumes care through transfer, the plan representative and treating physician reach an agreement concerning the enrollee's care, or the enrollee is discharged. The Maximus consultant doctor determined that ████████ was stable for transfer to a plan hospital before she was admitted to the floor. Kaiser was not notified of the admission, so they did not have an opportunity to assume her care. ████████ inpatient hospital admission of ██/07 to ██/07 does not meet Medicare post stabilization coverage guidelines. Therefore, Kaiser does not have to pay for the inpatient hospital services.

**RECEIVED**

FEB 2 5 2008

**MCRC-PLS**

MAXIMUS Federal Services
Medicare Managed Care & PACE Reconsideration Project

v1 0

29

# Exhibit A-5

**MAXIMUS**
Federal Services

Medicare
Managed Care & PACE
Reconsideration Project

*Reviewing*
*Medicare Appeals*

50 Square Drive
Suite 210
Victor, New York 14564
Tel: 585-425-5210
Fax: 585-425-5292
www.medicareappeal.com

Received

JAN 11 2008

Pasadena Member Services

**Who We Are**

*We are MAXIMUS Federal Services. We are experts on appeals. Medicare hired us to review the file and decide if the health plan made the correct decision. **We work for Medicare.** We do not work for the health plan.*

*Janice Eidem*
*Project Director*
*Medicare Managed Care & PACE Reconsideration Project*

January 7, 2008

**The Appeal Number is:**
█████████

Denise Durity
Sherman Oaks Hospital
File # █
Pasadena, CA  91199

**RECEIVED**

APR 08 2008

*Legal*

RE:  Enrollee: ████████
      Medicare Number: █████████

Dear Ms. Durity:

This letter is about our decision in your appeal to Kaiser Foundation Health Plan, Inc. (Kaiser). You asked Kaiser to pay for ████████ inpatient hospital stay. She was an inpatient at Sherman Oaks Hospital from █/07 to █/07.

**Our decision**

**We agree with Kaiser.** We decided that Kaiser does not have to pay for the inpatient hospital stay. To learn more about how we made our decision, read the rest of this letter.

**If you do not agree with us**

**You may have rights to a Hearing with an Administrative Law Judge (ALJ).** This is called an ALJ Hearing. A *Hearing* is a meeting with you and the ALJ so that you can talk about the appeal.

You can ask for an ALJ Hearing if the amount of money in the appeal meets the Hearing limit. To find out what the Hearing limit is, please call 1-800-Medicare (1-800-633-4227).

To ask for an ALJ Hearing, fill out the "ALJ Hearing Request" form in this letter and send it to us. You must send the ALJ Hearing request to us within 60 days of the date of this letter.

Please read the brochure called, "Medicare Appeals and Your Rights" to learn more about Medicare appeals and your appeal rights.

**Do you need help?**

Call 1-800-MEDICARE (1-800-633-4227) for help or more information about what you can do in this case. TTY users should call 1-877-486-2048.

cc: H0524 : Kaiser Foundation Health Plan, Inc., c/o Trevor Weaver
      San Francisco CMS Regional Office

v4 0

31

**How we made our decision** .

1. We read all the papers in the file.
2. We checked Medicare rules.
3. We checked the contract with Kaiser.
4. We sent the file to a MAXIMUS Federal Services Doctor Consultant.

To make our decision we read all the papers in the file very carefully. We used the Medicare rules. We looked to see if Kaiser correctly followed Medicare rules and regulations.

Medicare rules say that the health plan must give you a subscriber agreement. It is the contract with the health plan. It is usually called the "Evidence of Coverage" or "Member Agreement." We read this contract carefully to see what Kaiser is supposed to cover.

We sent the case to a MAXIMUS Federal Services Doctor Consultant. This doctor works for us, *not the health plan*. We asked this doctor to review all of the medical records in the file.

**Medicare rules**

The rules say that health plans must pay for a medical service or item if regular Medicare would pay for it for you. You can find this rule at 42 CFR §422.101.

The rules define "post-stabilization care services" as covered services, related to an emergency medical condition, that are provided after an enrollee is stabilized in order to maintain the stabilized condition, or to improve or resolve the enrollee's condition. You can find this rule at 42 CFR §422.113(c)(1).

The rules say that a Medicare Health Plan is financially responsible for post-stabilization care services obtained within or outside the plan that **are not** pre-approved by a plan provider or other plan representative if --

(A) The plan does not respond to a request for pre-approval within 1 hour;

(B) The plan cannot be contacted; or

(C) The plan representative and the treating physician cannot reach an agreement concerning the enrollee's care and a plan physician is not available for consultation. In this situation, the plan must give the treating physician the opportunity to consult with a plan physician. The treating physician may continue with care of the patient until a plan physician is reached. You can find these rules at 42 CFR §422.113(c)(2).

If you want to read these Medicare rules, you can go to this web site www.medicareappeal.com.

**The health plan contract**

The health plan contract says that Kaiser pays for services that would be covered by original Medicare.

**Doctor review**

Our MAXIMUS Federal Services Doctor Consultant carefully reviewed the file. This doctor says that following treatment in the emergency room, ███████ was no longer symptomatic. She was at low risk of an adverse event happening during transfer to another facility. She could have been transferred to a plan hospital before she was admitted.

**Our decision**

Our decision is that Kaiser does not have to pay for ███████ inpatient hospital stay at Sherman Oaks Hospital from ██/07 to ██/07.

The record shows that ███████ was brought in to the emergency room at Sherman Oaks Hospital. She had complaints of weakness, dizziness, and nearly passing out. She was admitted to the non-plan hospital. Kaiser denied payment for this hospital stay. They say they were not notified of the admission until the next day, which was the day of discharge. You appealed Kaiser's denial.

Medicare rules and the health plan contract say that the plan is responsible for post-stabilization care services obtained outside the network if the plan does not respond to a request for pre-approval within 1 hour. The plan is responsible if they cannot be contacted. The plan is responsible if the plan and the treating physician cannot reach an agreement concerning the enrollee's care and a plan physician is not available for consultation. In this case, the plan was not notified of ███████ admission until the next day. That is when she was discharged. The Maximus consultant doctor determined that she was stable for transfer to a plan hospital from the emergency room. Her inpatient hospital stay does not meet Medicare coverage guidelines for post-stabilization services. Therefore, Kaiser does not have to pay for the inpatient hospital stay of ██/07 to ██/07.

# Exhibit A-6

November 14, 2007

**MAXIMUS**
Federal Services

**The Appeal Number is:**
[REDACTED]

Sonny Pymagam
Desert Valley Hospital
16850 Bear Valley
Victorville, CA 92395

**RECEIVED**

**NOV 27 2007**

**PASADENA
MEMBER SERVICES**

Medicare
Managed Care & PACE
Reconsideration Project

RE: Enrollee: [REDACTED]
Medicare Number: [REDACTED]

*Reviewing
Medicare Appeals*

Dear Sonny Pymagam:

This letter is about **our decision in your appeal to Kaiser Foundation Health Plan, Inc. (Kaiser). You have asked for coverage for inpatient services provided to** [REDACTED] **from** [REDACTED]**/07 to** [REDACTED]**/07.**

50 Square Drive
Suite 210
Victor, New York 14564
Tel: 585-425-5210
Fax: 585-425-5292
www.medicareappeal.com

**Our decision**

**We agree partly with you _and_ partly with Kaiser.** This means that we will tell Kaiser to pay for inpatient services from [REDACTED]/07 to [REDACTED]/07. This also means that Kaiser will not pay for inpatient services from the time of admission on [REDACTED]/07 until the time of health plan notification on [REDACTED]/07. To learn more about how we made our decision, read the rest of this letter.

**What you have to do**

- **We sent Kaiser** a copy of this letter, so they know they have to pay for inpatient services from [REDACTED]/07 to [REDACTED]/07.
- Kaiser must pay to give you the item or service within 30 days. If Kaiser does **not** do so within 30 days, call the San Francisco CMS Regional Office at 415-744-3501.

**Who We Are**

*We are MAXIMUS Federal Services. We are experts on appeals. Medicare hired us to review the file and decide if the health plan made the correct decision. We work for Medicare. We do not work for the health plan.*

*Janice Eidem
Project Director
Medicare Managed Care & PACE Reconsideration Project*

**If you do not agree with us**

**You may have rights to a Hearing with an Administrative Law Judge (ALJ).** This is called an ALJ Hearing. A *Hearing* is a meeting with you and the ALJ so that you can talk about the appeal.

You can ask for an ALJ Hearing if the amount of money in the appeal meets the Hearing limit. To find out what the Hearing limit is, please call 1-800-Medicare (1-800-633-4227).

To ask for an ALJ Hearing, fill out the "ALJ Hearing Request" form in this letter and send it to us. You must send the ALJ Hearing request to us within 60 days of the date of this letter.

v4 0

Please read the brochure called, "Medicare Appeals and Your Rights" to learn more about Medicare appeals and the appeal rights.

**Do you need help?**

Call 1-800-MEDICARE (1-800-633-4227) for help or more information about what you can do in this case. TTY users should call 1-877-486-2048.

cc:   H0524 : Kaiser Foundation Health Plan, Inc., c/o Rachel Warfield
      San Francisco CMS Regional Office

**How we made our decision**

1. We read all the papers in the file.
2. We checked Medicare rules.
3. We checked the contract with Kaiser.
4. We sent the file to a MAXIMUS Federal Services Doctor Consultant.

To make our decision we read all the papers in the file very carefully. We used the Medicare rules. We looked to see if Kaiser correctly followed Medicare rules and regulations.

Medicare rules say that the health plan must give you a subscriber agreement. It is the contract with the health plan and is usually called the "Evidence of Coverage" or "Member Agreement." We read this contract carefully to see what Kaiser is supposed to cover.

We sent the case to a MAXIMUS Federal Services Doctor Consultant. This doctor works for us, *not the health plan.* We asked this doctor to review all of the medical records in the file.

**Medicare rules**

The rules say that health plans must pay for a medical service or item if regular Medicare would pay for it for you. You can find this rule at 42 CFR §422.101.

The rules say that a Medicare Health Plan is financially responsible for emergency services regardless of whether the services are obtained within or outside the Health Plan and regardless of whether there is prior authorization for the services. You can find this rule at 42 CFR §422.113(b)(2).

The rules define "post-stabilization care services" as covered services, related to an emergency medical condition, that are provided after an enrollee is stabilized in order to maintain the stabilized condition, or to improve or resolve the enrollee's condition. You can find this rule at 42 CFR §422.113(c)(1).

The physician treating the enrollee must decide when the enrollee may be considered stabilized for transfer or discharge, and that decision is binding on the Medicare Health Plan. You can find this rule at 42 CFR §422.113(b)(3).

The rules say that a Medicare Health Plan is financially responsible for post-stabilization care services that **are** pre-approved by a plan provider or other MA organization representative. The rules say that a Medicare Health Plan is financially responsible for post-stabilization care services obtained within or outside the MA organization that **are not** pre-approved by a plan provider or other Health Plan representative, but administered to maintain, improve, or resolve the enrollee's stabilized condition if --

(A) The MA organization does not respond to a request for pre-approval within 1 hour;

(B) The MA organization cannot be contacted; or

MAXIMUS Federal Services
Medicare Managed Care &
PACE Reconsideration Project

v4 0

(C) The MA organization representative and the treating physician cannot reach an agreement concerning the enrollee's care and a plan physician is not available for consultation. In this situation, the MA organization must give the treating physician the opportunity to consult with a plan physician and the treating physician may continue with care of the patient until a plan physician is reached. You can find these rules at 42 CFR §422.113(c)(2).

If you want to read these Medicare rules, you can go to this web site www.medicareappeal.com.

### The health plan contract

The health plan contract says they are obligated to pay for services covered by original Medicare.

### Doctor review

Our MAXIMUS Federal Services Doctor Consultant carefully reviewed the file. This doctor says that ██████████ was medically stable and appropriate for transfer to a plan hospital prior to her admission to the medical floor.

### Our decision

Our decision is that Kaiser does have to pay for inpatient hospital services from the time Kaiser was notified of ██████████ admission on ███/07. However, Kaiser does not have to pay for inpatient hospital services from the time ██████████ was admitted on ███/07, until Kaiser was notified of the admission on ███/07.

The record shows that ██████████ was brought in to the emergency room at Desert Valley Hospital by ambulance on ███/07. She had complaints of chest pain, shortness of breath, nausea, and vomiting. She was admitted with a diagnosis of chest pain. She had cardiac testing, and was seen by a cardiologist. You requested that Kaiser pay for the inpatient hospital services provided to ██████████ from ███/07 to ███/07.

Kaiser denied your request. They are covering the emergency room visit, but not the inpatient care. They say the care was not authorized. Desert Valley Hospital is a non plan provider. Kaiser was not notified of the admission until the next day. They made several attempts to contact the hospital about ██████████ status, and possible transfer to a plan hospital. The case was reviewed by our consultant doctor. This doctor says that ██████████ was stable for transfer to a plan hospital before she was admitted.

According to Medicare rules, the plan is not responsible for post stabilization care services if they were not notified of the admission by the non network hospital. Desert Valley Hospital did not notify Kaiser of the admission until ███/07. Therefore, Kaiser is not obligated to pay for the inpatient services from the time of admission, until the time of Kaiser's notification.

There is no evidence that the plan doctor and the treating doctor reached an agreement about ██████ care and possible transfer to a plan hospital after the time of Kaiser's notification of the admission. In this situation, the treating doctor's decision on whether the enrollee is stable enough for transfer is binding on the plan. For that reason, Kaiser is required to pay for the inpatient services from the time of notification on ███/07, until the time of discharge on ███/07.

MAXIMUS Federal Services
Medicare Managed Care &
PACE Reconsideration Project

v4.0

**If Kaiser does not agree with our decision,** they can ask us to open a case again. We only open a case again if we believe there was a mistake or if there is new information to review. The health plan has to show us the mistake and/or send us the new information. **This does not happen often**. If we decide to open the case again, we will send you a letter.

MAXIMUS Federal Services
Medicare Managed Care &
PACE Reconsideration Project

v4.0

39