1  William A. Helvestine      State Bar No. 58755
2  Andrew J. Hefty           State Bar No. 220450
   Jamie S. Platto           State Bar No. 226723
3  Carri Becker Maas         State Bar No. 245816
   EPSTEIN BECKER & GREEN, P.C.
4  One California Street, 26th Floor
   San Francisco, California 94111-5427
5  Telephone:  415.398.3500
6  Facsimile:  415.398.0955
   whelvestine@ebglaw.com, ahefty@ebglaw.com,
7  jplatto@ebglaw.com, cmaas@ebglaw.com

8  Attorneys for Defendants,
   KAISER FOUNDATION HEALTH PLAN, INC.,
9  KAISER FOUNDATION HOSPITALS, and SOUTHERN
   CALIFORNIA PERMANENTE MEDICAL GROUP
10

11

12                    **UNITED STATES DISTRICT COURT**

13              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14

15  PRIME HEALTHCARE PARADISE          CASE NO.  08CV 0523 JLS BLM
    VALLEY, LLC, a Delaware limited liability
16  company, doing business as Paradise Valley   **MEMORANDUM OF POINTS AND**
    Hospital,                                    **AUTHORITIES IN SUPPORT OF**
17                                               **MOTION TO TRANSFER**
              Plaintiff,
18                                               Honorable Janis L. Sammartino
         v.
19                                               DATE:  JULY 24, 2008
    KAISER FOUNDATION HEALTH PLAN,               TIME:  1:30 P.M.
20  INC.; a California corporation, et al.,      CTRM: 6

21            Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................4

III.    ARGUMENT .......................................................................................................5

        A.      Legal Standard For Transfer ..................................................................6

        B.      The Prime Cases Might Have Been Brought Originally In The
                Central District, And Transfer To The Central District Would Be
                Proper .......................................................................................................7

        C.      The Five Prime Cases Are Virtually Identical, Involve Common
                Questions of Law and Fact, and Transfer Would Allow For the
                Convenience and Efficiency of Consolidation ........................................8

                1.      The Prime Cases Involve Common Questions of Law ...............9

                2.      The Prime Cases Include Common Questions of Fact ...............9

        D.      The Complaints Will Require Substantial Overlapping Litigation
                and Duplication of Judicial Efforts in Each Phase of Litigation ..........11

        E.      Transfer and Consolidation Would Benefit the Court, Parties, and
                Witnesses, and Would Not Delay Litigation or Prejudice Any Party
                or the Interests of Justice.......................................................................15

IV.     CONCLUSION..................................................................................................16

- i -

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*A. J. Industries, Inc. v. United States Dist. Court for Cent. Dist.*,
    503 F.2d 384 (9th Cir. 1974) ........................................................................................6, 8

*Alltrade, Inc. v. Uniweld Products, Inc.*,
    946 F.2d 622 (9th Cir. 1991) ...........................................................................................7

*Burnett v. Rowzee*,
    2007 U.S. Dist. LEXIS 89799 (C.D. Cal. Nov. 26, 2007).........................................11, 12

*Burnham v. Superior Court of Cal.*,
    495 U.S. 604, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990)..................................................7

*Greenwell v. Belkin Corp.*,
    2006 U.S. Dist. LEXIS 76231 (N.D. Cal. Oct. 10, 2006)..........................................8, 15

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) .........................................................................................6, 8

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)............................................................................................15

*Maloon v Schwartz*,
    399 F Supp 2d 1108 (D. Haw. 2005) ..................................................................................8

*Mills v. Beech Aircraft Corp.*,
    886 F.2d 758 (5th Cir. 1989) ...........................................................................................14

*Norwood v. Kirkpatrick*,
    349 U.S. 29, 75 S. Ct. 544, 99 L. Ed. 789 (1955)................................................................6

*Paxonet Communs., Inc. v. Transwitch Corp.*,
    303 F. Supp. 2d 1027 (N.D. Cal. 2003) ...........................................................................11

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U. S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)......................................................6

*Takeda v. Turbodyne Technologies, Inc.*,
    67 F. Supp. 2d 1129 (C.D. Cal. 1999) .............................................................................11

*Wells v. Cingular Wireless LLC*,
    2006 U.S. Dist. LEXIS 73664 (N.D. Cal. Sept. 27, 2006) *citing, Gherebi v. Bush*,
    352 F.3d 1278 (9th Cir. Cal. 2003) *rev'd on other grounds*, 542 U.S. 952, 124 S.
    Ct. 2932, 159 L. Ed. 2d 835 (2004) ...................................................................................7

- ii -

*Yousefi v. Lockheed Martin Corp.*,
    70 F. Supp. 2d 1061 (C.D. Cal. May 25, 1999) ...................................................15

**FEDERAL STATUTES AND REGULATIONS**

42 C.F.R.
    § 422.113 et seq. (2005) .......................................................................................5

28 U.S.C.
    § 1391(c) ...............................................................................................................8
    § 1404(a) ...........................................................................................................1, 6
    § 1442...............................................................................................................2, 3

**STATE STATUTES AND REGULATIONS**

Cal. Business and Professions Code § 17200. ..............................................................2

Cal. Code Regs. tit. 28, § 1300.71 et seq. (2003) ........................................................5

Cal. Health & Saf. Code §§ 1262.8, 1371.4 .................................................................5

SF:167616v7          Memorandum in Support of Motion to Transfer
CASE NO. 08CV 0523 JLS BLM

## I.  INTRODUCTION

Prime Healthcare Services, LLC ("Prime") operates a network of nine hospitals in Southern California.  Prime, in the name of its wholly owned or controlled entities[1], has brought five virtually identical lawsuits (the "Prime Cases") – four of which are now pending in the Central District of California and one in the Southern District – against Defendants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and Southern California Permanente Medical Group (collectively "Kaiser").[2]  The Prime Cases seek additional payments for services provided to members of Kaiser's health plans ("Kaiser Members"), including Kaiser Members enrolled in federal Medicare plans and Employee Retirement Income Security Act ("ERISA") plans.

The primary factual dispute concerns whether the services provided to Kaiser Members were provided to treat an emergency medical condition, or whether the services constitute unauthorized care provided after the patient was stable for transfer to a Kaiser facility.  Under both Medicare and ERISA plans (as well as state law), the former care is reimbursable; the latter is not.  The Prime Hospitals exhibit a uniform pattern of refusing to contact Kaiser and refusing to coordinate patient care or to obtain authorization for post-stabilization services.  Prime seeks

---

[1] According to Prime's website, "Prime Healthcare Services, Inc., founded by Dr. Prem Reddy, currently owns and operates nine acute care hospitals in Southern California …."  <http://www.primehealthcareservices.com/primestyle/shtm/about/leadership.shtm> (as of April 15, 2008).  Declaration of Jamie S. Platto, ¶ 2 ("Platto Decl.") filed concurrently.  This list includes the eight plaintiff hospitals.  The one non-hospital plaintiff is Desert Valley Medical Group, of which Dr. Prem Reddy is the founder and chief executive.  Prime has also acquired Centinela Hospital Medical Center in Inglewood, CA, which is not named as a plaintiff in the Prime Cases.  The plaintiff entities are referred to collectively herein as the "Prime Hospitals".  *Id.*

[2] The five cases, originally brought in five separate state courts, were removed to five separate federal courts, as follows: *Prime Healthcare Services II, LLC vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. CV 08-01858 GW FMOx ("Sherman"); *Desert Valley Hospital, Inc. et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. EDCV 08-00385 SGL (OPx) ("Desert"); *Veritas Health Services, Inc. et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. EDCV 08-00386 SGL (OPx) ("Chino"); *Prime Healthcare La Palma, LLC et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. SACV08-00318 DOC (ANx) ("Orange"); *Prime Healthcare Paradise Valley, LLC vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. 08CV 0523 JLS BLM ("Paradise").

- 1 -

this judicial intervention before exhausting, or in most cases even attempting to exhaust, administrative remedies provided by Medicare and ERISA.

The five complaints in the Prime Cases are virtually identical in all respects. The facts of each complaint differ only in the name of the Prime Hospital providing the care, and all five complaints contain the exact same seven state law based causes of action: (1) breach of implied-in-law contract; (2) breach of implied-in-fact contract; (3) breach of assigned contract; (4) breach of the implied covenant of good faith and fair dealing; (5) quantum meruit; (6) intentional interference with contract; and (7) violation of California's Business and Professions Code § 17200.[3]

Defendants removed these five complaints based on the same three legal grounds: complete preemption under ERISA; complete preemption under the Medicare Act; and federal actor removal pursuant to 28 U.S.C. § 1442. (Platto Decl. ¶ 3.) Prime's counsel in the Prime Cases has stated that they will move to remand, most recently in the Objection to Defendants' Notice of Related Cases.[4] On April 24, 2008, Defendants filed motions to strike in all five Prime Cases based on language common to all five complaints. On April 25, 2008, Defendants filed motion to dismiss in all five Prime Cases based on the exact same grounds: (1) ERISA preemption; (2) Medicare preemption; (3) failure to exhaust the mandatory administrative remedies provided by ERISA and the Medicare Act; and (4) other grounds for relief under Rule 12 of the Federal Rules of Civil Procedure.

These five cases therefore present the following imminent common questions of law:

- Are Prime's causes of action, or any of them, preempted by ERISA (relevant to dismissal and remand).

- Are Prime's causes of action, or any of them, preempted by the Medicare Act (relevant to dismissal and remand).

---

[3] Prime's Orange complaint contains an additional cause of action for declaratory relief on a contract issue. As indicated below at footnote 5, the parties have agreed to binding arbitration of the issues in that cause of action and it is, therefore, irrelevant for purposes of consolidation.

[4] Plaintiff's Objection/Response to Defendants' Notice of Related Cases, at 2, fn. 2 (D.E. 7) ("Obj.").

- 2 -

- Has Prime exhausted the mandatory administrative remedies required by ERISA and the Medicare Act (relevant to dismissal).

- Was Kaiser acting under the direction of a federal officer within the meaning of 28 U.S.C. § 1442(a)(1) (relevant to remand).

- Should any of Prime's seven identical causes of action be dismissed on other grounds, such as the failure to state a claim (motion to dismiss).

- What portions of the five actions should be stricken (motion to strike).

Absent transfer and consolidation, five federal courts in southern California – including this Court – will have to address these identical legal issues pertinent to remand and dismissal. In the interests of judicial economy and to prevent inconsistent rulings, these issues should be addressed by one court, not five.

Assuming any causes of action survive dismissal, these same courts will have to confront at least the following common questions of law and fact raised by these five virtually identical Prime complaints:

- Are the services for which Prime seeks payment properly payable pursuant to federal Medicare law, the terms of the ERISA plans and/or, to the extent applicable, state law.

- Do implied in law and fact contracts exist between Kaiser and the Prime Hospitals and, if so, were these contracts breached.

- Are there express or implied contracts between the Prime Hospitals and Kaiser Members and, if so, did Kaiser intentionally interfere with these contracts.

- Is Prime entitled to any relief resulting from alleged assignments of benefits provided by Kaiser Members to Prime Hospitals.

- Is there an implied covenant of good faith and fair dealing between Kaiser and the Prime Hospitals and, if so, did Kaiser breach it.

- Is Prime entitled to *quantum meruit* relief for services rendered to Kaiser Members.

- If Prime is entitled to any relief, what is the reasonable value of the services Prime Hospitals provided to Kaiser Members.

The case in support of transfer and consolidation is incontrovertible. All of these legal and factual issues should be resolved by one court, not five, and there are no risks posed to any of the parties by transferring or consolidating these cases.

- 3 -

1        Prime's recent Objection to Notice of Related Cases contends that each case will involve

2    individual testimony regarding stability determinations from the doctors who saw Kaiser

3    members, and that individual testimony from one case will be irrelevant to another. (Obj. p.

4    3:17-28; 4:11-16).  However, the same can be said of the numerous different claims submitted by

5    any one hospital: different personnel on both sides will address the different cases.  But this

6    simply illustrates a case management issue that exists within each of the five complaints.  Far

7    from being a reason not to transfer and consolidate, this case management issue further shows

8    why these cases should be handled jointly by one court instead of saddling five separate courts

9    with the same case management issue.  The five complaints involve thousands of Kaiser

10   Members and presumably dozens or even more doctors.  However, the same legal and medical

11   standards regarding patient stability apply to all the individual determinations.  Whichever court

12   or courts try these cases, the court is likely to use well-established evidentiary and case

13   management techniques, such as expert testimony and possible appointment of a Special Master,

14   to address the thousands of individual claims.  This is particularly true in this case where Prime's

15   pattern and practice (and its departure from prior hospital practice) are the same across the Prime

16   hospitals, the legal standards are the same, the medical standards are the same, and presumably

17   the experts for both sides will present consistent criteria for their conclusions.

18       Based on the complete overlap of legal issues presented in each case, the overwhelming

19   commonality of factual issues in each case, the convenience of the parties and witnesses in

20   eliminating duplicative litigation, and in the interest of judicial economy, Kaiser has moved the

21   United States District Court for the Central District of California, Western Division, to

22   consolidate for all purposes the four Prime Cases currently pending in the Central District.  Here,

23   Kaiser moves this Court to transfer the one related Prime Case pending before it to the Central

24   District, so that the interests of justice and convenience can be most effectively served by the

25   consolidation of all five Prime Cases.

26   **II.    FACTUAL BACKGROUND**

27       The five Prime Cases involve emergency services provided at hospitals that do not

28   contract with patients' health plan, and the resumption of care by providers within Kaiser once

- 4 -

the emergency condition is stabilized.  The claims all involve Kaiser Members enrolled in

Kaiser's health care plans who received services at the Prime Hospitals for which Plaintiffs

allege that Kaiser has wrongfully reduced or denied payment.  The primary dispute concerns

Prime's failure to seek or obtain authorization, as required by federal and state law, for services

provided after a patient's emergency condition is stabilized (post-stabilization care).  Pursuant to

both state and federal Medicare law and the terms of ERISA plans governing its members,

Kaiser has no obligation to pay for post-stabilization care at non-contracted hospitals, such as the

Prime Hospitals, unless the hospital obtains Kaiser's authorization.  (Cal. Health & Saf. Code §§

1262.8, 1371.4; Cal. Code Regs. tit. 28, § 1300.71 et seq. (2003); and 42 C.F.R. § 422.113 et seq.

(2005).)

Once Prime acquires a hospital, it directs the hospital to stop making telephone calls to

Kaiser for authorization of post-stabilization care, and interferes with the transfer of patients to

Kaiser hospitals for post-stabilization care.  (*See* Declaration of Wendy J. Magnacca, ¶¶ 1-6,

including attached charts.)  The bulk of the services for which the Prime Hospitals seek payment

are claims for unauthorized post-stabilization care that Kaiser has rightfully denied.  Because the

Prime Hospitals are non-contracted facilities[5], Prime's seven identical causes of action are based

on theories of implied or assigned contracts rights and, with respect to the seventh cause of

action, California statutory remedies.

## III.    ARGUMENT

The five Prime Cases could all have been brought originally in the Central District, and

present many identical issues of law and fact that must be addressed before the Court reaches the

fact issues specific to any single medical claim.  Litigation of these identical issues will require

---

[5] An exception involves the hospitals in Orange County where, prior to Prime's acquisition of
the hospitals, Kaiser had written contracts with the former owners of La Palma Intercommunity
Hospital, Huntington Beach Hospital, and West Anaheim Medical Center.  These are referred to
by Plaintiffs as the Vanguard LOA and the Acute Rehab Agreement, which are raised in the first
cause of action in the Orange case.  (Orange complaint, ¶¶ 18-19.)  Prime denies that these
contracts apply during its ownership.  (*Id*. at ¶¶ 21, 37.)  The parties recently agreed to binding
arbitration of the claims related to these contracts, and Kaiser expects that Prime will dismiss the
first cause of action from the Orange case accordingly. (Platto Decl. ¶ 4.)

- 5 -

much if not all of the same documents and witnesses.  These cases all present, first, legal issues about federal preemption that will arise in the Motions to Dismiss and Motions to Remand expected in each case.  Assuming any of the current claims for relief remain, the five cases present the same basic questions of law relating to the seven identical causes of action stated in the five complaints, such as the existence of implied contracts and the parties' obligations under federal and state law relating to post-stabilization care.  These issues will be addressed with many of the same documents and witnesses in each of the five Prime Cases.  This overlap of documents and witnesses, together with additional commonalities described below, overwhelmingly support transfer and consolidation.  Further, the interests of justice are overwhelmingly served by a transfer here because of the benefits conferred by the consolidation of the common questions of law and fact in the Prime Cases.

### A.    Legal Standard For Transfer

Title 28 U.S.C. § 1404(a) provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Congress enacted this statute to provide a mechanism for courts to grant transfers upon a lesser showing of inconvenience than under the doctrine of *forum non conveniens*.  *Norwood v. Kirkpatrick,* 349 U.S. 29, 30-32, 75 S. Ct. 544, 545-46, 99 L. Ed. 789, 792-93 (1955); *A. J. Industries, Inc. v. United States Dist. Court for Cent. Dist.,* 503 F.2d 384, 386-88 (9th Cir. 1974).

A district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U. S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22, 31 (1988).  In order for a district court to transfer an action under section 1404, it must make the following two findings: (1) that the transferee court is one where the action might have been brought; and (2) that the convenience of the parties and witnesses and the interest of justice favor transfer.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

Transfer analysis will include examination of factors, described by the Ninth Circuit as public and private factors to determine if transfer will serve the interests of justice.  Private

- 6 -

factors include access to sources of proof, availability of compulsory process for attendance of witnesses, and efficiencies of the litigation.  Public factors include the courts' administrative burden, the avoidance of unnecessary problems in conflict of laws, and the unfairness of burdening citizens in an unrelated forum with jury duty.  *Wells v. Cingular Wireless LLC*, 2006 U.S. Dist. LEXIS 73664, at *4-5 (N.D. Cal. Sept. 27, 2006) *citing, Gherebi v. Bush*, 352 F.3d 1278 (9th Cir. Cal. 2003) *rev'd on other grounds*, 542 U.S. 952, 124 S. Ct. 2932, 159 L. Ed. 2d 835 (2004).

Here, as shown below, the majority of the sources of proof (documents and witnesses) are in the Central District, and the transfer and consolidation of the related cases would increase the court's efficiency while simultaneously avoiding any problems with conflict of laws, or public burden.  In addition, the convenience of the parties and witnesses will be served by transfer of this case to the Central District for consolidation with the four related cases Kaiser has moved to consolidate there.  This convenience of the parties and witnesses is a primary factor in favor of transfer.  *Wells*, 2006 U.S. Dist. LEXIS 73664, at *6-7, *citing, A. J. Indus., Inc. v. U.S. Dist. Court for Central Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974) ("The pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties.")

The fact that the five related state court cases were filed on the same day indicates how related the cases are, and the fact that the first case removed to federal court was the Sherman case in the Western Division of the Central District indicates that this case should be transferred to that court.  *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (discussing the first to file rule.)

**B.    The Prime Cases Might Have Been Brought Originally In The Central District, And Transfer To The Central District Would Be Proper**

The Paradise action may be transferred to any district where it might originally have been brought.  28 U.S.C. 1404(a); *see also* 8 *Moore's Federal Practice*, § 42.11[2][b] (Matthew Bender 3d ed.).  A case might have been brought wherever venue is appropriate and where personal jurisdiction exists.  *Id*.  Personal jurisdiction exists over the Kaiser Defendants.  All

- 7 -

three Defendants were served in California, *see Burnham v. Superior Court of Cal.*, 495 U.S. 604, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990) (service within state confers jurisdiction even on nonresident defendant).  The two corporate defendants are incorporated in California, and all three Defendants conduct business in the Central District of California.  Federal courts in the Central District would therefore have personal jurisdiction over the Kaiser Defendants.  Venue is appropriate where "any defendant resides, if all defendants reside in the same State."  28 U.S.C. § 1391(b); *Maloon v Schwartz,* 399 F Supp 2d 1108, 1113-14 (D. Haw. 2005) (quoting statute). A corporation "is deemed to reside in any judicial district in which it is subject to personal jurisdiction."  28 U.S.C. § 1391(c); *Greenwell v. Belkin Corp.*, 2006 U.S. Dist. LEXIS 76231, at *4-5 (N.D. Cal. Oct. 10, 2006) (quoting statute).  In a state with more than one judicial district, a corporation is deemed to reside "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State."  28 U.S.C. § 1391(c).  All three Kaiser defendants conduct business within the Central District, and as indicated above the Central District has personal jurisdiction over the Kaiser Defendants.  As such, because Prime could have brought this action in the Central District, transfer to that district would be proper.  *Hatch*, 758 F. 2d at 414 (determining that the transferee court was one where the case "might have been brought" as require by §1404(a)).

> ### C.    The Five Prime Cases Are Virtually Identical, Involve Common Questions of Law and Fact, and Transfer Would Allow For the Convenience and Efficiency of Consolidation

The five Prime Cases  are virtually identical and involve common issues of law and of fact.  At their core, each of these cases seeks the same ERISA and Medicare benefits, and can be summarized in the same way – Prime seeks payment for unauthorized post-stabilization care provided to Kaiser Members at one of its hospitals.

The same questions of law and fact pervade each case.  Individual issues, such as questions of fact relating to particular patients, merely present easily solved evidentiary and case management issues if the litigation reaches that stage.  However, the same questions of law and fact, and the same legal and medical standards, underpin each individual patient claim.  The cases as a whole therefore warrant consolidation.  These factors that warrant consolidation of the

- 8 -

Memorandum in Support of Motion to Transfer
CASE NO.  08CV 0523 JLS BLM

Prime Cases are a strong reason to transfer this case due to the efficiencies to be gained from that consolidation – efficiencies that benefit the witnesses, the parties, and further the interests of justice. *A. J. Indus., Inc.,* 503 F.2d at 389.

### 1.    The Prime Cases Involve Common Questions of Law

Identical Notices of Removal were filed in each of the Prime Cases, Prime has indicated that it will move to remand, and the same Motions to Dismiss and Motions to Strike were filed in each case.  Whether it is five separate courts or a single consolidated court, these initial motions will require the court to address the same legal issues of ERISA and Medicare preemption and other grounds for dismissal and/or remand and/or striking part of the claims.

Depending on what if any claims survive,  Kaiser expects to raise the same defenses and counterclaims to each complaint.  These proceedings would require the court to address the same legal issues, such as whether Prime's policies of refusing to seek authorization for post-stabilization care, refusing to communicate and coordinate care, and refusing to transfer Kaiser Members following stabilization of their emergency medical conditions violate applicable federal and state law.

Whether it is five separate courts or a single consolidated court (and depending on whether any claims survive), the court will also need to address foundational legal questions common to the seven identical causes of action pleaded in each complaint.  These issues include, for example, whether implied-in-law or implied-in-fact contracts existed between a Prime Hospital and Kaiser.[6]  These issues are the same in each case and would be decided more efficiently and consistently by one court than by five.

### 2.    The Prime Cases Include Common Questions of Fact

The factual issues in the Prime Cases are similarly common among the five cases.  Any one of these common questions of fact is sufficient to justify transfer and consolidation.  Complete overlap of identical facts in each case is not required.

---

[6] *See, e.g.,* the cause of action identically titled "Breach of Implied-In-Law Contract" in each of the Prime Cases (Sherman complaint, ¶¶ 25-32; Chino complaint, ¶¶ 28-35; Desert complaint, ¶¶ 24-31; Orange complaint, ¶¶ 39-46; and Paradise complaint, ¶¶ 21-28.)

The core factual issues to be addressed in each of the Prime Cases include:

- Whether the Prime Hospitals fail to seek prior authorization for post-stabilization medical services as required by federal and state law and the terms of the Kaiser Members' ERISA and Medicare plans.

- Whether the Prime Hospitals interfere with the transfer of patients to Kaiser facilities so they can receive post-stabilization care from physicians and hospitals within Kaiser.

- Whether Prime issues directives to its hospitals regarding policies on authorization of post-stabilization care or patient transfers.

- What are the appropriate standards and criteria to determine when a patient's emergency medical condition is stabilized.

These common questions of fact will need to be addressed by the court, or courts, in each of the Prime Cases. While specific facts relating to individual medical claims may vary, these same core questions of fact must be the same for patients at all the Prime Hospitals.[7] Transfer and consolidation are needed to ensure consistent answers to these common questions of fact, and to prevent inconsistent results in the Prime Cases.

A secondary factual issue with common overlap will be the reasonable value of the services provided by the Prime Hospitals, and whether Kaiser has already paid Prime at that rate. Whether it is five separate courts or a single consolidated court, the court will face the same common issue relating to the standards and methodology used to determine the reasonable value of hospital services. Prime asserts in its Objection that consolidation is improper as such reasonable value determinations are specific to each county. (Obj. at 4:2-8) Contrary to Prime's assertion, while the determination of precise dollar values for services may differ among the hospitals, the methodology used is the same, and the determination of reasonable value will likely come in the form of expert testimony that can readily cover different locations and different hospitals, and ultimately goes to the issue of specific damages for each case. Moreover, one could expect that Prime develops charge-masters centrally or otherwise manages pricing

[7] The logistical exercise of one court managing all of the evidentiary claims from the nine plaintiffs would not be significantly more complex than having five courts each manage a fifth of the total. In fact, five separate case management structures may well be more of a "nightmare", as Plaintiffs' counsel claims (Obj., p. 3:12), than a single structure.

Memorandum in Support of Motion to Transfer
CASE NO. 08CV 0523 JLS BLM

1   centrally at its hospitals.  Such subsidiary factual differences do not justify keeping the five cases

2   separate in five different courts.

3          These common questions of fact are in addition to the allegations made in the complaints

4   themselves, many of which are identical word-for-word.  See, for example: Sherman complaint,

5   p. 3:8-2, Chino complaint, p. 3:18-4:5, Desert complaint, p. 4:9-24, Orange complaint, p. 3:12-

6   27, and Paradise complaint, p. 3:8-23, each stating "Kaiser fails to properly pay claims submitted

7   by the [Hospitals] for emergency medical services rendered based on claims that the services

8   were not medically necessary, the patient was stable for transfer, and/or Hospitals' charges are in

9   excess of the reasonable and customary value of the services provided."

10         **D.     The Complaints Will Require Substantial Overlapping Litigation and**
               **Duplication of Judicial Efforts in Each Phase of Litigation**

11

12         To the extent plaintiffs' claims survive the Motions to Dismiss, and following the

13   pleading phase of this litigation, if discovery becomes necessary, there will be an even greater

14   overlap and a wider duplication of efforts.  The commonality of parties on both sides of these

15   cases, and the identical core issues in dispute, make clear that the facts and witnesses will

16   overlap, creating an unnecessary repetition of judicial efforts and inconvenience for the parties

17   and witnesses if allowed to proceed separately.

18         Where multiple cases share core issues, documents, witnesses and parties there is

19   sufficient cause to consolidate those cases for all purposes, including trial.  *Takeda v. Turbodyne*

20   *Technologies, Inc.*, 67 F. Supp. 2d 1129, 1132 (C.D. Cal. 1999).  In one analogous case, the court

21   found that consolidation would provide judicial efficiency since the patent at issue in each case

22   (analogous to contracts here) involved the same underlying technology.  *See Paxonet Communs.,*

23   *Inc. v. Transwitch Corp.*, 303 F. Supp. 2d 1027, 1028 (N.D. Cal. 2003).  In the five related cases

24   here, each action involves allegations of the same implied contracts relating to the same

25   underlying issues regarding payment of medical benefits (analogous to the underlying

26   technology in a patent case).  *Id.*, at 1029 (consolidating cases where the "lawsuits will require

27   the Court to construe the terms of the" same contracts and "will require the Court to address the

28   validity of these three" contracts, and "will require a jury to understand the same underlying"

- 11 -

1    core issues in each case, the "Court believes that judicial efficiency will be served by

2    consolidating these actions.")

3            Similarly, the Central District has previously found that, after examining the potential

4    risks and factual differences specific to each plaintiff in the cases being considered for

5    consolidation, consolidation was proper where "these related cases are likely to share key

6    witnesses" because it would lead to "fewer discovery requests", "eliminate unnecessary and

7    duplicitous arguments", and "substantially reduce burdens on all involved." *Burnett v. Rowzee*,

8    2007 U.S. Dist. LEXIS 89799, *16-17 (C.D. Cal. Nov. 26, 2007) ("by bringing all of these

9    actions into a single case, the Court's burden in managing all of them will be lessened

10   significantly.")  In particular, that Court noted with regard to the same witnesses testifying in

11   multiple cases, that "[b]y requiring those witnesses to appear only once, rather than four times,

12   consolidation will significantly reduce their burden." *Id.*

13           The core issues in these Prime Cases – relating to the authorization for post-stabilization

14   care and the arrangement of transportation for stabilized patients – involve actions by a limited

15   number of departments within Kaiser.  Thus, the relevant witnesses and documents are likely to

16   come from the same limited number of locations.  (Declaration of Dr. John Shohfi, ¶¶ 2-5

17   ("Shohfi Decl.").)

18           One source of witnesses and documents will be Kaiser's Emergency Prospective Review

19   Program ("EPRP").  EPRP's central office is located in Downey, California, and is available

20   24/7 and exists to make available medical record information for outside providers, to provide

21   real-time physician to physician consulting, to coordinate and authorize care, to provide

22   prospective medical management, and to arrange for transfer of stabilized patients as appropriate

23   for post-stabilization care.[8]  (Shohfi Decl. ¶ 2-3.)  Through the EPRP program, Kaiser provides

24   immediate telephone response on a 24/7 basis, including immediate access to a practicing

25   emergency services physician who can access patients' medical records.  (*Id*. at ¶ 2.)  Hospital

26

27   [8] Kaiser's EPRP is described in the article "Post-Stabilization Case Management" by Dr. L.
     Johnson, (attached to Platto Decl. as Exhibit B) noting that  Kaiser's program as "a stellar
     example of a well organized PSCM function."  Dr. Johnson is the former President of
28   CAL/ACEP, a trade association that represents emergency physicians.

1  calls to EPRP -- or in Prime's case the absence of calls -- are directly related to the core issues in

2  these cases. Evidence about the operation of EPRP, and about the calls or the absence of such

3  calls from Prime Hospitals, and the refusal of Prime Hospitals to discuss and coordinate care for

4  Kaiser members, will likely be necessary evidence in each of the five related cases. (Platto Decl.

5  at ¶ 5.) Because Kaiser's EPRP is a centralized function (Shohfi Decl. ¶ 2), EPRP documents

6  and witnesses will overlap among the related cases.

7  Similarly, Kaiser's Clinical Review Department, whose central offices are in Oakland,

8  California and Pasadena, California (documents and witnesses regarding retrospective review of

9  claims) and the Medical Transportation Department, whose central office is in Downey,

10  California (documents and witnesses regarding the centralized dispatch and coordination of

11  ambulances for patient transport) are single departments within Kaiser (all in Los Angeles

12  County), and would provide overlapping documents and witnesses in each of the five cases. (*Id.*

13  at ¶ 2-5.) Likewise, Kaiser's Network Development and Administration department, located in

14  Pasadena, California, would provide documents and witnesses pertinent to the value of medical

15  services provided to Kaiser members, as well as information regarding other lawsuits involving

16  Kaiser referenced in the complaints, to the extent such allegations are not stricken. *See* Sherman

17  complaint, ¶ 23; Chino complaint, ¶ 26; Desert complaint, ¶ 22; Orange complaint, ¶ 34; and

18  Paradise complaint, ¶ 19. (Shohfi Decl. ¶ 6.) And Kaiser's Survey Readiness Unit and/or

19  Regulatory Investigation and Response Unit, both part of Kaiser's Health Plan Regulatory

20  Services Department, with offices in both Pasadena and Oakland, California, would provide

21  witnesses and documents pertinent to Prime's allegations regarding the Department of Managed

22  Health Care's alleged enforcement actions against Kaiser, to the extent such allegations are not

23  stricken. *See* Sherman complaint, ¶ 22, Chino complaint, ¶ 25, Desert complaint, ¶ 21, Orange

24  complaint, ¶ 33, and Paradise complaint, ¶ 18. (Shohfi Decl., ¶ 6.) Thus, it would be

25  significantly more convenient for these witnesses to participate in one action in the Central

26  District, than it would for the same witnesses to participate in one, or several, actions in the

27  Central District in addition to one action in the Southern District.

28

- 13 -

Many Prime witnesses and documents will necessarily come from the centralized parent company (with offices in Victorville and Chino, California) that owns or controls all the plaintiff entities. The core issues in these five related cases involve systemic activities at the Prime Hospitals, and evidence of the policies and procedures imposed on the individual hospitals by the parent corporation will be relevant. (Platto Decl. ¶¶ 2, 6). These issues are expected to overlap in discovery and testimony among the five cases. (*Id*. at ¶ 6.)

The plaintiff entities also share common management and administration, both of which are likely to be sources of documents and witnesses in discovery for each of the five related cases. For example, Dr. Prem Reddy is the Chairman of the Board or chief executive of each plaintiff entity, as well as Chairman of the Board of their parent company, Prime. (Platto Decl. ¶ 2.) Lex Reddy is President and CEO of several plaintiff entities, and President and CEO of their parent company, Prime. (*Id*.) The plaintiff entities also share regional executive and medical leadership. (*Id*.) These individuals and others responsible for the operation of multiple plaintiff entities, will all be necessary witnesses and sources for necessary documents. (*Id*. at ¶ 6.) Transfer and consolidation will be convenient because it will conserve the parties' and the Courts' resources by obviating the need to depose each of these executives separately for each case, and by eliminating repetitive efforts of serving and responding to discovery separately in each case.

Finally, the expert witnesses for each case are likely to be the same or at least overlap substantially. Examples of areas for anticipated expert testimony include the standards and medical criteria for patient stability for transfer, whether the standards were met in particular cases, the medical necessity for certain services, and the reasonable value of hospital services and the criteria for determining such value. (*Id*. at ¶ 7.) Not only are Kaiser's experts likely to be the same in the five cases, but Prime's experts can also be expected to be the same or overlap in the five cases, because the issues are the same. (*Id*.) The convenience of the Court and the parties will be served by transferring this case so those experts can testify in one District, rather than two.

- 14 -

Memorandum in Support of Motion to Transfer
                                 CASE NO.  08CV 0523 JLS BLM

**E.    Transfer and Consolidation Would Benefit the Court, Parties, and Witnesses, and Would Not Delay Litigation or Prejudice Any Party or the Interests of Justice**

The benefits of transfer and consolidation outweigh potential risks.  Transfer poses no risk of delay, no risk of prejudice or confusion, and no undue burden on any party.

Specifically, there is no risk of delay where, as here, the five related cases were all initially filed on the same day and are proceeding at the same pace in these early phases of litigation.[9]   In fact, transfer and consolidation are likely to expedite the litigation process through consolidating the resolution of the same procedural motions in each case, and by consolidating the discovery proceedings and using the same witnesses and evidence, including expert testimony, in a single consolidated trial proceeding.  Otherwise, there will be inevitable delay and duplication of effort as five separate cases wind their way through motions practice, discovery and trial.  Indeed, even the case management specter that Prime raises about dealing with thousands of individual medical claims, can be more easily coordinated and managed through a single consolidated court than by having five separate courts tied up in these proceedings.

Nor is there any risk of prejudice or undue confusion.  To the extent any exists, the Court would be able to eliminate any risk by preserving any separate rights of the individual parties.  The simple fact that every plaintiff is owned or controlled by Prime, and that the defendants are identical in each case, weighs against the possibility of prejudice arising from transfer and consolidation.  Because the five related cases involve the same core issues and plead the same seven causes of action, it is far more efficient to resolve the issues consistently in a consolidated proceeding rather than risk inconsistent outcomes in different courts.  *See Greenwell*, 2006 U.S. Dist. LEXIS 76231 at *6-7 ("Consolidation prevents waste and duplication of judicial time and effort, and avoids the risk of inconsistent litigation in complicated cases.")

It will be far more convenient for the overlapping witnesses to appear at one court, and for one deposition, rather than five.  Prime may argue that individual witnesses from each Prime

---

[9] Consolidation is often granted so long as none of the cases to be consolidated is ready for trial.  *Mills v. Beech Aircraft Corp.* 886 F.2d 758, 762 (5th Cir. 1989).

1    Hospital will provide evidence necessary to one of the Prime Cases, and would be

2    inconvenienced by having to travel, for example, from San Diego to Los Angeles.  While the

3    Court may consider any witnesses' convenience, the inconvenience of limited travel within

4    Southern California for some witnesses does not outweigh the wholesale multiplication of

5    litigation efforts by the parties and the courts five-fold.

6            Finally, the fact that all nine plaintiffs in the five related cases are represented by the

7    same attorney, Prime's General Counsel, weighs in favor of consolidation.  Any additional

8    burden that results from transferring and consolidating the cases will be reduced by the fact that

9    the parties share legal representation.  *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061,

10    1065 (C.D. Cal. May 25, 1999) (discussing the fact that plaintiffs have the same counsel as a

11    factor in favor of consolidation); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990)

12    (same).

13    **IV.    CONCLUSION**

14            For all the foregoing reasons, this Court should transfer the above captioned action to the

15    Central District of California so that it may be consolidated with the four related actions

16    currently pending in that court.

17    DATED:  May 12, 2008                        EPSTEIN BECKER & GREEN, P.C.

18                                                By:  /s/ Jamie S. Platto
                                                    William A. Helvestine
19                                                    Andrew J. Hefty
                                                    Jamie S. Platto
20                                                    Carri Becker Maas
                                                Attorneys for Defendants,
21                                                KAISER FOUNDATION HEALTH PLAN,
                                                INC., KAISER FOUNDATION
22                                                HOSPITALS, and SOUTHERN
                                                CALIFORNIA PERMANENTE MEDICAL
23                                                GROUP

24

25

26

27

28