| | |
|---|---|
| William A. Helvestine | State Bar No. 58755 |
| Andrew J. Hefty | State Bar No. 220450 |
| Jamie S. Platto | State Bar No. 226723 |
| Carri Becker Maas | State Bar No. 245816 |

EPSTEIN BECKER & GREEN, P.C.
One California Street, 26th Floor
San Francisco, California 94111-5427
Telephone: 415.398.3500
Facsimile: 415.398.0955
whelvestine@ebglaw.com, ahefty@ebglaw.com,
jplatto@ebglaw.com, cmaas@ebglaw.com

Attorneys for Defendants,
KAISER FOUNDATION HEALTH PLAN, INC.,
KAISER FOUNDATION HOSPITALS, and SOUTHERN
CALIFORNIA PERMANENTE MEDICAL GROUP

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRIME HEALTHCARE PARADISE VALLEY, LLC, a Delaware limited liability company, doing business as Paradise Valley Hospital;<br><br>Plaintiff,<br><br>v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.; a California corporation, et al.<br><br>Defendants. | CASE NO. 08CV 0523 JLS BLM<br><br>**DECLARATION OF JAMIE S. PLATTO IN SUPPORT OF MOTION TO TRANSFER**<br><br>Honorable Janis L. Sammartino<br><br>DATE: JULY 24, 2008<br>TIME: 1:30 P.M.<br>CTRM: 6 |

SF:167541v2

Platto Declaration in Support of Motion to Transfer
CASE NO. 08CV 0523 JLS BLM

I, Jamie S. Platto declare:

1. I am an attorney with the firm of Epstein Becker & Green, P.C., counsel for Defendants in the above captioned action. I have personal knowledge of the facts stated herein and would competently testify thereto if called as a witness.

2. According to Prime's website, "Prime Healthcare Services, Inc., founded by Dr. Prem Reddy, currently owns and operates nine acute care hospitals in Southern California …." This list includes the eight plaintiff hospitals. Prime, with offices in Victorville, CA, and Chico, CA, has also acquired Centinela Hospital Medical Center in Inglewood, CA, which is not named as a plaintiff in the Prime Cases. Lex Reddy is identified on the same webpage as being President and CEO. I am also informed by Prime's website and by Dun & Bradstreet, Inc. that Dr. Prem Reddy is the founder and chief executive of the one non-hospital plaintiff, Desert Valley Medical Group. A true and correct copy of Prime's website <http://www.primehealthcareservices.com/primestyle/shtm/about/leadership.shtm> (as of April 15, 2008) and < http://www.primehealthcareservices.com/primestyle/shtm/about/contact.shtm> (as of April 16, 2008) are attached hereto as Exhibit A.

3. Defendants have filed a substantively identical Notice of Removal in five cases, each of which was based on the same three legal grounds: complete preemption under ERISA; complete preemption under the Medicare Act; and federal actor removal pursuant to 28 U.S.C. 1442. Those five cases are:

- *Prime Healthcare Services II, LLC vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. CV 08-01858 GW FMOx ("Sherman");
- *Desert Valley Hospital, Inc. et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. EDCV 08-00385 SGL (OPx) ("Desert");
- *Veritas Health Services, Inc. et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. EDCV 08-00386 SGL (OPx) ("Chino");
- *Prime Healthcare La Palma, LLC et al. vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. SACV08-00318 DOC (ANx) ("Orange"); and

- 1 -

- *Prime Healthcare Paradise Valley, LLC vs. Kaiser Foundation Health Plan, Inc. et al.*, Case No. 08CV 0523 JLS BLM ("Paradise"),

referred to collectively as the "Prime Cases". In addition, Plaintiffs have filed a substantively identical Objection to Notice of Related Cases in each of the Prime Cases.

4.   The Orange complaint contains one cause of action not contained in the other Prime Cases. This additional cause of action relates to contracts referred to by Plaintiffs as the Vanguard LOA and the Acute Rehab Agreement. (Orange complaint, ¶¶ 18-19.) The parties recently agreed to binding arbitration of the claims related to these contracts, and Defendants expect that Prime will dismiss the first cause of action from the Orange case.

5.   Our initial review of the Prime Cases indicates that the primary factual dispute concerns whether the services provided by the Prime Hospitals to Kaiser members were provided to treat emergency medical conditions, or whether the services constituted unauthorized care provided after the patients were stable for transfer to a Kaiser facility, as well as the reasonable value of services that were properly payable. Based on this initial review, it is likely that substantially the same witnesses and evidence from several departments within Kaiser will be necessary in each of the Prime Cases. These departments include Kaiser's Emergency Prospective Review Program ("EPRP") (relating to telephone calls from hospital emergency rooms to Kaiser), Clinical Review Department (relating to retrospective medical review of claims), Medical Transportation Department (relating to dispatch and coordination of ambulances for patient transport), Network Development and Administration Department (relating to the value of medical services), and units of the Health Plan Regulatory Services Department (relating to regulatory enforcement actions).

6.   Similarly, it is likely that many Prime witnesses (including Dr. Prem Reddy, Lex Reddy, and potentially other individuals at the parent Prime with knowledge of the operation of multiple plaintiff entities) and documents will come from the centralized parent company that owns or controls all the plaintiff entities, and that the same or overlapping witnesses and evidence will be needed in each of the Prime Cases.

- 2 -

7. It is also likely that the parties will use expert witnesses in the Prime Cases. These expert witnesses are likely to be the same for each of the Prime Cases, or at least overlap substantially. For example, anticipated areas for expert testimony include the standards and medical criteria for patient stability for transfer, whether the standards were met in particular cases, the medical necessity for certain services, and the customary and reasonable value of hospital services and the criteria for determining such value.

8. A true and correct copy of the article by Dr. L. Johnson titled "Post-Stabilization Case Management" (cited in the Memorandum of Points and Authorities in Support of Motion to Consolidate) is attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 12, 2008

By: /s/ Jamie S. Platto
     Jamie S. Platto

Attorney for Defendants,
KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS, and SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP

- 3 -

SF:167541v2     Platto Declaration in Support of Motion to Transfer
CASE NO. 08CV 0523 JLS BLM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

SF:167541v2

Platto Declaration in Support of Motion to Transfer
CASE NO. 08CV 0523 JLS BLM
Exhibit A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

# Exhibit A

| Home | About Us | Services | Prime Hospitals | Community | News | Careers | Contact |

**About Us**
- Factsheet
- Mission & Vision
- Leadership
- News
- Contact Us
- Directions

### Prem Reddy, MD, Chairman



**Prem Reddy,** MD.,F.A.C.C.,F.C.C.P.
**Chairman of the Board**

**Dr. Prem Reddy** is Board-Certified in Internal Medicine and Cardiology. He is a Fellow of the American College of Cardiology and the American College of Chest Physicians. With more than two decades of experience as a cardiologist in the High Desert, Dr. Prem Reddy has performed more than 5,000 cardiac procedures.

Dr. Prem Reddy founded Desert Valley Medical Group, a multi-specialty medical group, in 1985, which later became PrimeCare International, Inc., a physician practice management company with operations in several states including New York, Florida, Oklahoma in addition to California. PrimeCare, with over 250,000 managed care patients and annual revenues of over $400 Million, was later sold to a publicly traded company, PhyCor. Dr. Prem Reddy repurchased the struggling Desert Valley Medical Group and Desert Valley Hospital from PhyCor in January 2001, and since then has helped turn them into successful facilities.

In 1994, Dr. Prem Reddy built from ground-up, Desert Valley Hospital, a 83-bed acute care facility. Desert Valley Hospital received an unprecedented accreditation with "commendation" from Joint Commission (JCAHO) in its first year of operations. Under the leadership of Dr. Prem Reddy, Desert Valley Hospital continues to raise the bar of excellence in healthcare quality. Compared to hospitals in the area, Desert Valley maintains the highest survey scores.

Dr. Reddy also founded and served as Chairman and CEO of a pharmacy management company, PrimeRX.Com, Inc. (PrimeMed Pharmacy Services, Inc.). Headquartered in Las Vegas, NV with operations nationwide, PrimeRX.com earned annual revenues of over $100 Million from 1998 to 2000.

For his philanthropic and charitable involvement, Dr. Prem Reddy has received several social awards including: Entrepreneur of the Year, Ernst & Young Accounting Company, Inc.Magazine and Merrill Lynch Financial Company (1994); Republican of the Year Award, San Bernardino County, Republican Central Committee (1995); Victor Valley College Foundation Distinguished Service Award (1996); and Member of the Order of William Harvey, American College of Cardiology. Additionally, Inland Empire Leaders of Distinction-representing the business communities of San Bernardino and Riverside Counties -

**PRIME LEADERSHIP**

Prem Reddy,
MD, FACC, FCCP,
Chairman of the Board

Lex Reddy, MBA,MHA,
President & CEO

Roger Krissman, MBA,
Chief Financial Officer

Suzanne Richards, RN, MBA,
VP of Clinical Operations

Allen Stefanek,
VP of Operations

Mike Sarrao, Esq.,
VP & General Counsel

Virg Narbutas, MBA,
Regional CEO,
Orange County

Hassan Alkhouli, MD,
Regional Medical Director,
Orange County

Lea Anne Rhoade, CPMSM,
Corporate Director of Medical Staff

Marie Falcis,
Corporate Director of Performance Improvement

Gigi Douglass, BSMT (CLS)
Corporate Director of Laboratory Services

Seetha Reddy,
Corporate Director of Diagnostics Services

Pat Silvestri,
Chief Facilities & Development Officer

honored Dr. Prem Reddy with the "Life Time Achievement Award" (2003). Dr. Prem Reddy is the recipient of several honors from the American Heart Association including the "Friend with a Heart" (1996) and the "Honoree of the Year" (2004) awards. The Boy Scouts of America, Inland Empire Council, recognized Dr. Prem Reddy as the "Distinguished Citizen of the Year" (2005).

Dr. Reddy is an active philanthropist and is involved in various charitable causes. In 1989, he established the Desert Valley Charitable Foundation, a 501(c)(3) not-for-profit charitable organization with an initial gift of $1 Million. Since then, he has contributed over $5-million to the Foundation. He supports several students with annual scholarship grants to assist them in completing their education in the health care field (i.e.: nursing, physician assistant, physical therapy, etc.). The Victor Valley Community College honored Dr. Prem Reddy's donation of $1-million dollars by naming their Allied Health Programs the "Dr. Prem Reddy School of Health Sciences". Victor Valley College had previously honored Dr. Prem Reddy when they named their student health clinic the "Dr. Prem Reddy Student and Staff Health Center". The Western University of Health Sciences in Pomona, CA, named its largest lecture hall the Dr. Prem Reddy Lecture Hall in honor of his many contributions to education in the health care field.

Prime Healthcare Services, Inc., founded by Dr. Prem Reddy currently owns and operates nine acute care hospitals in Southern California: Desert Valley Hospital in Victorville, Chino Valley Medical Center in Chino, Montclair Hospital Medical Center in Montclair, Sherman Oaks Hospital in Sherman Oaks, Huntington Beach Hospital in Huntington Beach, La Palma Intercommunity Hospital in La Palma, Paradise Valley Hospital in National City (San Diego), West Anaheim Medical Center in Anaheim and Centinela Hospital Medical Center in Inglewood.

About us   Contact Us   Prime Hospitals

©2007 Prime Healthcare Services, Inc. All rights reserved.

| Home | About Us | Services | Prime Hospitals | Community | News | Careers | Contact |

**About Us**
- Factsheet
- Mission & Vision
- Leadership
- News
- Contact Us
- Directions

### Contact Us

Thanks for visiting the website of Prime Healthcare Services, Inc. We appreciate your interest and we look forward to hearing from you.

**Corporate Offices:**

***Victorville, CA***

*16850 Bear Valley Road*
*Victorville, CA 92395*
*Phone: (760) 241-8000*
*Map & Directions*

***Chino, CA***

*5451 Walnut Avenue*
*Chino, CA 91710*
*Phone: (909) 464-8600*
*Map & Directions*

You can also email us at **info@primehealthcareservices.com**.

Please visit our <u>Hospitals</u> page for contact information of each facility.

About us    Contact Us    Prime Hospitals

©2007 <u>Prime Healthcare Services, Inc.</u> All rights reserved.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

SF:167541v1

8

Platto Declaration in Support of Motion to Transfer
CASE NO.  08CV 0523 JLS BLM
Exhibit B

# POST-STABILIZATION CASE MANAGEMENT (PSCM)

*A Newly Recognized Managed Care Responsibility Under Federal Law*
*By Loren Johnson, M.D.*

Recently the Health Care Financing Administration (HCFA), published its proposed emergency access protection rules for Medicare + choice and Medicaid managed care patients, in accordance with the Balanced Budget Act of 1997, (BBA). These prohibit prior authorization and require that an HMO representative respond to requests for authorization of post—stabilization care within one hour; otherwise the plan bears financial responsibility. These rules have become somewhat controversial and need to be better understood, however, in concept they represent a great step forward and CAL/ACEP takes pride in the fact that The Bergeson Act provided the model for this achievement.

### Origins in the Bergeson Act

The concept of a PSCM responsibility for HMO patients originated at a brain storming session in a CAL/ACEP board meeting in 1994, at a time when the bureaucratic nightmare of managed care was wreaking havoc on emergency practice throughout California. One of our most serious problems was the difficulty in getting managed care organizations to respond to our requests for admission, transfer and follow-up, and to take responsibility for their patients following stabilization; hence gridlock in the emergency department. Tom Hafkenschiel penned the outlines for SB 1832, the basic principles of which were the right of direct access for HMO patients, and the PSCM transactional responsibilities. Following its enactment, John Bibb negotiated the PSCM components with the Department of Corporations and established the basic requirements, paraphrased as follows:

1. In order to obtain authorization for post-stabilization care, the emergency providers must call the representative of the plan.
2. The plan representative must call back within 30 minutes.
3. Insurance coverage is automatically authorized I the event of a delay or non-response.
4. The on-site provider (e.g., emergency physician), will be responsible for the patient's care until the plan physician comes in and personally assumes this responsibility, or the patient is transferred.

As you can see, these rules simply convert our normal process for the smooth transfer of care into a shared responsibility for emergency departments and managed care organizations. However, in this case they were conceived as an adjunct to a historic victory for the public's right to obtain emergency care.

### Kaiser's EPRP Program and The California Experience

The Kaiser EPRP program provides a stellar example of a well-organized PSCM function. It helps patients and emergency departments by facilitating timely disposition and payment and it helps Kaiser repatriate its patients and minimize out-of-plan costs. The same rules and benefits apply in network HMO situations, wherein the primary care physician group functions as the plan representative, and like wise must respond in a timely manner.

### Federal Legislation

Based on the California experience, ACEP incorporated the PSCM requirements in its Access to Emergency Medical Services Act. This led to the emergency care provisions of the RRA, and despite major opposition from the insurance industry, continues to form the basis for the democrat sponsored HMO reform program known as The Patient's Bill of Rights. Thus, the concept of a shared PSCM responsibility is now the law of the land for government sponsored patients, and will again be an issue in the 106th Congress for privately insured patients; however the current controversy arises from the comments to HCFA rule making for Medicare and Medicaid patients only.

Some of our colleagues have expressed opposition to the entire PSCM concept, arguing that no emergency physician should be required to make authorization calls, even after emergency care is provided; that there will be a loss of compensation for post-stabilization care; and that patients may be harmed by incompetent managed care doctors coming in to take over care in the ED. ACEP, on the other hand, credits HCFA for its enlightened implementation of the law, while continuing to argue for a 30 minute call-back requirement. On the compensation issue, almost all of our reimbursement mechanism for emergency physician fees are geared to the screening and stabilization components of service, hence there appears to be no financial downside to these rules. Furthermore, nothing in the law dis-empowers emergency physicians from protecting ED patients, and most of us are delighted to have primary care doctors come in and take responsibility for their patients after we've provided the emergency care.

Finally, we would remind all concerned that the major purpose of the PSCM responsibility was, and still is, to support our agenda for direct access to emergency care. CAL/ACEP won this battle in California, but the final chapter has yet to be written in Congress. Thus, even as the specific rules are still being negotiated for Medicare and Medicaid patients, we take pride in their adoption at the federal level, and we believe they represent a significant protection for efficient care delivery in the Emergency Department. We look forward to the day when they become the universal standard.

■